Hope Phelps (La. Bar No. 37259)
William Most (La. Bar No. 36914)
MOST AND ASSOCIATES
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel: (504) 509-5023
Email: hopeaphelps@outlook.com

Aaron B. Zisser [Cal. Bar No. 302926]
ZISSER LAW OFFICE
5706 Cahalan Ave., # 23730
San Jose, CA 95153
Tel: (669) 228-5154
Fax: (408) 404-8980
Email: aaron@zisserlawoffice.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUDITH SANTANO,<br><br>        Plaintiff,<br><br>  vs.<br><br>TULANE UNIVERSITY, BOARD OF TULANE, JORDAN KARUBIAN, ERICA WOODLEY, MARCUS FOSTER, TIFFANY SMITH, HANNAH FRANK, SUNSHINE VAN BAEL, and DOES 1-20<br><br>        Defendants. | Case No.: 24-2748<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **TITLE VII – RETALIATION**<br>2. **TITLE IX – RETALIATION**<br>3. **STATE LAW – RETALIATION IN EMPLOYMENT**<br>4. **NEGLIGENT SUPERVISION**<br>5. **NEGLIGENCE**<br>6. **RESPONDEAT SUPERIOR**<br>7. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>8. **BREACH OF CONTRACT**<br>9. **WHISTLEBLOWER REPRISAL**<br><br>**JURY TRIAL DEMANDED** |

## I.    PRELIMINARY STATEMENT

1.    Plaintiff Judith Santano brings this suit against her employer and educational institution, Tulane University, and against individual defendants, alleging violations of Title IX of the Education Amendments, Title VII of the Civil Rights Act, and state law. Defendants retaliated against Plaintiff for filing a complaint about sexual assault, terminated her from an important program based on unfounded and uninvestigated allegations, and failed to provide supportive measures.

## II.    INTRODUCTION

2.    Plaintiff is and was a PhD candidate at Tulane University who studies avian ecology. During research in Ecuador under the auspices of the university, Plaintiff was sexually assaulted and sexually harassed by a staff member of the research facility with which the university was partnering.

3.    Upon reporting this conduct, Plaintiff experienced retaliation by members of the university's faculty with the knowledge of a top administrator. Dr. Jordan Karubian, senior professor in the Department of Ecology and Evolutionary Biology at Tulane, retaliated against Plaintiff because she blew the whistle about an experience with sexual assault that pointed to a broader toxic culture at the research program in Ecuador, which was infected with rampant sexual harassment, and because she subsequently complained about Defendant Karubian's response to her report of assault.

4.    The same act of retaliation was also a denial of any due process provided as a matter of contract between Plaintiff and Tulane, i.e., provided in their policies for addressing allegations of sexual harassment.

5.      The university's retaliation has compounded the trauma from the underlying conduct in Ecuador. It also resulted in the loss of significant research and employment opportunities, with tangible academic and economic consequences.

### III.    JURISDICTION AND VENUE

6.      Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, § 701 *et seq*., as amended, 42 U.S.C.A. § 2000e *et seq*., and Title IX of the Education Amendments Act, 20 U.S.C. §§ 1681, *et seq*.

7.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). Plaintiffs' state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.      This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1376 because the claims form part of the same case or controversy arising under the United States Constitution and federal law.

9.      Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred in New Orleans, Louisiana, and because Defendants reside in the District. This is an action for damages and such other and further relief as may be consistent with law.

### IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Plaintiff has exhausted all administrative remedies by filing a charge with the Equal Employment Opportunity Commission regarding retaliation on September 4, 2024. The EEOC issued a right to sue letter on September 5, 2024.

//

Complaint for Damages – Jury Demand

## V.     PARTIES

11.     Plaintiff Judith Santano is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana. She enrolled at Tulane as a PhD candidate in Fall 2021, remains enrolled there, and experienced retaliation there. As a graduate student, she also worked as a research assistant and teacher's assistant, for which she received payment as an employee from Tulane.

12.     Defendant Tulane University ("Tulane" or "University") is a private not-for-profit university located in New Orleans, Louisiana, with its principal place of business there. At all times relevant to this Complaint, Tulane conducted business in the Eastern District of Louisiana and had more than twenty (20) employees. Tulane operates programs in receipt of federal funds and is thus covered by Title IX's prohibition on sex-based discrimination.

13.     Defendant Board of Tulane is the governing body for Tulane.

14.     Defendant Karubian was assigned as Plaintiff's research advisor. He is and was at all times relevant herein a professor employed by Tulane. He also coordinated Tulane's collaboration with Fundación para la Conservación de los Andes Tropicales ("FCAT"), a research facility in Ecuador and supervised Plaintiff's work there.

15.     Defendant Sunshine Van Bael is and was at all times relevant herein a faculty member at Tulane and a member of Plaintiff's advisory committee.

16.     Defendant Hannah Frank is and was at all times relevant herein a faculty member at Tulane and a member of Plaintiff's advisory committee.

17.     Defendant Erica Woodley is and was at all times relevant herein the Dean of Students at Tulane.

18.     Defendant Marcus Foster was the Title IX coordinator at Tulane from July 2022 until August 30, 2024.

19.     Defendant Tiffany Smith is and was, since July 2022, the Director of Institutional Equity and Resolution Management. Defendant Smith's office, the Office of Institutional Equity ("OIE") oversees the university's investigations into retaliation.

20.     Defendants DOES 1-20 are additional employees or agents of Tulane who were responsible for retaliation against Plaintiff. Plaintiff alleges that each of the Defendants named as a "DOE" was in some manner responsible for the acts and omissions alleged herein.

