**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| JUDITH SANTANO | * | CIVIL ACTION NO. 2:24-cv-02748 |
| | * | |
|     Plaintiff, | * | |
| | * | |
| VERSUS | * | JUDGE GREG G. GUIDRY |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | DONNA PHILLIPS CURRAULT |
| TULANE UNIVERSITY, BOARD OF | * | |
| TULANE, JORDAN KARUBIAN, | * | |
| ERICA WOODLEY, MARCUS FOSTER, and | * | |
| TIFFANY SMITH | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

    Defendant, Dr. Jordan Karubian, Plaintiff's former PhD advisor at Tulane University, submits the following memorandum in support of his motion to dismiss all claims asserted against him, pursuant to Fed. R. Civ. P. 12(b)(6). Dr. Karubian served as Plaintiff's advisor from the start of her PhD program at Tulane in Fall of 2021, until late November of 2023, when she chose another advisor, Dr. Sunshine Van Bael to serve in that role. It is that change that appears to have precipitated Plaintiff's claims against Dr. Karubian.

    I.    Factual Background

    Plaintiff is a PhD candidate at Tulane University ("Tulane") pursuing a doctorate in Ecology and Evolutionary Biology ("EEB"). She began her doctoral studies in Fall 2021. Until late 2023, Dr. Karubian served as Plaintiff's primary academic advisor, though her advisory committee consisted of Dr. Karubian, Dr. Sunshine Van Bael, and Dr. Hannah Frank. In connection with her doctoral studies, Plaintiff conducted research during the summers at the Fundacion para la Conservacion de los Andes Tropicales ("FCAT"), an Ecuadorian non-governmental organization

with a preserve and research station in a remote area of western Ecuador. Though FCAT hosts researchers from Tulane and other universities, it is not operated by Tulane and employs local Ecuadorians, referred to as "FCATeros," as field research technicians, who are not employed by Tulane or supervised by Tulane employees.

Dr. Karubian has always had strong relationships with all his advisees until Fall of 2023, when his relationship with Plaintiff deteriorated. The difficulties began when Dr. Karubian received a report during a June 2022 meeting in Cartegena, Columbia, from the FCAT Program Manager, that FCATeros complained about Plaintiff's inappropriate/ unprofessional behavior at FCAT. In particular, FCATeros Gregory and Darwin made complaints to FCAT reserve director Luis Carrasco and FCAT station manager Karla Zambrando about Plaintiff's unprofessional behavior toward them, which made them feel uncomfortable. Dr. Karubian used a portion of this meeting time to talk to Plaintiff about remaining professional and respectful when working at FCAT.[1]

In June 2023, several FCATeros again reported that Plaintiff engaged in inappropriate and unprofessional conduct at FCAT. So, again, Dr. Karubian met with Plaintiff to discuss these new concerns. Plaintiff did not take this well; during the meeting – which was attended by others in her advisory committee -- she yelled at Dr. Karubian, accused him of being a liar, and said everyone hates him, among other things. After this meeting, Plaintiff discontinued contact with Dr. Karubian and actively sought other members of her committee to act as her primary advisor instead of Dr. Karubian. She asked Drs. Van Bael and Frank to act as her co-primary-advisors.

---

[1] Later, in February 2023, Plaintiff told Dr. Karubian about allegedly inappropriate behavior by one of the FCATeros at FCAT, with whom she had a relationship. Plaintiff said she needed to think about what she wanted done about this. Thereafter, Dr. Karubian submitted an incident report about Plaintiff's allegations.

After the meeting, Dr. Karubian and Dr. Van Bael sought counsel on how to move forward. The recommendation to both professors was for Plaintiff and Dr. Karubian to mediate through a Tulane mediator. The parties engaged in mediation in the late summer and early fall of 2023, but the professional mediator, Wendy Smith, discontinued the mediation stating there was no chance for resolution or repair of their fractured relationship.