21.     Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants worked in Orleans Parish, State of Louisiana. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants were employees, agents, and/or servants of the Tulane and acted within the course and scope of said employment, agency and/or service.

22.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed, believes, and alleges that each of the fictitiously named defendants is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to and described, and thereby illegally caused the injuries, damages, and violations and/or deprivations of rights hereinafter alleged. Plaintiff will seek leave of Court to amend this Complaint and state the true names and/or capacities of said fictitiously named defendants when the same have been ascertained.

23.     The reason why Plaintiff is ignorant of the true names and capacities of

Defendants sued herein as Does, inclusive, is that same have been unascertainable as of the date of filing of this complaint and many of their records may be protected by state statute and can only reasonably be ascertained through the discovery process.

24.     Except as otherwise indicated, each defendant is a joint tortfeasor with every other defendant under Louisiana Civil Code Art. 2324.

## VI.    FACTS

**A. Plaintiff was coerced into sex during a Tulane University field research program in Ecuador during the summer of 2022**

1.     During the summer of 2021, Plaintiff was conducting research at FCAT as part of her Ph.D program.

2.     During that summer, Beto Gonzalez, a staff member at FCAT, made sexually explicit comments to Plaintiff.

3.     Plaintiff returned to FCAT during summer 2022. On June 25, 2022, Gonzalez asked to engage in sexual contact with Plaintiff in the back seat of a truck, but Plaintiff declined.

4.     Later that summer, Gonzalez coerced Plaintiff into sexual intercourse without her consent on two occasions. On both occasions, Plaintiff told Gonzalez she did not want to have sex with him. On the first occasion, Gonzalez ignored Plaintiff when she told him she did not want to have sex with him and that she did not want him to remove her clothing.

5.     After the first assault, Plaintiff indicated to Gonzalez that the encounter was not consensual, asked him why he did it, and told him not to do that again.

6.     Subsequently, Gonzalez ignored Plaintiff's request and assaulted her a second time.

7.      On both occasions, Plaintiff was too confused and in shock to further rebuke Gonzalez' advances, and he penetrated her vagina with his penis without her consent.

**B.  Plaintiff's relationship with Defendant Karubian**

8.      Defendant Karubian served as Plaintiff's PhD advisor from the time of her enrollment at Tulane in the fall of 2021.

9.      Defendant Karubian supervised and oversaw Plaintiff's work as a research assistant and teaching assistant both during Plaintiff's time at FCAT and while taking classes or conducting research at Tulane.

10.     Defendant Karubian had expressed exceptional confidence in Plaintiff, including calling her an "integral" member of his lab group and the FCAT community.

11.     Plaintiff was heavily recruited by Defendant Karubian and was provided substantial funding.

12.     Plaintiff had, in large part due to Defendant Karubian, considerable responsibility, supervisory responsibilities, and leadership roles at FCAT and in Defendant Karubian's lab.

13.     From the outset, Defendant Karubian expected Plaintiff to provide a great deal of labor to represent FCAT.

**C.  FCAT and Defendant's involvement in FCAT**

14.     Defendant Karubian was and is a senior professor in the Department of Ecology and Evolutionary Biology at Tulane.

15.     Defendant Karubian was a founding member of FCAT, which was established in 2011.

16.     FCAT hosts graduate student researchers from Tulane and other universities. It

also hosts undergraduate students from Tulane.

17.    FCAT suffered from a toxic culture that was infected with rampant sexual harassment.

18.    Defendant Karubian had every reason to insulate FCAT from any scrutiny that would result from Plaintiff's report. He was heavily invested professionally and personally in the program.

19.    Upon information and belief, Gonzalez was a close colleague and friend of Defendant Karubian's.

20.    Defendant Karubian was aware of the long-standing issues with sexual harassment at FCAT, and Plaintiff's report risked exposing his ongoing inaction.

**D. Plaintiff's report was initially mishandled**

21.    Plaintiff reported the summer 2022 assaults by Gonzalez to Defendant Karubian and an FCAT staff member in February 2023.

22.    Defendant Karubian did not forward Plaintiff's report to the university until May 4, 2023.

23.    That was in violation of his duties under university rules to *immediately* forward such reports to the university. This substantial delay in turn caused a delay in the investigation and in the provision of supportive measures.

24.    Defendant Karubian spoke with Gonzalez and other members of the community in June 2023 about the allegation of assault *after* reporting the assault to the Title IX office and despite his close relationship with the accused, thus interfering with the university's investigation and violating her right to privacy.

25.     On or around June 2023, Plaintiff discussed with Defendant Karubian her concerns about how he had handled her report.

26.     In a July 18, 2023 email, Defendant Karubian acknowledged he mishandled his response to Plaintiff's report of sexual abuse and that she had raised concerns about sexual harassment at FCAT.

27.     He explicitly indicated he hoped to continue working with her.

**E.  August 2023 meeting**

28.     In early August 2023, having become disenchanted and frustrated with Karubian, Plaintiff asked Van Bael and Frank to be her co-advisors. She had already notified Van Bael and Frank regarding her disappointment with how Karubian had handled her report about the sexual assaults. Van Bael and Frank declined Plaintiff's request.

29.     In August 2023, Plaintiff had a meeting with Frank, Van Bael, and Karubian to discuss her research and her relationship with Karubian. Among other topics, they discussed Plaintiff's disappointment with how Karubian had handled her reports. She told the group that she felt she was being treated as the problem. Karubian indicated he intended to continue as her advisor.

**F.  Termination of Plaintiff**

30.     On November 30, 2023, Plaintiff's advisory committee issued her a letter, which Defendant Karubian drafted and signed.