Thereafter, Plaintiff's advisory committee members met together to decide how to best serve Plaintiff's interests – primarily, helping her achieve her PhD. The suggested road forward was a remediation plan to address the advisor/ advisee relationship, and other issues impeding Plaintiff's progress as a PhD candidate. Importantly, Plaintiff was to defend her thesis prospectus and she needed to identify a suitable advisor for her as soon as possible so she could stay on track to defend her prospectus, and ultimately, her dissertation.

In late November 2023, the committee met with Plaintiff to present and discuss the committee's remediation plan – with the goal to quickly get her on the right track to present her dissertation prospectus.[2] The remediation plan:

- Made clear Plaintiff's academic performance was satisfactory;
- Acknowledged Plaintiff's sexual assault report and offered resources;
- Specified communication and professionalism concerns regarding Plaintiff – including communication with Dr. Karubian as well as with third parties (e.g., FCATeros and other Tulane students);

---

[2] The committee issued a letter dated November 30, 2023, addressing Plaintiff's remediation plan, attached herein as Exhibit "A." The letter is referenced repeatedly in Plaintiff's Amended Complaint. (*See*, *e.g.*, R. Doc. 16-1, ¶¶ 61-2, 65-9, 81, 164(e)). A court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 988 F. Supp. 2d 696, 709 (E.D. La. 2013). The November 30, 2023 letter "terminating" her from Dr. Karubian's advisory is clearly central to Plaintiff's claims against Dr. Karubian, which is why the letter is explicitly referenced at least 9 times and indirectly referenced continuously throughout the Amended Complaint. Accordingly, the Court may consider the letter as part of Dr. Karubian's motion.

- Advised Plaintiff to work with a Tulane caseworker to draft a remediation plan related to these concerns as well as to set benchmarks for finding a suitable advisor for Plaintiff's PhD thesis and defending a prospectus (or request an extension);

- Advised Plaintiff that, going forward, she would have regular check-ins with her advisory committee to discuss professionalism and communication strategies;

- Set forth a requirement that Plaintiff produce satisfactory ratings on "most" elements of Plaintiff's remediation plan.

Plaintiff submitted her response in mid-January 2024, in which she identified Dr. Van Bael as her primary advisor, who accepted the role. Dr. Van Bael remains Plaintiff's primary advisor and Plaintiff successfully defended her dissertation prospectus before the end of the 2023-2024 academic year.

II.  Claims Against Dr. Karubian

Plaintiff asserts three tort claims against Dr. Karubian: negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. (R. Doc. 16-1, pp. 42-5). All claims should be dismissed on the pleadings because they do not (and cannot) plausibly state a claim for relief.

III.  Legal Standard.

In reviewing this Rule 12(b)(6) motion to dismiss, the Court must construe the Amended Complaint in favor of the Plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citing *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package Sys. Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148 (quoting *Twombly*, 550 U.S. at 555, 570).

    IV.    <u>Alleged Tortious Acts Prior to November 26, 2023, Are Prescribed.</u>

Plaintiff's claims against Dr. Karubian are all tort claims. Specifically, Plaintiff alleges Negligence, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress. R. Doc. 16-1. Tort claims for acts – as here -- prior to July 1, 2024, must have been filed within a year of when the injury or damage was sustained. La. Civ. Code. Art. 3492.[3]

Plaintiff's Amended Complaint describes alleged conduct by Dr. Karubian[4] that took place more than one year prior to Plaintiff's original filing.[5] Dr. Karubian's alleged delay in reporting Plaintiff's allegation of sexual assault in May 2023 (R. Doc. 16-1, ¶¶ 49-51), Plaintiff's August 2023 meeting with Dr. Karubian, Dr. Frank, and Dr. Van Bael (R. Doc. 16-1, ¶ 59), and any allegations pertaining to Dr. Karubian's alleged acts or omissions prior to November 26, 2023, including the "lead-up" to the November 30, 2023 remediation plan letter (e.g., R. Doc. 16-1, ¶ 157) -- are untimely. Plaintiff's only timely claims against Dr. Karubian, though unavailing for the reasons discussed below, relate to the Committee's November 30, 2023 remediation plan and its alleged damaging impact on Plaintiff. The untimely claims must be dismissed.