31.     The letter indicated to Plaintiff that she was being terminated from Karubian's advisory.

32.     Karubian knew that such action would include denying Plaintiff the opportunity

to continue researching at FCAT. Her new advisor, Defendant Van Bael, confirmed to Plaintiff that she would only serve as Plaintiff's replacement advisor if Plaintiff agreed she would not return to FCAT.

33.    The letter enumerated reasons for the action other than her reporting her sexual assaults or her displeasure with Karubian's handling of her reports of sexual assault.

34.    These were pretexts, as Plaintiff had received positive evaluations of her performance, including from Karubian himself, and the allegations of inappropriate conduct by Plaintiff were never investigated or subjected to the university discipline processes.

35.    Defendant Karubian rushed the termination letter without giving his colleagues on the advisory committee adequate time to review it.

36.    He issued the letter while the university's contracted investigator was in Ecuador interviewing witnesses regarding Plaintiff's complaint of sexual assault.

37.    Defendant Karubian feared exposure of the problems infecting FCAT, problems that Defendant Karubian himself explicitly acknowledged, motivating him to take action against Plaintiff.

38.    Defendant Karubian terminated Plaintiff on November 30, 2023, without first reporting to the Title IX office the allegations against that he claimed formed the basis for her termination.

39.    He thus deprived her of her procedural rights under university policy. He was not interested in uncovering the truth and instead focused only on sweeping the issues under the rug and discrediting a whistleblower.

40.    Defendant Karubian did not terminate Plaintiff until more than three months after

the August 2023 meeting that was the stated basis for the termination.

41.     It was the increasing pressure on him regarding the allegations and his failed response – not his concerns about Plaintiff – were the motivation for his action against her.

42.     The other faculty members involved in the termination decision, Defendants Van Bael and Frank, acceded to Defendant Karubian's actions and failed to intervene to support Plaintiff or protect her from a violation of her rights, despite knowing that she had voiced concerns about how Defendant Karubian had handled her report of sexual assault and broader harassment at FCAT.

43.     When Plaintiff approached Defendant Woodley on or about December 8, 2023, about the termination, Dean Woodley expressed concern about possible retaliation and about the fact that Plaintiff did not have anyone advising her through the situation, spoke with Professor Karubian, but did nothing to prevent or unwind the action against Plaintiff.

44.     The university failed to provide Plaintiff with supportive measures, which are required under Title IX even absent a formal complaint.

45.     After learning of the potential retaliation, the university did not offer to intervene or to work with the faculty members involved.

46.     It should have been immediately evident that terminating Plaintiff based on uninvestigated allegations implicates Title IX and university policy. It should also have been immediately evident that this action would significantly impact Plaintiff's studies. The November 30, 2023 letter and remediation plan explicitly acknowledged this.

47.     Yet no offer of mediation or support was extended.

48.     Plaintiff was instead left to navigate this extraordinarily stressful situation entirely

on her own.

49.     Defendants Smith and Foster failed to intervene when they were notified that Plaintiff may have experienced retaliation. In February 2023, the university's investigation that was underway regarding Plaintiff's report of sexual assault at FCAT was expanded to address potential retaliation by Defendant Karubian. Upon information and belief, Defendants Smith and Foster were notified of the expanded investigation and the nature of the allegation against Defendant Karubian. Defendants Smith and Foster did not, however, ensure that the allegations against Plaintiff that Defendant Karubian used to justify his action against her were addressed via the process provided for under university policy.

50.     As a result of the action against Plaintiff, she has been unable to return to FCAT to continue her research. Instead, she was relegated during the summer of 2024 to conducting lab research in California for approximately two weeks and otherwise conducting research at Tulane. She did not have the same opportunities to supervise and mentor undergraduate students in the field, study the subjects of her research in nature, or expand the data she was collecting.

## VII.    DAMAGES

51.     As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiff suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiff to sustain general damages in a sum to be determined at trial.

52.    As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered past and future losses of income that have caused her to sustain economic damages in a sum to be determined at trial.

53.    Plaintiff has experienced profound institutional betrayal at multiple levels, causing her significant trauma and emotional distress that compounded the trauma she experienced as a result of the underlying harassment and sexual misconduct. Her trusted professor sat on her report, interfered with and delayed a proper investigation, and terminated her from her program instead of providing support. Other officials abdicated their responsibility by allowing her termination to go forward. The university she committed to and that showed so much interest in her has not only turned its back on her; it has turned against her.

54.    Plaintiff's termination has significantly impacted her reputation and career. She is doing highly specialized research and selected Tulane and Professor Karubian's program for that reason. Other professors now have a tainted perception of Plaintiff, and her inability to research under Professor Karubian and through FCAT will make it much more difficult for her to accomplish her professional goals and find desirable opportunities after she completes her studies. In her field, relationships and connections are immensely important in identifying and obtaining professional opportunities. In the shorter term, her research and teaching opportunities while still at Tulane will be markedly different and less meaningful.

55.    Defendants acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive the decedent of his constitutional rights, and did in fact violate the aforementioned rights, entitling

Plaintiff to exemplary and punitive damages in an amount to be proven at the trial in this matter.

Plaintiff also seeks attorneys' fees.

## VIII.   CLAIMS FOR RELIEF

## <u>FIRST CLAIM FOR RELIEF</u>

## TITLE VII – RETALIATION

### (Against Defendants Tulane University and Board of Tulane)

56.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

57.    Title VII of the Civil Rights Act bars gender discrimination and retaliation for reporting sex discrimination, including sexual harassment that creates a hostile work environment. Civil Rights Act of 1964, § 701 *et seq.*, as amended, 42 U.S.C.A. § 2000e *et seq*.