---

[3] A two-year period of liberative prescription for delictual actions took effect as of July 1, 2024; however, this change was prospective only and therefore does not apply here. *See Parker v. Chet Morrison Contractors, LLC*, 2024 WL 3970312 at *7 (E.D.La. 8/28/2024).
[4] Specifically, R. Doc. 16-1, ¶¶ 47-9, 59, 61-3, 67-75, 81-3, 88, 143, 157, and 230.
[5] The Original Complaint was filed on November 25, 2024. R. Doc. 1.

V.      The Type of Harm Alleged Is Outside the Scope of Dr. Karubian's Duties to Plaintiff.

The crux of Plaintiff's negligence claim is Dr. Karubian allegedly failed to adhere to "required procedures" relative to the discontinuance of her advisor-advisee relationship and FCAT attendance, and failed to report Plaintiff's alleged assault to the Title IX office promptly, "despite his duties, enumerated in Tulane's policies and implicit in his role as her advisor and supervisor, to ensure she is treated fairly, provided appropriate process, and protected from ongoing discrimination or retaliation." (R. Doc. 16-1, ¶ 230). These are academic decisions/ matters.

Academic decisions are generally not actionable under tort law; universities are granted broad discretion in academic matters and educational malpractice claims are not permitted. *See Mills v. Tarver*, 340 So.3d 959, 971 (La.App. 1 Cir. 2021) ("It is not the place of the court system to micro-manage the adequacy of instruction or management at institutions of higher learning, even if it were feasible, which we feel it is not."); *Miller v. Loyola University of New Orleans*, 829 So.2d 1057, 1060 (La.App. 4 Cir. 2002) ("[P]ublic policy . . . accords educational institutions broad discretion in matters purely academic ... and directs judicial non-interference in the decisions with that discretion."). Courts "must accept . . . 'an academic decision that is not beyond the pale of reasoned academic decision-making when viewed against the background of the student's entire career at the University[.]'" *Seals v. Mississippi*, 998 F. Supp. 2d 509, 523 (N.D. Miss. 2014) (quoting *Wheeler v. Miller,* 168 F.3d 241, 250 (5th Cir.1999) (Court rejected disgruntled Ph.D. student claims that false accusations of cheating resulted in inadequate grades, a punitive remediation plan, denial of participation in an internship program, and ultimate dismissal from the

program.). Dr. Karubian and the advisory committee's instruction to Plaintiff to select a <u>suitable</u> advisor[6] is an academic matter and does not give rise to a cognizable tort claim.

Plaintiff is clearly attempting to repackage an "educational malpractice" claim as "garden variety" negligence. Louisiana courts have rejected similar attempts. *See Mills*, 340 So.3d at 970 (La.App. 1 Cir. 2021). In *Mills,* several nursing students alleged negligence against a university and several individual faculty and administrators based on alleged acts and omissions following the students' filing of formal grievance procedures. They alleged the individual defendants' acts were retaliatory and <u>negligent</u>. The court, noting plaintiffs were seeking to hold the individual defendants liable for actions performed <u>as part of their university jobs</u>, found "no merit to the plaintiffs' argument that the trial court erred in dismissing their 'negligence' claims" on summary judgment – finding the student-plaintiffs' claims arose from conventional obligations and were legally unrecognized educational malpractice claims. *Id.* at 972; *Miller v. Loyola University of New Orleans*, 829 So.2d 1057, 1061 (La.App. 4 Cir. 2002) ("Louisiana law does not recognize a cause of action for educational malpractice under contract or tort law.").