58.    Title VII, specifically 42 U.S.C. § 2000e-3 makes it unlawful for an employer to retaliate against an employee who has opposed an unlawful employment practice, or a practice they reasonably believed to be unlawful.

59.    Title VII of the Civil Rights Act also protects employees who suffer an adverse employment action because they engaged in a protected activity. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). Many activities are considered "protected" under Title VII, including but not limited to reporting or opposing harassment. *Carter v. Town of Benton*, 827 F.Supp.2d 700 (W.D. La. 2010).

60.    Plaintiff reasonably believed that the practices she complained of were unlawful, and her reports of sexual harassment and sexual assault while conducting research at FCAT and

of Karubian's mishandling of those reports constituted protected activity. Karubian's action against Plaintiff in response to those reports by Plaintiff constituted unlawful retaliation.

61.    The work restrictions imposed on Plaintiff would not have been implemented but for her reporting the harassment and reporting the mishandling of her report of harassment, as it occurred directly in response to her reporting.

62.    The retaliation against Plaintiff constituted sex discrimination, and gender bias can be inferred from the disregard and minimization by Karubian and others of the underlying assault and the decision to further punish the victim of assault.

63.    Karubian engaged in a series of other adverse conduct toward Plaintiff leading up to the November 30 decision, and such additional conduct constituted retaliation. Such conduct included disregarding Plaintiff's request for discretion and privacy in his handling of the report of the sexual assault, insinuating that Plaintiff's time at FCAT during the summer of 2023 would strain their relationship even before the academic year was over, strongly encouraging her to find an alternative field site for her research, failing to report Plaintiff's accounts of a hostile environment through official FCAT channels, discussing official FCAT matters through a personal/advisory channel and failing to make those distinctions clear to Plaintiff, instructing Plaintiff not to discuss the matter outside of the discussions with him, and contacting people whom he knew Plaintiff would turn to for support in order to prejudice them against her.

64.    As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

65.    The conduct of the Defendants also amounts to oppression, fraud or malice and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

## SECOND CLAIM FOR RELIEF

## TITLE IX – RETALIATION

### (Against Defendants Tulane University and Board of Tulane)

66.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

67.    Title IX of the Education Amendments of 1972 provides, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

68.    Title IX of the Education Amendments of 1972 applies to all private educational institutions that receive federal funding, including Defendant Tulane.

69.    Tulane receives federal funding, including in the form of federal student loans given to students and is thus subject to the provisions of Title IX.

70.    Title IX is enforceable through a private right of action. See *Overdam v. Texas A&M Univ.*, 43 F.4th 522, 527 (5th Cir. 2022).

71.    The federal regulations provide:

No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by title IX or this part, *or because the individual has made a report* or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part. . . . The recipient must keep confidential the identity of any individual who has made a

report or complaint of sex discrimination, including any individual who has made
a report or filed a formal complaint of sexual harassment, any complainant, any
individual who has been reported to be the perpetrator of sex discrimination, any
respondent, and any witness . . . .

34 C.F.R. § 106.71(a) (emphasis added).

72.     Plaintiff reasonably believed that the practices she complained of were unlawful,

and her reports of sexual harassment and sexual assault while conducting research at FCAT and

of Karubian's mishandling of those reports constituted protected activity. Karubian's action

against Plaintiff in response to those reports by Plaintiff constituted unlawful retaliation.

73.     The work and educational restrictions imposed on Plaintiff would not have been

implemented but for her reporting the harassment and reporting the mishandling of her report of

harassment, as it occurred directly in response to her reporting.

74.     The retaliation against Plaintiff constituted sex discrimination, and gender bias

can be inferred from the disregard and minimization by Karubian and others of the underlying

assault and the decision to further punish the victim of assault.

75.     Karubian engaged in a series of other adverse conduct toward Plaintiff leading up

to the November 30 decision, and such additional conduct constituted retaliation. Such conduct

included disregarding Plaintiff's request for discretion and privacy in his handling of the report

of the sexual assault, insinuating that Plaintiff's time at FCAT during the summer of 2023 would

strain their relationship even before the academic year was over, strongly encouraging her to find

an alternative field site for her research, failing to report Plaintiff's accounts of a hostile

environment through official FCAT channels, discussing official FCAT matters through a

personal/advisory channel and failing to make those distinctions clear to Plaintiff, instructing

Plaintiff not to discuss the matter outside of the discussions with him, and contacting people

whom he knew Plaintiff would turn to for support in order to prejudice them against her.

76.     Title IX also requires the provision of supportive measures to the parties. 34 C.F.R. § 106.44. Defendants failed to provide any supportive measures to Plaintiff.

77.     As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

78.     The conduct of the Defendants also amounts to oppression, fraud or malice and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

**THIRD CLAIM FOR RELIEF**

**State Employment Discrimination Law – Retaliation**

**(Against Defendants Tulane and Board of Tulane)**

79.     Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

80.     La. R.S. 23:332(A)(1) makes it unlawful to discriminate against any individual in employment based on their sex.

81.     The Louisiana anti-discrimination law shares a similar scope and applicability to its federal counterparts pled herein. *White v. Golden*, 982 So.2d 234, 243 (La. App. 2008).