As in *Mills*, Plaintiff's claim is thinly disguised educational malpractice. (*Miller v. Loyola University of New Orleans*, 829 So.2d 1057, 1061 (La.App. 4 Cir. 2002). <u>Personal liability cannot be imposed upon a professor simply because of their general administrative responsibility for performance of some function of employment</u>. *See Mills* 340 So.3d at 971; *see also Mier v. Sompo America Insurance Co.*, 2023 WL 2950631 at *4 (M.D.La. 2/13/2023). Plaintiff's "negligence" claim sits squarely in the realm of (unavailable) educational malpractice and should be summarily dismissed accordingly.

---

[6] The wording here is important. The Plan did not say to select a "new" – but rather a "suitable" advisor. Plaintiff had expressed discontent with Dr. Karubian and her preference for Drs. Van Bael and Frank. Therefore, she was advised to notify the committee who she considered a <u>suitable</u> advisor – which theoretically could have included Dr. Karubian if that was her choice. It was not.

VI.    <u>Plaintiff's Negligent Infliction of Emotional Distress Claim Fails Because She Cannot Meet the Heavy Burden of Establishing Outrageous Conduct By Dr. Karubian.</u>

To recover under a claim of negligent infliction of emotional distress, a plaintiff must prove five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). A negative answer to any of those inquiries results in a determination of no liability. *Favret v. Favret*, 371 So.3d 511, 525 (La.App. 4 Cir. 2023) (citing *Mathieu v. Imperial Toy Corp.,* 646 So. 2d 318 (La. 1994)).

To recover for negligent infliction of emotional distress without an accompanying physical injury, a plaintiff must prove the underlying cause of action, *i.e.*, the negligence claim. There must be proof that the defendant violated some legal duty owed to the plaintiff, and the plaintiff must meet the heavy burden of proving outrageous conduct by the defendant. *Pelitire v. Rinker*, 270 So.3d 817, 829-30 (La.App. 5 Cir., 2019). Louisiana courts have limited recovery to those cases involving factual circumstances where the defendant's conduct was declared outrageous because the defendant was found to have breached a "special direct duty to the plaintiff and where the resulting mental distress the plaintiff suffered was easily associated with the defendant's conduct." *Id.* at 830 (quoting *Covington v. Howard*, 146 So.3d 933, 937, 938 (La.App. 2 Cir. 2014). "The common thread of the special circumstances NIED cases collected in *Moresi* [*v. State, Through Dept. of Wildlife & Fisheries,* 567 So.2d 1081 (La. 1990)] is that each of those cases present facts proving that the defendant's act created a very strong and obvious likelihood that the plaintiff

would suffer genuine and severe mental distress." "Typically, the defendant's conduct under the circumstances is deemed so unconscionable or outrageous such that a person of ordinary sensibilities would suffer genuine and severe emotional distress." *Covington*, 146 So.3d at 938, 940.

Examples of extraordinary circumstances supporting a claim for NIED include mishandling of corpses (*see French v. Ochsner Clinic*, 200 So.2d 371 (La.App. 1967); *Morgan v. Richmond,* 336 So. 2d 342 (La. App. 1st Cir. 1976); *Shelmire v. Linton*, 343 So.2d 301 (La.App. 1977)) and fear of developing cancer where defendants negligently exposed plaintiffs to carcinogenic materials (*see Lester v. Exxon Mobil Corp.*, 120 So.3d 767 (La.App. 4 Cir. 2013); *In re New Orleans Train Car Leakage Fire Litigation,* 795 So.2d 364 (La.App. 4 Cir. 2001)).