82.     Defendants' actions constituted unlawful retaliation.

83.     As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

84.    The conduct of the Defendants also amounts to oppression, fraud or malice and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

### FOURTH CLAIM FOR RELIEF

**Negligent Supervision, Training and Staffing**

**(Against Defendants Tulane, Board of Tulane, and Woodley)**

85.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

86.    Defendants had a duty to properly supervise, train, and monitor their employees and students and to ensure those employees' and students' compliance with all applicable statutes, laws, regulations, and institutional policies, but they failed to do so and therefore breached the duties of care owed to Plaintiffs as alleged herein. Each of these duties to supervise, train, and monitor included the duty to ensure that the Equal Opportunity, Title IX, and other relevant policies were followed to prevent, properly respond to, and remedy incidents of sex-based discrimination and retaliation.

87.    Defendant Board of Tulane had a duty to supervise, train, and monitor the actions of Defendant Tulane. Defendant Tulane had a duty to supervise, train, and monitor the actions of Defendants Smith, Foster, Woodley, Van Bael, and Frank.

88.    Defendants improperly, negligently, wrongfully, and recklessly failed to supervise and train their subordinates to ensure that their subordinates did not violate Plaintiff's rights.

89.    Defendant Woodley failed to adequately intervene in the retaliation after Plaintiff made her aware of it.

90.    By engaging in the acts alleged herein, all Defendants failed to act with ordinary care and breached their duty of care owed to Plaintiff.

91.    As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

92.    The conduct of the Defendants also amounts to oppression, fraud or malice and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

## FIFTH CLAIM FOR RELIEF

### Negligence and Negligent Infliction of Emotional Distress

### (Against All Defendants)

93.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

94.    Under duty-risk analysis for determining liability, a plaintiff must prove (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached. *Stroik v. Ponseti*, 699 So.2d 1072, 1078 (La. 1997).

95.    Defendants' actions were the cause-in-fact of Plaintiff's injury and emotional distress, and the risk of injuring Plaintiff was within the scope of duty that was breached by Defendants' decision to retaliate against, or failure to prevent or intervene regarding such retaliation against, Plaintiff that resulted in Plaintiff's exclusion from critical aspects of her work

and education while at Tulane.

96.     Defendant Karubian terminated Plaintiff from his advisory and the FCAT program without adhering to the required procedures and failed to forward her report of assault to the Title IX office promptly, despite his duties, enumerated in Tulane's policies and implicit in his role as her advisor and supervisor, to ensure she is treated fairly, provided appropriate process, and protected from ongoing discrimination or retaliation.

97.     Defendants Frank and Van Bael failed to intervene in or prevent Karubian's conduct, despite their duty in light of their roles in Plaintiff's advisory committee and their reporting obligations under the Faculty Handbook and their duty to prevent and address potential discrimination or retaliation.

98.     Defendants Smith and Foster negligently failed to intervene to prevent the termination of Plaintiff in violation of university policies. As university administrators whose duties included supervising the anti-discrimination efforts of the university, Defendants Smith and Foster had a duty to protect Plaintiff from discrimination or retaliation.

99.     Defendant Woodley failed to adequately intervene in the retaliation after Plaintiff made her aware of it. As a high-level administrator, Defendant Woodley had a duty to report any ongoing retaliation or discrimination and take measures to intervene in any such potential misconduct.

100.    Tulane University and Board of Tulane were vicariously liable for the acts of the individual Defendants in their employ and independently negligent for failing to adequately train and supervise their employees.

101.    By engaging in the acts alleged herein, all Defendants failed to act with ordinary

care and breached their duty of care owed to Plaintiff.

102.    As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

103.    The conduct of the Defendants also amounts to oppression, fraud or malice and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

104.    Defendants' conduct was extreme and outrageous; knowing that the emotional distress suffered by Plaintiff was severe and ongoing; and Defendants desired or acted with recklessness to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

105.    Defendants' decision to retaliate against Plaintiff resulted in Plaintiff's exclusion from critical aspects of her work and education while at Tulane and was substantially certain to result in harm.

106.    Defendants' actions were the cause-in-fact of Plaintiff's injuries.

### SIXTH CLAIM FOR RELIEF

**Respondent Superior**

**(Against Defendants Tulane University and Board of Tulane)**

107.    Plaintiff realleges and incorporates each and every foregoing paragraph.

108.    At all times material, Defendants Karubian, Smith, Foster, Woodley, Van Bael, and Frank were on the premises of Tulane and privileged to be on the premises by virtue of their employment with Tulane. When they took the prohibited actions against Plaintiff, they were

employees and/or agents of Defendants Tulane and Board of Tulane within the scope of their employment.

109.    Defendants Tulane and Board of Tulane are therefore liable for all torts committed by their agents, in this case Defendants Karubian, Smith, Foster, Woodley, Van Bael, and Frank.

## SEVENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

110.    Plaintiff realleges and incorporates each and every foregoing paragraph.

111.    Plaintiff alleges intentional infliction of emotional distress by all Defendants in their response to reports of sexual misconduct and/or retaliation.

112.    By delaying reporting Plaintiff's report of sexual assault, retaliating against Plaintiff, allowing such retaliation for making reports of sexual assault, and/or terminating or allowing the termination of Plaintiff from FCAT and her advisory without following proper procedures to ensure fairness, Defendants engaged in extreme and outrageous conduct. Defendants specifically intended for their conduct to cause Plaintiffs to suffer emotional distress so severe that it would silence any additional disclosures.

113.    As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

114.    The conduct of the Defendants also amounts to oppression, fraud or malice and punitive damages should be assessed against each defendant for the purpose of punishment and

for the sake of example.