As previously explained, Plaintiff's allegations that pre-date November 26, 2023, are not viable – leaving only the November 30, 2023 plan (and allegations post-dating it) as the viable claim. As to that, Plaintiff alleges: she sought to change academic advisors prior to receiving Dr. Karubian's November 30, 2023, letter (R. Doc. 16-1, ¶ 56), and that, thereafter, her advisory committee advised Plaintiff to select a new primary advisor.[7] (*See* R. Doc. 16-1, ¶¶ 61-2; Exhibit "A"). Plaintiff selected Dr. Van Bael, whom she had previously asked to be her advisor, and, as a condition, Dr. Van Bael advised Plaintiff not to return to FCAT. (R. Doc. 16-1, ¶ 64). Nothing about this chain of events remotely resembles "unconscionable or outrageous" conduct of the sort recognized as actionable by Louisiana courts. Indeed, Dr. Karubian's alleged conduct did not create an "especial likelihood of genuine and serious emotional distress, arising from special circumstances."[8] Plaintiff remains a doctoral candidate in good standing at Tulane, and, by all

---

[7] The Advisory Committee's letter did not terminate Plaintiff from Dr. Karubian's advisory. Rather, it advised her to select a suitable advisor for her Ph.D. thesis. (Exhibit "A," p. 3).
[8] *See Lester v. Exxon Mobil Corp*., 120 So.3d 767, 774 (La. App. 4 Cir., 2013)

accounts, has a successful advisor-advisee relationship with Dr Van Bael. Plaintiff cannot meet the high burden of stating a claim for NIED.

Even if the untimely claims are included, Plaintiff still cannot meet the high burden for negligent infliction of emotional distress. Plaintiff claims Dr. Karubian: failed to forward her report of assault to the Title IX office promptly as required by Tulane policy;[9] disregarded her request for discretion and privacy in his handling of the report; insinuated Plaintiff's time at FCAT during the summer of 2023 would strain their relationship even before the academic year was over; strongly encouraged her to find an alternative field site for her research; failed to report Plaintiff's accounts of a hostile environment through official FCAT channels; instructed Plaintiff not to discuss the matter outside of the discussions with him; and contacted people whom he knew Plaintiff would go to for support in order to prejudice them against her. Even if each of Plaintiff's allegations is true, which is denied, these issues do not resemble the type of extreme and disturbing results Louisiana courts have found to reasonably support an NIED claim unaccompanied by physical injury. Plaintiff cannot satisfy the high burden of proving NIED even with the inclusion of these untimely allegations and these claims must be dismissed.

VII. Plaintiff's *Intentional* Infliction of Emotional Distress Claim Fails For the Same and More Reasons.

In order to recover for intentional infliction of emotional distress ("IIED"), a plaintiff must establish (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress

---

[9] Plaintiff also references Dr. Karubian's Title IX reporting obligations in support of her negligence and negligent infliction of emotional distress claims. (*See* R. Doc. 16-1, ¶ 230). Claims based on Title IX are not cognizable against individual school employees, even if repackaged as negligence claims. Title IX's enforcement power is limited to the funding recipient, meaning that only institutions or programs receiving federal financial assistance can be held liable for violations, not individual employees such as professors. *See A.W. v. Humble Independent School Dist.*, 25 F.Supp.3d 973 (S.D.Tex. 2014) ("[T]he Supreme Court [has] acknowledged that Title IX applies to 'institutions and programs that receive federal funds . . . but [Title IX] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.") (citing *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009). Plaintiff cannot rely on Title IX to support claims against Dr. Karubian in his individual capacity.

suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1023 (La. 2000) (citing *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)). Even if Plaintiff can establish she suffered severe emotional distress as a result of Dr. Karubian's alleged conduct,[10] which is denied, Plaintiff cannot establish the first or third elements of the claim.

    As to the first element, the Louisiana Supreme Court has recognized:

> It has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Nicholas*, 765 So. 2d at 1022 (quoting American Institute's Restatement (Second) of Torts § 46).