### EIGHTH CLAIM FOR RELIEF

**Breach of Contract**

**(Against Defendants Tulane University and Board of Tulane)**

115.    Plaintiff realleges and incorporates each and every foregoing paragraph.

116.    Every contract in Louisiana carried an implied covenant of good faith and fair dealing. *Grisaffi v. Dillard Dep't Stores, Inc.*, 43 F.3d 982, 983 (5th Cir. 1995).

117.    Defendants failed to act in good faith and fair dealing with regards to Plaintiff's employment and enrollment contracts when they terminated her.

118.    Tulane's Equal Opportunity Policy provides:

> Tulane prohibits discrimination in its employment practices or educational programs/activities on the basis of age, color, disability, gender expression, gender identity, genetic information, marital status, military status, national origin, pregnancy, race, religion, sex, sexual orientation, or veteran status, or any other status or classification protected by federal, state, or local law. Tulane complies with applicable federal and state laws addressing discrimination, harassment, and/or retaliation. Discrimination or harassment on the basis of any protected status or classification, by anyone affiliated with Tulane, whether verbal, physical, written, or visual, is unacceptable and will not be tolerated. . . . University faculty (including visiting faculty), staff, students, and volunteers shall abide by this policy.

Defendants' acts of retaliation violate this provision of the policy.

119.    Tulane's Policy Against Retaliation prohibits retaliation for "[t]he disclosure of information concerning conduct that the reporter believes is illegal or in violation of university policies," "[t]he good faith provision of information or testimony to, or the filing of a complaint initiating proceedings before, a duly constituted investigatory body of the university," and "[t]he filing of a good faith complaint or incident report." Defendants' retaliation against Plaintiff by

terminating her from her advisory with Karubian and by terminating her participation in FCAT constituted a violation of this policy and therefore a breach of their contract with Plaintiff. These actions by Tulane officials were taken in response to (1) Plaintiff's "disclosure of information" she "believe[d] [was] illegal or in violation of university policies," namely, information about the sexual assault in Ecuador and Jordan Karubian's mishandling of her report; (2) Plaintiff's "good faith provision of information to . . . a duly constituted investigatory body of the university," namely, her report of the sexual assault to Tulane's Title IX office, which is tasked with investigating such complaints; and (3) Plaintiff's "filing of a good faith complaint or incident report" to the Title IX office. These actions therefore constituted retaliation and a breach of contract.

120.    Defendant Tulane's Equal Opportunity/Anti-Discrimination Policy ("EO Policy") provides that "[e]mployees should report allegations of possible discrimination, harassment, and/or retaliation upon receiving a specific complaint or report alleging improper activity." Under the EO Policy, employees should report such incidents "[w]ithin 24 hours, (or as soon as possible) after facts or allegations of possible harassment, discrimination, and/or retaliation are disclosed." Under the policy, "[a]ll staff and faculty must report alleged violations specific to Title IX."Under the EO Policy, when reporting, "[e]mployees have a responsibility to report to the University all relevant details (obtained directly or indirectly) about an incident of discrimination, harassment, and/or retaliation that is made known to them and involves a Student, Staff Member, Faculty Member, or Third-Party affiliated with Tulane. Employees include Staff, Administrators, [and] Faculty . . . ." Karubian failed to timely report acts of discrimination against Plaintiff; such failure constituted a breach of contract. Defendants

Woodley, Van Bael, and Frank failed to report acts of retaliation by Karubian against Plaintiff;

such failures constituted a breach of contract.

121.    The EO Policy provides:

> Retaliation is action or words intentionally taken against an individual because of
> the individual's participation in a protected activity such as reporting
> discrimination, harassment, and/or retaliation. Protected activity includes an
> individual's good faith: (1) participation in the reporting, investigation, or
> resolution of an alleged violation of this Policy, including Title IX allegations; (2)
> opposition to policies, practices, or conduct the individual reasonably believes are
> in violation of this Policy. . . . Examples of prohibited retaliatory conduct include:
> (1) disciplining, changing working or educational conditions when not related to
> job performance, misconduct, or other legitimate business reasons. . . . The
> initiation of a good faith complaint of discrimination, harassment, and/or
> retaliation by an individual will not reflect negatively on that individual nor will it
> affect the individual's academic standing, working conditions, rights, or
> privileges.

EO Policy at 8. Plaintiff's report of sexual assault and her report of Karubian's mishandling of

her report of sexual assault were protected activity under the policy.

122.    Plaintiff's termination from participation in FCAT and her advisory constituted

"disciplin[e], [a] chang[e] [in] working or educational conditions" under the policy and affected

her "academic standing, working conditions, rights, [and] privileges." Karubian claimed that the

termination was based on Plaintiff's "job performance, misconduct, or other legitimate business

reasons," but these were pretexts for retaliatory purposes.

123.    Under the EO Policy, "Supervisors or Managers must report allegations of

possible discrimination, harassment, and/or retaliation upon receiving a specific complaint or

report alleging a violation of this policy. This includes . . . Discrimination, harassment, and/or

retaliation . . . against a person under someone's supervisory authority." As Plaintiff's manager,

Karubian had an obligation to timely report her report of sexual assault, and he failed to do so. His failure constitutes a breach by Defendants of the contract with Plaintiff.

124.    The EO Policy provides that "[c]omplaints against students will be processed in accordance with Tulane's Code of Student Conduct." EO Policy at 5. Defendants' failure to process the allegations that Plaintiff engaged in conduct at FCAT that, if true, would constitute sexual harassment deprived her of the process provided for under the contract between Defendants and Plaintiff. Plaintiff was subjected to discipline – termination from her advisory and from participation in FCAT – without being afforded the process provided for under the policy.