    Dr. Karubian's alleged conduct falls resoundingly short of this high standard. Cases in which courts have found conduct sufficiently extreme and outrageous to support an IIED claim include *Bustamento v. Tucker,* 607 So.2d 532 (La. 1992) (Defendant made near-daily improper sexual comments and advances, threatened physical violence, and attempted to run over the plaintiff with a forklift); *Bristow v. Drake St. Inc.*, 41 F.3d 345 (7th Cir. 1994) (employer subjected the employee to a protracted series of "outrages that included firing [and promptly rehiring the employee] between 12 and 40 times, yelling at her, following her around at work, stalking her in non-working hours, banging on the door of her apartment late at night, calling her ten to thirty

---

[10] Again, the only timely conduct relates to the Committee's November 30, 2023 remediation plan. Accordingly, the Court should disregard Plaintiff's allegations relating to Dr. Karubian's alleged delayed reporting of sexual assault and Plaintiff's August 2023 committee meeting for purposes of its IIED analysis.

times a night, and leaving messages on her telephone answering machine that he hated her and wished her dead); and *Walters v. Rubicon, Inc.,* 96–2294, 706 So.2d 503 (La.App. 1 Cir. 1997) (extreme and outrageous conduct was shown when plaintiff's supervisors continuously abused plaintiff verbally, ordered him to ignore company policy which he saw as illegal, harassed him with phone calls, endangered him and his son when a supervisor cut in front of him in traffic, and another supervisor pointed his hand at him in the form of a gun and mouthed "pow").

Louisiana state and federal courts also routinely turn to non-Louisiana cases when analyzing IIED claims, recognizing that Louisiana's approach to IIED claims is consistent with national jurisprudence. *See Nicholas*, 765 So. 2d at 1027 (establishing "conformity with the national jurisprudence."). One non-Louisiana case is particularly instructive here. In *Shah v. U. of Texas S.W. Med. Sch.*, 54 F. Supp. 3d 681 (N.D. Tex. 2014),[11] plaintiff, a former medical school student, alleged: 1) a defendant-professor gave him low grades for professionalism based on personal animus due to Plaintiff's disability and ethnicity; 2) a second defendant-professor gave him a failing grade for his internal medicine rotation based purely on the fact that the first defendant-professor gave him a low grade in his prior rotation; 3) a third professor wrote a letter in support of the recommendations of the former two defendant-professors (that Plaintiff be removed from the medical school) containing allegations that were blatantly false, exaggerated, and made in blind support of his colleagues' statements of which he lacked any personal knowledge; and, 4) a fourth faculty member denied his appeal without explanation. The court held that such conduct was not extreme and outrageous because it did not arise to conduct "beyond all possible bounds of decency," "atrocious," and/or "utterly intolerable in a civilized society." The

---

[11] Texas and Louisiana's IIED elements require defendant's conduct to be extreme and outrageous and the emotional distress to be severe. *See Shah*, 54 F. Supp. At 705-6. ("[T]o prove that the defendant's **conduct** was '**extreme** and **outrageous**,' the plaintiff must demonstrate that the defendant's **conduct** was 'beyond all possible bounds of decency,' 'atrocious,' and 'utterly intolerable in a civilized society.'").

court dismissed Plaintiff's IIED claims against the professors, pursuant to Fed. R. Civ. P. 12(b)(6), because their behavior was not sufficiently extreme and outrageous to support an IIED claim as a matter of law.

Additionally, in *Doe v. Emerson Coll.*, 153 F.Supp.3d 506, 517-8 (D. Mass. 2015), the district court held a university student's dissatisfaction with the investigative process and conclusions relative to a rape allegation, including allegations of insensitivity and judgment on the part of two Title IX investigators, were insufficient to support a claim of negligent or intentional infliction of emotional distress. The court found Plaintiff's allegations "largely rest[ed] on [Plaintiff]'s dissatisfaction with [University]'s policies and procedures, what she perceived to be their inadequate sensitivity to her issues, and the results of the various investigations.[12] The court held defendants' conduct was neither extreme nor outrageous, and the amended complaint contained no additional facts that state a plausible claim for intentional or reckless infliction of emotional distress." *See Doe v. Emerson Coll.*, 153 F.Supp.3d 506, 515-8 (D. Mass. 2015). Accordingly, the court granted judgment on the pleadings. *Id.* at 518.