125.    The EO Policy and **Student code of conduct** ("Code of Conduct") provide numerous procedural protections that Plaintiff was deprived of with respect to the allegations against her. Under the EO Policy, "[t]he Complainant and Respondent are entitled to an investigation conducted by an impartial investigator." EO Policy at 11. No such investigation occurred regarding the allegations against Plaintiff that were used as a basis for terminating Plaintiff.

126.    Under the Student Code of Conduct:

- "Any student involved in any conduct process begins with no presumptions of wrongdoing." (pages 7-8)

- "Tulane University uses an investigative procedure administered by trained professionals, subject to substantial review and specified rights to appeal." (page 8)

- "The mere fact that a situation is being referred for investigation does not indicate any determination of transgression of any kind. The investigation process is exactly that—a

neutral and fair investigation with no presumptions of wrongdoing. It will be up to the

investigator/adjudicator and/or decision maker to make determinations regarding any

potential transgressions subject to review and rights to appeal." (Page 8)

- "The conduct officer will review with the student relevant initiating information such as

  an incident report or other information that may support a determination that a

  transgression of the Tulane University Code has occurred, so as to offer the student the

  opportunity to respond and to present relevant witnesses or information."

- "The conduct officer has the discretion to consider what, if any, relevant witnesses or

  information may be introduced, including the discretion to seek additional information

  not provided initially or by the student."

- "The conduct officer also has the discretion to determine the weight and sufficiency of

  the information, and is charged with assessing the credibility of witnesses, if appropriate

  to do so, in making a determination."

- "After reviewing all of the evidence, the conduct officer will make a determination

  regarding whether any transgression of rules has occurred, and if applicable, appropriate

  consequences."

Plaintiff was deprived of all of these procedural protections because Karubian issued the

discipline and changed Plaintiff's work and educational conditions without bringing his concerns

to the Title IX office or other offices, and her termination thus constituted a breach of contract.

Far from a neutral investigation, Defendants instead permitted a biased party, Karubian, to make

sweeping decisions about Plaintiff's university career and work and academic opportunities. No

review of evidence occurred.

127.    The Code of Conduct further provides:

When the gatekeepers have determined that the investigation process should be utilized for individual students or for organizations, the matter will be referred to an investigator by the Director of Student Conduct. . . . During the Procedural Review, students will learn about the conduct investigation process in detail, including all rights, privileges, and responsibilities. Students will also learn about the variety of supportive resources in place to help students navigate this process. Students will also learn details about communication and timeline. Students will receive a written summary of the meeting for their reference. An advisor may also join students in this meeting. The Director or the investigator will issue a notice of investigation to necessary parties/persons, including the respondent/s and complainant/s . . . . The investigator will direct the investigation. . . . [A]ll investigators are trained in trauma-informed care. The investigation is designed to provide a fair and reliable gathering of the facts by a trained and impartial investigator, who will determine consequences, if any. All individuals, including witnesses, will be treated with appropriate sensitivity and respect throughout the investigation. When possible, the investigation will safeguard the privacy of the individuals involved in a manner consistent with applicable law and the Tulane Code. During the investigation, the investigator will provide the individuals a fair and equal opportunity to be heard, opportunities to submit information, and to identify witnesses who may have relevant information. The investigator may speak separately with individuals who are willing to participate and have information relevant to the determination of responsibility. As part of the investigation, the investigator may gather or receive information that is relevant to the determination of appropriate consequences, including information about any impacts on any member of the Tulane community. The investigator will also gather available physical or documentary evidence, including prior statements, any relevant communications, email messages, social media materials, text messages, and other records as appropriate and available.

Code of Conduct at 12-13. Rather than a neutral fact-finder, Karubian decided Plaintiff's

fate without the benefit of any investigation, expertise, training, or process. Plaintiff was

provided no information about her rights or resources available to her. She was not given

notice or an opportunity to be heard or to present witnesses. Trauma-informed practices

played no role whatsoever. Instead, Karubian terminated her for retaliatory reasons and

did not follow the required procedures. Defendants Van Bael and Frank acquiesced in the

termination that violated these procedures.

128.    The Code of Conduct further provides:

At the conclusion of the investigation, the investigator will prepare a written report that summarizes the information gathered, synthesizes the areas of agreement and disagreement among or between individuals and/or organizations with any supporting information or accounts, and includes an investigative finding regarding whether any rule has been violated. However, before the report is finalized, necessary individuals and/or organizations will be given the opportunity to review a draft of the investigation report for ten (10) business days, which may be presented in redacted format to protect the privacy rights of individuals involved in the investigation. Reviewing parties may submit comments to the draft report and submit questions they would like posed to other parties. Whether to pose questions or seek additional information will remain at the investigator's discretion based on the investigator's determination of relevance. Upon receipt of any additional information from individuals and/or organizations involved in the process, or after the ten (10) business day comment period has lapsed without comment, the investigator will make a final investigative determination, by a preponderance of the evidence, regarding whether a rule transgression has occurred and will recommend consequences, if any. . . . The Complainant and Respondent will be provided the opportunity to submit a written Impact Statement. These written Impact Statements will not be considered in the determination of responsibility, but will be provided to the investigator, and at the appropriate stage of the process, to the disciplinary authority or Hearing Panel for consideration in the determination of the sanction and remedy.

Code of Conduct at 15. None of these protections were afforded to Plaintiff because Karubian, with the acquiescence of others, short-circuited and skipped over the required process and instead unilaterally imposed severe discipline on Plaintiff.