In *Harman v. Sullivan Univ. Sys., Inc.*, CIV.A. 03-738-C, 2005 WL 1353752 at *7-8 (W.D. Ky. Jun. 6, 2005), the court held defendant-university intentionally misleading plaintiff into thinking that its radiology technologist program was properly accredited, and that she could take the American Registry of Radiologic Technologists examination, did not rise to the level of egregious conduct required for the tort of intentional infliction of emotional distress.

In *Holloway v. Howard Univ.*, 206 F.Supp.3d 446, 448, 453-4 (D.D.C.2016), plaintiff alleged that, "because she criticized and 'burned a bridge' with her former advisor . . . he poisoned

---

[12] *See also Doe No. 1 v. Texas Christian Univ.*, No. 3:20-CV-0106-M, 2021 WL 12289429 at *23 (N.D. Tex. Jan. 12, 2021) (IIED claim barred where Plaintiff was relying on the same alleged conduct as part of her discrimination, harassment, and retaliation claims).

the well at the school when she applied to be readmitted." The court found that while plaintiff may have experienced pain and suffering, she failed to allege facts sufficient to establish liability for intentional infliction of emotional distress.

Dr. Karubian's alleged conduct was neither extreme nor outrageous. Plaintiff's Amended Complaint fails to (and cannot) plausibly allege Dr. Karubian's <u>desire</u> to inflict severe emotional distress or knowledge that severe emotional distress would be certain or substantially certain to result from his conduct. Plaintiff simply recites general claim elements ("Defendants engaged in extreme and outrageous conduct [and] specifically intended for their conduct to cause Plaintiffs to suffer emotional distress."), without the factual allegations to support the heightened requirements of this tort. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to survive a motion to dismiss]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor are courts bound to accept as true "a legal conclusion couched as a factual allegation." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Lastly, Plaintiff's Amended Complaint does not plausibly allege Dr. Karubian knew severe emotional distress would be certain or substantially certain to result from his conduct. The consequences of Dr. Karubian's alleged conduct are that Plaintiff has a new advisor (who she requested as a replacement advisor well before the November 30, 2023 remediation plan) and research site. This does not amount to intentional conduct designed to cause Plaintiff emotional distress.

Plaintiff's IIED claim against Dr. Karubian does not present a triable issue and must be dismissed.

## **Conclusion**

Plaintiff's claims against Dr. Karubian are not cognizable. Dr. Karubian owed no special duty to Plaintiff outside of his professorial responsibilities and his alleged conduct was neither extreme nor outrageous as a matter of law. Plaintiff's Amended Complaint, including threadbare recitation of legal elements, does not create a triable issue of fact relative to her legal theories against Dr. Karubian.

Accordingly, Defendant, Dr. Karubian, respectfully prays that this Honorable Court grant his motion to dismiss pursuant to Rule 12(b)(6) and dismiss Plaintiff's claims with prejudice, at Plaintiff's cost.

**Respectfully Submitted,**

**FRILOT L.L.C.**

*/s/ Leslie W. Ehret*
Leslie W. Ehret (La. Bar No. 18494)
Christopher J. Nunziato (La. Bar No. 40471)
lehret@frilot.com
cnunziato@frilot.com
1100 Poydras Street, Suite 3800
New Orleans, LA 70163-3600
Telephone: 504-599-8000
Facsimile: 504-599-8100

***Counsel for Dr. Jordan Karubian***

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on this day, I electronically filed the above and foregoing with the Clerk of the Court using the MEC electronic filing system which provided notice of such filing to all counsel of record.

SO CERTIFIED this the 28th day of March, 2025.

                              */s/ Leslie W. Ehret*