129.    Plaintiff would have had the opportunity to seek alternative discipline, rather than the severe consequences she suffered:

In determining the appropriate consequences, the investigator shall consider the following factors:
- The nature of any behavior, including violence;
- The impact of behavior on other individuals or groups;
- The impact or implications of the behavior on the community or the University;
- Prior transgressions, both at the University or elsewhere, including criminal convictions;

Complaint for Damages – Jury Demand

- Whether a student or student organization has accepted responsibility for the conduct;
- Maintenance of a safe and respectful environment conducive to learning;
- Protection of the University community;
- Any applicable professional standards of behavior; and,
- Any other mitigating, aggravating, or compelling circumstances to reach a just and appropriate resolution in each matter.

Plaintiff was instead denied such an opportunity.

130. Plaintiff would have received extensive appeals procedure regarding the allegations against her. Code of Conduct at 20-22. She received no such opportunity.

131. Under Louisiana law, the basic legal relation between a student and a private university is contractual in nature and the publications given to the student are part of the terms of that contract. *See I.F. v. Administrators of the Tulane Educ. Fund*, 131 So. 3d 491, 498 (2013).

132. The disciplinary decisions of a private university may be reviewed for arbitrary and capricious action because the power of private institutions is not absolute and they may not cavalierly disregard or ignore the due process safeguards set forth in their own policies. *See I.F.,* 31 So. 3d at 499. A private university's failure to adhere to its own binding procedures can make a resulting decision arbitrary and capricious. *Id.*

133. Tulane acted in bad faith, thereby breaching the covenant of good faith and fair dealing implied in its contract with Plaintiff, by materially deviating from its conduct process, following unwritten rules and applying inapplicable policies, to Plaintiff's detriment.

134. Tulane's findings of responsibility and decision to suspend Plaintiff were arbitrary and capricious because Tulane failed to follow its own binding procedures, substantially and materially deviated from its procedures such that it was difficult for Plaintiff to discern precisely

which procedures were being applied to his student conduct process, and Tulane's decisions were made in disregard of the evidence or the proper weight thereof.

135.    The causes and objects of these obligations include obtaining an education, and the privileges of attending the institution of Tulane, Plaintiff paying tuition, fees, and costs. Defendants accepted Plaintiff's consideration and obtained the benefit of the Defendants' bargain, and Plaintiff performed.

136.    Defendants breached their contractual obligations to Plaintiff by failing to provide Plaintiff with an education free from sex-based discrimination and retaliation, and by terminating her participation in a key part of her education without a proper investigation and process, as provided for in Tulane's policies. Defendants' failure to provide Plaintiff with her contractually owed benefits is a material failure to perform that included nonperformance, defective performance, and delay in performance. Defendants' material failure to perform (breach) resulted in economic and emotional damages to the Plaintiff.

137.    Defendants' failure to perform was in bad faith as alleged herein, and thus Plaintiff is entitled to all damages regardless of foreseeability. LA. CIV. CODE art. 1997. These damages include damages for nonpecuniary loss as the nature of these specific obligations is intended to gratify a nonpecuniary interest. Because of the circumstances surrounding the formation and the nonperformance of the obligations, Defendants knew, or should have known, that their failure to perform would cause substantial nonpecuniary loss to Plaintiff. Additionally, Defendants intended to cause nonpecuniary damages, as alleged herein; thus, these damages may be recovered. LA. CIV. CODE art. 1998.

138.     As a direct and proximate result of Defendants' failure to perform, Plaintiff has sustained injuries and damages, including, but not limited to, expenses associated with mental health treatment, inconvenience, insult, mental distress, humiliation, anxiety, emotional pain and suffering, a denial of access to educational opportunities and benefits, and other economic or non-economic damages.

139.     Plaintiff is entitled to monetary compensation for pecuniary and nonpecuniary damages and injunctive relief requiring specific performance from Defendants. *See* LA. CIV. CODE art. 1986.

### NINTH CLAIM FOR RELIEF

### Whistleblower Law

140.     Louisiana Law prohibits "reprisal" against any employee who "discloses or threatens to disclose a workplace act or practice that is in violation of state law" after "advising the employer of the violation of the law." R.S. 23:967.

141.     Here, Plaintiff disclosed workplace acts and practices that violated the Louisiana Employment Discrimination Law.

142.     Plaintiff was subject to reprisal and punishment for reporting those violations of law.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows against defendants:

1.  For a declaration that Tulane, the Board of Tulane, and individual defendants violated Plaintiffs' rights under Title VII and Title IX.

2.  For an appropriately tailored injunction, after discovery (if necessary) into the current

practices of Tulane and Board of Tulane, requiring that Tulane and Board of Tulane

institute practices and procedures to comply with Title IX and Title VII to ensure

Plaintiff and other students and employees of Tulane receive protection from sex

discrimination and retaliation;

3. For compensatory, general, and special damages, in an amount according to proof;

4. For general damages, including damages for emotional pain, emotional distress,

   hardship, suffering, shock, worry, anxiety, sleeplessness, illness and trauma and

   suffering;

5. For prejudgment interest;

6. For exemplary and punitive damages against each individual and Doe defendant, in

   amounts according to proof and appropriate to punish defendants and deter others

   from engaging in similar misconduct;

7. For costs of suit, including reasonable attorneys' fees, under 42 U.S.C. § 1988; and

8. For such other relief as may be warranted or as is just and proper.

## X. DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury in this action.

Dated this 25th day of November, 2024

**MOST AND ASSOCIATES**

/s/ Hope Phelps

Hope Phelps
Attorney for Plaintiff,
JUDITH SANTANO

**LAW OFFICE OF AARON ZISSER**

Aaron B. Zisser
Attorney for Plaintiff,
JUDITH SANTANO