<div align="center">

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

</div>

JUDITH SANTANO                  CIVIL ACTION NO. 2:24-CV-2748

VERSUS                             JUDGE GREG G. GUIDRY

TULANE UNIVERSITY ET AL.        MAGISTRATE DONNA PHILLIPS

                                    CURRAULT

<div align="center">

MEMORANDUM IN SUPPORT OF
**DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS**

</div>

**MAY IT PLEASE THE COURT:**

The Administrators of the Tulane Educational Fund ("Tulane" or "Defendant"),[2] and individually named Defendants, Erica Woodley, Tiffany Smith, Avery Pardee and Jonathan Small (collectively, "Individual Defendants") (together with Tulane, "Defendants"), respectfully submit this Memorandum in Support of their Motion to Dismiss all claims in the Amended Complaint (R. Doc 19) against them, filed by Plaintiff, Judith Santano, pursuant to Fed. R. Civ. P. Rule 12(b)(6). As shown below, Plaintiff's Amended Complaint fails to sufficiently allege essential facts in support of her claims against Defendants including alleged violations of Title VII, Title IX, Louisiana employment and whistleblower laws, negligence, and breach of contract. Therefore, all claims against Defendants asserted in the Amended Complaint against them should be dismissed *with prejudice*.

## I.    OVERVIEW

This is a case where a graduate student, who is still enrolled at Tulane and on track to complete her Ph.D. program, disagrees with the academic and administrative decisions of the university, which expended substantial resources investigating her reports of international sexual

---

[2] Defendants appear solely for the purpose of supporting the instant motion, and expressly reserve and do not waive, all rights, motions, arguments, defenses, and objections. Plaintiff improperly named as defendants "Tulane

assault by a third party and later reports of retaliation against her academic advisor, who did not oppose her expressed desire for a new advisor. Plaintiff attempts to throw everything and the kitchen sink in her disjointed 59-page Amended Complaint which asserts twelve separate claims against Tulane and individual defendants who had any role, however small, in the administrative and academic decisions, including unidentified defendants "Does 1-20." At its heart, Plaintiff's allegations boil down to a Title IX gender discrimination and retaliation claim; however, because Title IX does not apply extraterritorially to conduct outside of the United States,[3] and explicitly does not provide for emotional distress damages,[4] Plaintiff's allegations and attempt to pigeon-hole her claims into various other legal theories including Title VII, state law employment statutes, and tort and contract claims fail as a matter of law. Under *Iqbal* and *Twombly*, Plaintiff simply fails to allege the essential elements of her claims against Defendants and her own allegations supply the factual and legal basis for dismissal under Federal Rule of Civil Procedure 12(b)(6).

## II.    RELEVANT PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

### A.    Relevant Procedural History

Plaintiff filed her original complaint on November 25, 2024. R. Doc. 1. She later amended her complaint on February 19, 2025. R. Doc. 19. Amongst other things, the Amended Complaint removes as named defendants, Hannah Frank and Sunshine Van Bael, names two new defendants, Avery Pardee and Jonathan Small, and adds three additional claims – Title VII Inadequate Investigation (Count Two), Title VII Erroneous Outcome (Count Three), and Title IX

---

University" and "Tulane Board" which are improper juridical entities for the reasons discussed herein. The proper juridical entity for Tulane is the Administrators of the Tulane Educational Fund.

[3] "No person *in the United States* shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681 (emphasis added).

[4] *Cummings v. Premier Rehab Keller, PLLC*, 596 US 212 (2022).

PD.48887258.2

Failure to Investigate (Count Five). Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission regarding alleged retaliation on September 4, 2024, and a charge of discrimination with the EEOC regarding alleged inadequate investigation of sexual assaults and retaliation on November 18, 2024. R. Doc. 19 at ¶¶ 13, 14.

### B.    Plaintiff's Factual Allegations in the Amended Complaint

#### 1.    Plaintiff's Research and Alleged Experience at FCAT

Plaintiff is a current Tulane student who enrolled as a Ph.D. candidate in Fall 2021 studying avian ecology. R. Doc. 19 at ¶¶ 3 and 15.  She alleges that in the summer of 2021 (prior to her enrollment at Tulane) Beto Gonzalez, a staff member at an Ecuadorian research facility called FCAT, made sexually explicit comments to her. R. Doc. 19 at ¶¶ 3, 29, 31. She then claims that she returned to FCAT during the Summer of 2022 and allegedly experienced sexual assault at the hands of Gonzalez on two occasions. R. Doc. 19 at ¶¶ 32-36. When she enrolled at Tulane, Plaintiff alleges that Defendant Jordan Karubian, a senior professor at Tulane's Department of Ecology and Evolutionary Biology, academically advised her. R. Doc. 19 at ¶¶ 37-38; 43. According to Plaintiff, FCAT "partners" with Tulane and hosts undergraduate and "graduate student researchers at Tulane and other universities." R. Doc. 19 at ¶¶ 3, 45.

Plaintiff alleges that in February 2023, she reported the alleged summer 2022 assaults by Gonzalez to Karubian but that he did not "forward Plaintiff's report to the university until on or about May 4, 2023." R. Doc. 19 at ¶¶ 49-50. Plaintiff alleges that she was unhappy with Defendant Karubian's response to her report and in early August 2023 "having become disenchanted and frustrated with Karubian . . . asked professors Sunshine Van Bael and Hannah Frank to be her co-advisors." R. Doc. 19 at ¶¶ 53, 56-60. Plaintiff alleges that at that time, Van Bael and Frank declined her request. *Id*. Plaintiff also alleges that she had a meeting in August 2023 with Frank, Van Bael, and Karubian to discuss her research, her relationship with

Karubian, and her disappointment with how Karubian handled her report of sexual assault. R. Doc. 19 at ¶¶58-59.

### 2. November 30, 2023 Alleged Termination of Plaintiff From Advisory of Defendant Karubian

Plaintiff alleges that on November 30, 2023, Plaintiff's advisory committee issued her a letter that Defendant Karubian drafted and signed which allegedly "terminated" her from Defendant Karubian's advisory.[5] R. Doc. 19 at ¶¶ 61-62. According to Plaintiff, the letter "enumerated reasons for the action *other than* her reporting her sexual assaults or her displeasure with Karubian's handling of her reports" including alleged misconduct by Plaintiff at FCAT and the August 2023 meeting. R. Doc. 19 at ¶¶ 65, 74 (emphasis supplied).

In fact, the November 30, 2023 letter was not a "termination" letter, instead, it outlined a remediation plan to support Plaintiff academically including the following:

- Made clear Plaintiff's academic performance was satisfactory;

- Acknowledged Plaintiff's sexual assault report and offered resources;

- Specified communication and professionalism concerns – including communication with Defendant Karubian as well as with third parties

- Advised Plaintiff to work with a Tulane caseworker to draft a remediation plan related to these concerns as well as to set benchmarks for finding a suitable advisor for Plaintiff's PhD thesis and defending a prospectus (or request an extension);

---

[5] Plaintiff's advisory committee issued a letter dated November 30, 2023, addressing Plaintiff's remediation plan, attached herein as Exhibit "A." The letter is referenced" repeatedly in Plaintiff's Amended Complaint. (*Se*e, *e.g.,* R. Doc. 19 ¶¶ 61-2, 65-9, 81, 164(e)). A court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 988 F. Supp. 2d 696, 709 (E.D. La. 2013). The November 30, 2023 letter "terminating" her from Defendant Karubian's advisory is clearly central to Plaintiff's claims against Dr. Karubian, which is why the letter is explicitly referenced at least nine times and indirectly referenced continuously throughout the Amended Complaint. Accordingly, the Court may consider the letter.

- Advised Plaintiff that, going forward, she would have regular check-ins with her advisory committee to discuss professionalism and communication strategies;

- Set forth a requirement that Plaintiff produce satisfactory ratings on "most" elements of Plaintiff's remediation plan.[6]

Plaintiff also alleges that consistent with her earlier request in August 2023, Van Bael agreed to be her new advisor. R. Doc. 19 at ¶ 64. Plaintiff alleges that she "has been unable to return to FCAT to continue her research" and that she spent the summer of 2024 "conducting lab research in California for approximately two weeks and otherwise conducting research at Tulane." R. Doc. 19 at ¶ 88.

### 3.    Tulane's Investigations into Plaintiff's Complaints

Plaintiff alleges that from February 2023 to April 10, 2024, Tulane investigated her complaints of sexual assault at FCAT pursuant to Tulane's Equal Opportunity Policy ("EO Policy"), which was expanded to include potential retaliation in February 2024. R. Doc. 19 at ¶¶ 85, 90. According to her own allegations, the investigation was detailed. Tulane hired an outside investigator, Defendant Avery Pardee, who is a lawyer at the law firm of Jones Walker, LLP. Pardee traveled to Ecuador to conduct interviews and rendered a report that was 456 pages including appendices that contained exhibits and lengthy transcripts. R. Doc. 19 at ¶¶ 23, 69, 106, 164e. Nevertheless, Plaintiff claims that the investigation was flawed in that Defendant Pardee was not neutral and exhibited gender bias in her questioning and determinations. R. Doc. 19 at ¶¶ 89-94. Plaintiff also claims that the investigation into her complaint that Defendant Karubian retaliated against her by virtue of the November 30, 2023 "termination" letter was also flawed. R. Doc. 19 at ¶¶ 112-117. Plaintiff claims that she was informed of the outcome of the investigation on July 26, 2024. The investigator concluded that Plaintiff was neither sexually

assaulted at FCAT nor experienced retaliation. R. Doc. 19 at ¶¶ 95, 103-118, 165. Plaintiff filed an appeal of the investigation on September 3, 2024. R. Doc. 19 at ¶ 102. On November 19, 2024, Plaintiff alleges that Defendant Jonathan Small, Tulane's Vice President for Human Resources and Institutional Equity, notified Plaintiff of the outcome of the appeal which upheld the recommendations of the investigator, Defendant Pardee. R. Doc. 19 at ¶¶ 22, 102-103. Plaintiff contends that the appeal decision was flawed and reached the incorrect conclusion. R. Doc. 19 at ¶¶ 104-106. Also, Plaintiff alleges that on September 9, 2024, the investigation report was forwarded to Dennis Kehoe who was responsible for coordinating a possible hearing. R. Doc. 19 at ¶ 119. Plaintiff alleges that a hearing was held on December 11, 2024 before a hearing panel regarding her retaliation allegation, that the hearing lasted five hours and included testimony from the parties and several witnesses, and that the hearing panel submitted its decision to the Provost on December 16, 2024 which found no evidence that Defendant Karubian engaged in any form of retaliation. R. Doc. 19 at ¶¶ 124-129. Plaintiff contends that the hearing panel's decision was wrong. R. Doc. 19 at ¶¶ 130-132.

### 4.  Plaintiff's Complaints Regarding Tulane's Title IX Office

Plaintiff also alleges that Tulane's Title IX Office failed to provide proper oversight of the investigations as well as the investigator, Defendant Pardee, and did not have sufficient measures to address "the nuances involved in incidents occurring abroad." R. Doc. 19 at ¶¶ 133, 136. Plaintiff contends that various aspects of the investigations did not comport with Title IX and that the structure of Tulane's Title IX office was also somehow flawed. R. Doc. 19 at ¶¶ 133-140.

---

[6] Exhibit A.

PD.48887258.2

### 5.     Plaintiff's Specific Claims

The Amended Complaint asserts twelve causes of action. In "Count 1: Title VII retaliation," Plaintiff alleges that her "removal" from Defendant Karubian's advisory and inability to return to FCAT to conduct research after her complaint of sexual assault/harassment at FCAT by Gonzalez constituted retaliation in violation of Title VII by Tulane. R. Doc. 19 at ¶¶ 147-159. In "Count 2: Title VII – inadequate investigation," Plaintiff alleges that Tulane violated Title VII by conducting an inadequate investigation into the underlying sexual assault and retaliation claims and allegedly exhibited gender bias during the investigation. R. Doc. 19 at ¶¶ 160-174. In "Count 3: Title VII – erroneous outcome," Plaintiff alleges that Tulane violated Title VII in erroneously concluding that sexual assault did not occur in Ecuador and that Defendant Karubian did not engage in retaliation. R. Doc. 19 at ¶¶ 175-179. In "Count 4: Title IX retaliation," Plaintiff alleges that Tulane retaliated against her by excluding her from FCAT and "terminating" the advisory relationship of Plaintiff and Defendant Karubian after she engaged in protected activity of reporting her sexual assault and harassment while "conducting research at FCAT." Plaintiff also alleges that Tulane failed to provide her with supportive measures following her reports. R. Doc. 19 at ¶¶ 180-191. In "Count 5: Title IX failure to investigate and take corrective actions," Plaintiff alleges that Tulane violated Title IX for allegedly failing to adequately investigate her complaint of retaliation against Defendant Karubian and that the investigation was not properly coordinated or overseen by the Title IX Coordinator. R. Doc. 19 at ¶¶ 192-210. In "Count 6: state law – retaliation and sex discrimination," and "Count 12: Whistleblower Reprisal,"[7] Plaintiff alleges Tulane violated La. R.S. 23:332(A)(1) ("LEDL") and La. R.S. § 23:967 based upon the same facts in support of her Title VII discrimination and

---

[7] While Count 12 does not specify the defendants the claim is asserted against, Defendants presumes it is only against Tulane.

retaliation claims. R. Doc. 19 at ¶¶ 211-215; 305-307. In "Count 7: negligent supervision, training, staffing," Plaintiff alleges that Tulane and Individual Defendants Small, Smith, Foster, and Woodley had a duty to properly supervise, train and monitor employees to comply with EEO, Title IX and other policies to remedy incidents of sex-based discrimination and retaliation and breached that duty R. Doc. 19 at ¶¶ 216-226. In "Count 8: negligence and negligent infliction of emotional distress," and "Count 10: Intentional Infliction of Emotional Distress," Plaintiff alleges that all defendants caused her injury and emotional distress by retaliating against her and permitting a flawed investigation. R. Doc. 19 at ¶¶ 227-241; 245-248. In "Count 9: Respondeat Superior," Plaintiff alleges that Tulane is liable for the torts engaged by its employees. R. Doc. 19 at ¶¶ 242-244. Finally, in "Count 11: Breach of Contract," Plaintiff alleges that Tulane breached its EO Policy, its Faculty Handbook, and the Code of Student Conduct on reporting obligations, retaliation, and investigation. R. Doc. 19 at ¶¶ 249-304.

Plaintiff contends that she suffered damages including emotional, mental, and physical pain and injuries and loss of income. R. Doc. 19 at ¶¶ 141, 142. In her Prayer for Relief, Plaintiff seeks declarations that Tulane violated her rights under Title VII and Title IX and seeks an injunction "requiring that Tulane and Board of Tulane institute practices and procedures to comply with Title IX and Title VII" as well as changes to policies, structural changes to the Title IX process, and ongoing monitoring. R. Doc. 19 at Prayer for Relief, 1 and 2.

## III.    SUMMARY OF ARGUMENT

Dismissal of all claims against Defendants is warranted. As an initial matter, the "Board of Tulane" is an improper defendant pursuant to Fed. R. Civ. P. 17(b)(3) because the Board is not an independent corporation or juridical entity and thus lacks capacity to be sued. Plaintiff's attempt to name unknown defendants "DOES 1-20" likewise must be dismissed for insufficiency of service of process under Rule 12(b)(5) and Rule 12(b)(6) because Plaintiff fails to specifically

allege any facts against these unknown defendants and improperly attempts to lump in any individuals who were employees at Tulane and who may have had a role in the administrative and academic decisions at issue. Plaintiff's Title VII retaliation claim (Count 1) against Tulane should be dismissed because Plaintiff fails to allege that she engaged in any protected activity under Title VII or that she suffered a Title VII injury as her allegations concern conduct related to her academic advisory relationship and research she conducted as a Ph.D. student and not as an employee of Tulane. Plaintiff's Title VII claims for inadequate investigation (Count 2) and erroneous outcome (Count 3) fail as a matter of law as these claims are nothing more than Title IX claims pigeon-holed into Title VII claims and Plaintiff cannot otherwise allege a *prima facie* case of Title VII employment discrimination. Any Title VII claims prior to November 9, 2023, for alleged Title VII retaliation and January 23, 2024, for alleged Title VII sex discrimination must be dismissed for failure to timely exhaust administrative remedies. Plaintiff's LEDL (Count 6) and whistleblower claims premised on a violation of the LEDL (Count 12) fail because Tulane, as a private entity and non-profit corporation, is excluded from the LEDL and Plaintiff does not otherwise allege a violation of state law. Plaintiff's Title IX retaliation claim (Count 4) must be dismissed because Plaintiff did not engage in Title IX protected activity because her underlying complaint relates to conduct in Ecuador and Title IX does not apply extraterritorially. Further, Plaintiff's Title IX failure to investigate and erroneous outcome (Count 5) fails as a matter of law on the same basis that Title IX does not apply extraterritorially and because her own allegations contradict her assertion that her report was not investigated or that she was not supported. It follows that Plaintiff's attempt to seek both declaratory and injunctive relief under Title VII and Title IX must be dismissed including that she fails to allege any violation of Title VII and Title IX and further lacks standing to question Tulane's Title VII and Title IX practices. Plaintiff's tort claims predating November 25, 2023, must be dismissed as untimely under

Louisiana's one-year prescriptive period. Plaintiff's tort claims also must be dismissed to the extent they are academic malpractice claims which are generally not actionable under Louisiana law. Plaintiff's negligent (Count 8) and intentional (Count 10) infliction of emotional distress claims fall far short of pleading essential elements of those claims including the high threshold for alleging an emotional distress claim. Plaintiff's tort claims against Individual Defendants (Count 7, 8, 10) are also vague and unparticularized and constitute futile attempts to establish individual liability against employees of Tulane under Title VII, Title IX, and state employment, retaliation, and whistleblower laws. Plaintiff's negligent supervision, training, staffing claim against Tulane and Individual Defendants Small, Smith, and Woodley (Count 7) must be dismissed for the same reason that her emotional distress claims fail. Plaintiff also cannot state a separate claim under the legal doctrine of respondeat superior (Count 9) against Tulane for the same reasons. Finally, Plaintiff's breach of contract claim (Count 11) under the EO Policy, the Faculty Handbook, and the Code of Student Conduct fails as a matter of law. Plaintiff's allegation that Tulane employees' alleged failures to comply with the EO Policy's reporting, investigation, retaliation requirements constitute a breach of a contract with her is nonsensical and is reliant upon the unfounded legal conclusion that Tulane did discriminate and retaliate against her. Further, Louisiana law is clear that employment policies do not create contractual rights. Plaintiff's contention that Tulane failed to follow provisions of the *Faculty Handbook* (notwithstanding that she is not a faculty member) fails for the same reason. Finally, Plaintiff's contention that Tulane somehow breached the Student Code of Conduct, despite admitting that she was not subject to discipline under the Student Code of Conduct, does not sufficiently support a breach of contract claim. For these reasons, as further detailed below, Defendants' Motion to Dismiss should be granted.

## IV.    STANDARD OF REVIEW

Fed. R. Civ. P. Rule 12(b)(6) permits a party to move for dismissal for failure to state a claim upon which relief can be granted.[8]  Under Rule 12(b)(6), a court "must take the well-pleaded factual allegations of the complaint as true."[9]  However, a Complaint must contain specific facts "to state a claim to relief that is plausible on its face."[10]  When pleaded facts do not permit a court to infer more than the mere possibility of misconduct, a Complaint has not shown the pleader is entitled to relief.[11]

A court is not required to "accept labels, conclusions, or formulaic recitation of the elements of a cause of action," and is not bound to accept legal conclusions couched as factual allegations.[12]  "Indeed, the Court must first identify allegations that are conclusory and, thus, are not entitled to the assumption of truth."[13]  Factual allegations "must be enough to raise a right to relief above the speculative level."[14]  A pleading must contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[15] Applying these legal standards, dismissal under Rule 12(b)(6) is appropriate as to all claims against Defendants.

---

[8] Fed. R. Civ. P. 12(b)(6).

[9] *Dupre v. State Farm Mutual Automobile Ins. Co.,* 2014 WL 2441124, at * 1 (E.D. La. May 30, 2014).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Id.*

[12] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft,* 556 U.S. at 678.

[13] *Currier v. Entergy Servs., Inc.*, 2014 WL 1093687, at *5 (E.D. La. Mar. 14, 2014).

[14] *Id.*; *see also Ashcroft,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[15] *Twombly,* 550 U.S. at 555.

PD.48887258.2

## V.    LEGAL ANALYSIS

### A.    Plaintiff's Claim against the "Board of Tulane" Must be Dismissed.

Plaintiff improperly attempts to name the "Board of Tulane" as a defendant in this lawsuit; however, the "Board of Tulane" lacks capacity to be sued. According to Plaintiff, the "Board of Tulane" is "the governing body for Tulane." R. Doc. 19 at ¶ 17. "The Fifth Circuit has implicitly approved 12(b) motions arguing the lack of capacity to be sued."[16] Federal Rule of Civil Procedure 17(b)(3) provides, in pertinent part, the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Under the Louisiana Civil Code, there are two kinds of persons that are capable of being sued: natural persons and juridical persons.[17] Article 24 defines a natural person as "a human being" and a juridical person as "an entity to which the law attributes personality, such as a corporation or partnership."[18] Juridical persons are "creatures of the law and by definition, have no more legal capacity than the law allows."[19] If a person is neither natural nor juridical, then it does not have procedural capacity to sue or be sued.[20] "[I]n the absence of law providing that an entity may sue or be sued, the entity lacks such capacity."[21] Here, the "Board of Tulane" is not a corporation or juridical entity but rather a part of the Administrators of the Tulane Educational Fund and thus lacks capacity to be sued under Rule 17(b)(3). In a case where a plaintiff similarly attempted to sue a component of Tulane, the "Tulane Clinic," another division of this Court similarly dismissed the defendant,

---

[16] *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir. 1991); *Lefkowitz v. Adm'rs of the Tulane Educ. Fund*, No. 21-1578, 2022 U.S. Dist. LEXIS 22060, at *31-32 (E.D. La. Feb. 7, 2022).

[17] *See* La. Civ. Code art. 24.

[18] *Id*.

[19] *Port Marigny, LLC v. City of Mandeville*, No. 17-4727, 2018 U.S. Dist. LEXIS 62118, at *7 (E.D. La. Apr. 12, 2018) (internal citation and quotation marks omitted).

[20] *Id.* (citing *Roy v. Alexandria City Council*, 984 So. 2d 191, 194 (La. App. 3 Cir. 5/7/08)).

[21] *Dantzler v. Pope,* No. 08-3777, 2009 U.S. Dist. LEXIS 131956, at *3-6 (E.D. La. Apr. 1, 2009).

PD.48887258.2

finding that it is not an independent corporation or juridical entity, but rather, a part of Tulane.[22]
Likewise, this Court should dismiss all claims against the "Board of Tulane," as it is not a
juridical person capable of being sued pursuant to Rule 12(b) *with prejudice*.

### B. Plaintiff's Claims Against Unknown Defendants DOES 1-20 Must be Dismissed Pursuant to Rule 12(b)(5) and Rule 12(b)(6).

All claims against unknown defendants "DOES 1-20" likewise must be dismissed for
insufficiency of service of process under Federal Rule of Civil Procedure 12(b)(5) as well as
failure to adequately state a claim under Rule 12(b)(6). In the Amended Complaint, Plaintiff
alleges that "Defendants DOES 1-20 are additional employees or agents of Tulane who were
responsible for retaliation against Plaintiff and/or the inadequate response to Plaintiff's reports of
sexual assault and retaliation. Plaintiff alleges that each of the Defendants named as a 'DOE' was
in some manner responsible for the acts and omissions alleged herein." R. Doc. 19 at ¶ 24. Aside
from claiming that Plaintiff does not know the identities of DOES 1-20 at this time and will
attempt to find out through discovery, Plaintiff does not provide any additional information as to
who these individuals are (or even how many known defendants there are) or additional details
such that service can be attempted. R. Doc. 19 at ¶¶ 25-27. The law is clear that a plaintiff cannot
simply put a placeholder on unknown defendants "but must provide or attempt to provide, an
adequate description or other known information so that service of process can at least be
attempted."[23] Moreover, all claims against DOES 1-20 must be dismissed pursuant to Rule
12(b)(6) as Plaintiff fails to specifically allege any facts against these unknown defendants and
improperly attempts to lump together  any individuals who were employees at Tulane and who
may have had a role in the administrative and academic decisions at issue.

---

[22] *Lefkowitz,* 2022 U.S. Dist. LEXIS 22060, at *32.

[23] *Yates v. City of Covington*, No. 02-0516, 2002 U.S. Dist. LEXIS 16817 at *7 (E. D. La. Sep. 6, 2002).

PD.48887258.2

For these reasons, all claims against DOES 1-20 must be dismissed pursuant to Rule 12(b)(5) and 12(b)(6) *with prejudice*.

### C.    Plaintiff's Amended Complaint Fails to Adequately Allege a Violation of Title VII.

#### 1.    Plaintiff Fails to Adequately Allege a Title VII Retaliation Claim (Count 1).

Plaintiff's Title VII retaliation claim against Tulane should be dismissed because Plaintiff fails to allege that she engaged in any protected activity under Title VII or that she suffered a Title VII injury. "The antiretaliation provision of Title VII 'prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation."[24] Where a retaliation case is based on circumstantial evidence, courts apply the *McDonnell Douglas* framework.[25] "Under this framework, the plaintiff has the burden to prove a *prima facie* case of retaliation by showing (1) she engaged in a protected activity; (2) she 'suffered an adverse employment action'; and (3) 'a causal connection exists between the protected activity and the adverse employment action.'"[26]

Here, Plaintiff's Title VII retaliation claim fails because her allegations concern conduct related to her academic advisory relationship and research she conducted as a Ph.D. student at FCAT in Ecuador, and not as an employee of Tulane. Her underlying complaint of alleged sexual assault (which is untimely as outlined below) was also related to conduct by a third-party that occurred allegedly occurred internationally while she was conducting research at FCAT. For instance, Plaintiff alleges she "is and was a ***PhD candidate at Tulane University*** who studies

---

[24] *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).

[25] *Id*.

[26] *Id*. (citing *Byers v. Dallas Morning News, Inc*., 209 F.3d 419, 427 (5th Cir. 2000).

avian ecology. ***During research*** in Ecuador under the auspices of the university, Plaintiff was

sexually assaulted and sexually harassed by a staff member of the research facility with which

the university was partnering."[27] Plaintiff alleges "Defendant Karubian served as ***Plaintiff's PhD***

***advisor*** from the time of her enrollment at Tulane in fall of 2021."[28] Plaintiff alleges that the

November 30, 2023 letter indicated to her "that she was being terminated from ***Karubian's***

***advisory***."[29] Plaintiff alleges that the action of "termination" of advisory "would significantly

impact ***Plaintiff's studies***."[30] Plaintiff further alleges that "[a]s a result of the action against

Plaintiff, she has been unable to return to FCAT ***to continue her research***. Instead, she was

relegated during the summer of 2024 to ***conducting lab research*** in California for approximately

two weeks and otherwise ***conducting research*** at Tulane."[31]

Title VII simply does not protect the complaint of a graduate teaching assistant regarding

discrimination in academic activities, which were about her school as a university, not about her

school as an employer.[32] "Title VII protects an employee only from 'retaliation for complaining

about the types of discrimination [that Title VII] prohibits.'"[33] The Fifth Circuit is clear that to

state a Title VII retaliation claim, the plaintiff must allege engagement in ***Title VII protected***

---

[27] R. Doc. 19 at ¶ 3 (emphasis added).

[28] R. Doc. 19 at ¶ 37 (emphasis added).

[29] R. Doc. 19 at ¶ 62 (emphasis added).

[30] R. Doc. 19 at ¶ 81 (emphasis added).

[31] R. Doc. 19 at ¶ 88 (emphasis added).

[32] *Hincapie v. Tex. Tech. Univ.*, No. 5:23-CV-299-H, 2024 U.S. Dist. LEXIS 196119, at *32-33 (N.D. Tex. Oct. 29, 2024) (collecting cases) (*Bakhtiari v. Lutz*, 507 F.3d 1132, 1137–38 (8th Cir. 2007); *Warren v. Kemp*, 79 F.4th 967, 974 (8th Cir. 2023), cert. denied, 144 S. Ct. 1010 (2024) ("We have rejected Title VII retaliation claims where the plaintiff opposed conduct other than a discriminatory employment practice."); *Stennis v. Bowie State Univ.*, 716 F. App'x 164, 167 (4th Cir. 2017) (affirming dismissal of Title VII retaliation claim because complaint regarding sex discrimination against students was not a protected activity under Title VII).

[33] *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020) (quoting *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 307 (5th Cir. 2019)) (affirming dismissal of retaliation claim at motion to dismiss stage).

*activities*, as opposed to some other activities.[34] Likewise any alleged adverse action must be a Title VII adverse action.

Courts in the Fifth Circuit analyzing this issue have found that even if a graduate student may allege some kind of employment relationship with a university, to properly state a Title VII retaliation claim, the graduate student must allege that they engaged in Title VII protected activity as opposed to complaints regarding academic matters. For example, in *Hincapie v. Tex. Tech. Univ.*, a graduate research assistant sent an email that complained about his Ph.D. advisor's alleged race and national-origin discrimination regarding academic requirements. The plaintiff later resigned from his employment as a graduate research assistant.[35] The district court dismissed the research assistant's claims for Title VII retaliation, finding that he did not engage in Title VII protected activities because his complaint about his advisor was academic in nature, even if it ultimately led to an employment action by virtue of plaintiff's resignation from his role as a research assistant.[36]

The Fifth Circuit has also held that a student's "termination" from a teaching assistant role does not satisfy the requirements for a Title VII retaliation claim. In *Muthukumar Nachiappan Subbiah v. The Univ. of Tex. at Dallas*, a graduate student/teaching assistant brought both Title VI and Title VII claims. The student's allegations included a Title VII retaliation claim alleging that his university threatened to remove him from the university in retaliation for a

---

[34] *Smart v. Geren*, 350 F. App'x 845, 846 (5th Cir. 2008) (filing of "unfair labor practice charges before being terminated" was not protected activity under Title VII, because there was no "indicat[ion] that the complaints concerned the infraction of a right with redress under Title VII"); *Tucker v. Unitech Training Acad., Inc.*, 783 F. App'x 397, 400 (5th Cir. 2019) (determining that a "Title VII . . . retaliation claim[] fail[s]" because the plaintiff's complaints "are not protected activities under Title VII").

[35] 2024 U.S. Dist. LEXIS 196119, at *34.

[36] *Id.*

grievance regarding the plaintiff's comprehensive-exam grades.[37] The district court dismissed the retaliation claim because the plaintiff's allegations went to "conduct surrounding his failed comprehensive exam" rather than "his work as a teaching assistant," and "losing his teaching assistant position would be merely a tangential effect stemming from his removal as a student."[38] The Fifth Circuit affirmed, agreeing that the plaintiff's allegations related to his retaliation claim "fail[ed] to establish a Title VII claim."[39]

In another comparable case, an employee of an educational institution filed a report alleging not "racial discrimination in employment practices," but rather "discriminatory treatment of students based on race."[40] Because the report did not concern unlawful employment practices, the court dismissed, at the motion to dismiss stage, the plaintiff's retaliation claim. The Court focused on the fact that the plaintiff failed to allege that she engaged in protected activity under Title VII.[41] Similarly, in *Dear v. Jackson State Univ.*, the court determined that a report by a university employee regarding sexual harassment of a student was not protected activity under Title VII "because the alleged harassment reported by [the plaintiff] did not arise out of an employer/employee relationship (but instead arose out of a student/instructor relationship)."[42]

Here, Plaintiff did not engage in protected activity within the meaning of Title VII. Like the students in *Hinkapie*, *Muthukumar*, *Ellis*, and *Dear*, Plaintiff did not complain of or oppose discrimination by Tulane in her *employment*; instead, she complained that she was being discriminated against in the course of her *educational* Ph.D. work. Plaintiff's allegations that she

[37] No. 3:10-CV-115-B, 2011 U.S. Dist. LEXIS 50002 at *4-5 (N.D. Tex. May 10, 2011), *aff'd sub nom. Muthukumar v. Univ. of Tex. at Dall.*, 471 F. App'x 407 (5th Cir. 2012).

[38] 2011 U.S. Dist. LEXIS 50002 at *5.

[39] *Muthukumar*, 471 F. App'x at 409.

[40] *Ellis v. Midwest Tech. Inst., Inc.*, No. 3:20-CV-393-KHJ-LGI, 2021 U.S. Dist. LEXIS 152651, 2021 WL 3612279, at *2 (S.D. Miss. Aug. 13, 2021).

[41] *Id.*

PD.48887258.2

was "terminated" from her academic advisory under Defendant Karubian, as well as her research at FCAT, even if true – which is denied, are not sufficient allegations of employment actions. In other words, although Plaintiff complains about being retaliated against in her education, there is no support in her allegations that the complaint "concerned the infraction of a right with redress under Title VII."[43] For these reasons, Plaintiff's Title VII retaliation claim (Count 1) against Tulane must be dismissed *with prejudice*.

### 2.    Plaintiff Fails to Adequately Allege a Title VII Inadequate Investigation (Count 2) or Erroneous Outcome (Count 3) Claim.

Plaintiff's Title VII claims for inadequate investigation (Count 2) and erroneous outcome (Count 3) also fail as a matter of law. First, for the same reasons that Plaintiff's Title VII retaliation claim fails (*i.e.,* Plaintiff complains of academic, not employment practices related to her advisory relationship with Defendant Karubian and her research at FCAT), her Title VII claims for "inadequate investigation" and "erroneous outcome" likewise fail. These claims are nothing more than Title IX claims pigeon-holed into Title VII claims.[44] There is simply no cause of action for "inadequate investigation"[45]or "erroneous outcome"[46] under Title VII.

To the extent Plaintiff is attempting to allege a Title VII disparate treatment claim, Count 2 and Count 3 must still be dismissed. While details regarding an investigation conducted by an

---

[42] No. 3:07-CV-407-WHB-LRA, 2008 U.S. Dist. LEXIS 72077 (S.D. Miss. Sept. 10, 2008).

[43] *Smart,* 350 F. App'x at 846.

[44] *See e.g., Klocke v. Univ. of Tex.,* 938 F.3d 204, 210 (5th Cir. 2019) (outlining the requirements of a Title IX erroneous outcome claim).

[45] Defendants acknowledge that courts have evaluated the adequacy of an investigation to determine whether the employer's stated reason for an employment action under Title VII was pretext for discrimination. *See, e.g., Rosario v. Texas Veterans Commission,* 607 F.Supp.3d 711 (W.D. Tex. 2022). However, Plaintiff does not make this argument and instead attempts to allege a separate cause of action for "inadequate investigation" which does not exist under Title VII.

[46] The Fifth Circuit has explicitly attributed a claim of "erroneous outcome" to Title IX proceedings. *See, e.g., Klocke v. University of Texas at Arlington,* 938 F.3d 204 (5th Cir. 2019) (stating: "[Plaintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories…Those in the first category argue that the disciplinary proceeding had an 'erroneous outcome' and that 'gender bias was a

employer may be relevant to the issue of pretext in a Title VII disparate treatment claim, the Fifth Circuit is clear that Title VII does not require the Court to evaluate whether an employer's investigatory practices were sufficient or correct, but only whether, considered with all other evidence, they tend to permit a rational inference that the employer's ultimate reason for taking an adverse action is believable.[47] However, before even reaching the question of pretext, Plaintiff must still allege a *prima facie* case of Title VII employment discrimination, which she cannot.

As the Fifth Circuit has explained, where a plaintiff's disparate treatment claim depends on circumstantial evidence, she will "ultimately have to show" that she can satisfy the *McDonnell Douglas* framework.[48] "In such cases," the Fifth Circuit as said, "it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim."[49] Under the *McDonnell Douglas* framework,[50] the initial burden rests with the plaintiff to establish a *prima facie* case by showing that she: "(1) belongs to a protected group, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) either (i) was replaced by someone outside of the protected group, or (ii) was treated less favorably than a similarly situated employee (disparate treatment)."[51]  On a 12(b)(6) motion the Court need not stringently scrutinize each of these elements, nevertheless "a plaintiff **must** allege facts sufficient to support a finding 'that [s]he

---

motivating factor behind the erroneous finding.' Those in the second allege 'selective enforcement….'" (*quoting Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

[47] *Owens v. Circassia Pharms., Inc*., 33 F.4th 814, 828-29 (5th Cir. 2022).

[48] *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

[49] *Cicalese*, 924 F.3d at 767 (citing and quoting *Chhim*, 836 F.3d at 470–71); *see also Chhim*, 836 F.3d at 470–71 (considering whether the plaintiff pleaded facts suggesting that the employer hired an applicant who was "similarly situated" to the plaintiff or "less qualified" than the plaintiff in accordance with the McDonnell Douglas framework).

[50] 411 U.S. 792 (1973).

[51] *Walker v. Smith*, 801 F. App'x 265, 269 (5th Cir. 2020).

was treated less favorably than others outside of his protected class.'"[52] In this case, Plaintiff has failed to meet this pleading burden.

Here, Plaintiff fails to allege a *prima facie* case of Title VII discrimination. Even assuming (but without conceding) that Plaintiff can sufficiently allege that: 1) she belongs to a protected group, and 2) she was qualified for her position; Plaintiff does not sufficiently allege that 3) she suffered an adverse employment action or 4) she was replaced by someone outside of her protected group or a similarly situated employee outside of her protected group was treated more favorably. Again, as outlined above, based upon the allegations in the Amended Complaint, Plaintiff complains of academic, not employment practices, related to her advisory relationship with Defendant Karubian and her research at FCAT. She manipulates the facts by using the word "termination" (a reading of the November 30, 2023 remediation letter plainly shows that is not accurate)[53] in order to infer an employment action, even though she was a student who was simply advised to identify a suitable advisor and did so. Further, Plaintiff makes no allegations that she was replaced by someone outside of her protected group or that a similarly situated "employee" (or PhD student) outside of her protected group was treated more favorably. This failure to allege any type of comparator is fatal to Plaintiff's Title VII claims.[54]

For these reasons, Plaintiff's Title VII inadequate investigation (Count 2) and erroneous outcome (Count 3) claims against Tulane must be dismissed *with prejudice*.

---

[52] *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (quoting *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017)) (emphasis added).

[53] *See* Exhibit A.

[54] *See Thornton v. University of Texas Southwestern Medical Center*, No. 24-10594, 2025 WL 619166 (5th Cir. Feb. 26, 2025) (dismissing a plaintiff's Title VII claims at the motion to dismiss stage where the Plaintiff only brought four vague allegations of comparator evidence in his Amended Complaint).

### 3. Untimely Title VII Claims Prior to November 9, 2023, for retaliation and January 23, 2024, for Sex Discrimination Must Be Dismissed.

As an initial matter, in her Amended Complaint, Plaintiff points to several alleged incidents she claims occurred years ago to support her Title VII claims, including: alleged sexual comments made by Gonzalez in the summer of 2011, alleged sexual assault by Gonzalez in June 2022, her alleged report to Defendant Karubian in February 2023, Defendant Karubian's purported delayed reporting in May 2023, her expressions of dissatisfaction with Defendant Karubian's response to her report against Gonzalez, and the meeting with Defendant Karubian, Van Bael, and Frank in August 2023. To the extent the Court finds that Plaintiff sufficiently alleged any Title VII causes of action (which is denied), these allegations are time-barred under Title VII's requirement that a plaintiff file an EEOC charge within 300 days of the allegedly unlawful act.[55] A private plaintiff must exhaust his administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court.[56] Generally, Title VII's enforcement provisions require that an EEOC charge be filed within 180 days after the alleged unlawful employment practice has occurred.[57] However, a claimant has an extended, 300-day period within which to file an EEOC charge in a "deferral state," such as Louisiana.[58] Because Plaintiff failed to administratively exhaust her claims by raising them with the EEOC within 300 days of their occurrence, they are time-barred, and Plaintiff's Title VII claims must be dismissed *with prejudice*.[59]

---

[55] *See* 42 U.S.C. 2000e-5(e)

[56] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1).

[57] 42 U.S.C. § 2000e-5(e)(1).

[58] *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).

[59] *Shaw v. Helix Energy Solutions Grp., Inc*., No. 18-3200, 2019 WL 3557843, at *25 n.6 (S.D. Tex. July 12, 2019) ("[E]xhaustion of administrative remedies is a procedural predicate to filing suit, and where there has been no exhaustion of a Title VII claim, there can be no recovery." (citing *Fort Bend Cty*., 139 S. Ct. at 1851)).

**D.    Plaintiff's Amended Complaint Fails to Allege LEDL or Louisiana Whistleblower Claims.**

Plaintiff's Louisiana law employment discrimination and retaliation (Count 6) and whistleblower (Count 12) claims also fail because the law is clear that as a private educational institution and non-profit corporation, Tulane is exempt from LEDL and Plaintiff does not otherwise allege a state law violation.

In Count 6, Plaintiff alleges Tulane violated the LEDL based upon the same facts in support of her Title VII claim: "by a failure to conduct prompt and equitable investigations into the sexual assault of Plaintiff, retaliation against her, and an erroneous outcome on the same basis described herein."[60] In Count 12, Plaintiff alleges against unidentified defendants, but presumably Tulane, violated La. R.S. § 23:967 because she "disclosed workplace acts and practices that violated the [LEDL]."[61]

However, this Court has consistently held that "Tulane is both a private educational institution and a non-profit corporation, both of which are explicitly excluded under the LEDL."[62] It follows that there can be no Louisiana Whistleblower Act liability against Tulane based upon Plaintiff's purported allegation that she disclosed workplace acts and practices that violated the LEDL. Thus, Counts 6 and 12 must be dismissed *with prejudice*.

---

[60] R. Doc. 19 at ¶ 214.

[61] R. Doc. 19 at ¶ 306.

[62] *Lefkowitz* v. Adm'rs of the Tulane Educ. Fund, No. 21-1578, 2022 U.S. Dist. LEXIS 22060, at *18 (E.D. La. Feb. 7, 2022) (collecting cases) (*Hartz v. Adm'rs of the Tulane Educ. Fund*, 275 F. App'x 281, 286 (5th Cir. 2008) ("Tulane is a non-profit educational institution."); *Rubinstein v. Admin. of the Tulane Educ. Fund*, No. 08-cv4780, slip op.10 at 1-2 (E.D. La. Feb. 9, 2009) (Zainey, J.) (dismissing LEDL claims because Tulane is exempt from coverage); *Howard v. Lemmier*, No. CIV.A. 10-1814, 2011 U.S. Dist. LEXIS 130417, 2011 WL 5508995 (E.D. La. Oct. 20, 2011), report and recommendation adopted, No. CIV.A. 10-1814, 2011 U.S. Dist. LEXIS 130416, 2011 WL 5508978 (E.D. La. Nov. 10, 2011) (Roby, J.) ("Tulane University, as a private entity, is not a state actor."); *Berenson v. Adm'rs of the Tulane Univ. Educ. Fund*, No. CV 17-329, 2017 U.S. Dist. LEXIS 106782, 2017 WL 2955728 (E.D. La. July 11, 2017) (Vance, J.) (noting that Tulane is not an employer under the LEDL and dismissing the LEDL claim)).

### E. Plaintiff's Amended Complaint Fails to Adequately Allege a Violation of Title IX.

#### 1. Plaintiff Has Failed to State a Claim of Title IX Because Plaintiff Fails to Allege That She Engaged in Title IX Protected Activity Or That Tulane Took An Adverse Action Against Her Because of That Activity.

Plaintiff's Title IX retaliation claim (Count 4) must be dismissed because Plaintiff fails to allege the essential elements of a Title IX retaliation claim. "To establish a *prima facie* case of Title IX retaliation, a plaintiff must show that he or she participated in activity protected by Title IX and that the defendant took an adverse action against him or her because of that activity."[63]

First, Plaintiff did not engage in Title IX protected activity because her underlying complaint relates to an alleged sexual assault in Ecuador and Title IX does not apply extraterritorially. The plain text of Title IX makes clear that the statute only applies to domestic conduct: "No person *in the United States* shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[64] A federal statute does not apply to foreign conduct unless "Congress has affirmatively and unmistakably instructed that the statute will do so."[65] The Supreme Court has long recognized the presumption against extraterritoriality: "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application."[66] Numerous district courts that have considered this question

[63] *Minnis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 883 (M.D. La. 2014), affirmed in *Minnis v. Bd. of Supervisors*, 620 F. App'x 215, 222 (5th Cir. 2015).

[64] 20 U.S.C. § 1681 (emphasis added).

[65] *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335, 136 S. Ct. 2090, 195 L. Ed. 2d 476 (2016).

[66] *Id.*

have held that Title IX does not apply extraterritorially, including to complaints where the underlying conduct occurs internationally.[67]

Here, there is no question that the alleged sexual assault by third party Gonzalez occurred in Ecuador, and therefore outside of the United States, and thus were outside of the scope of Title IX. Simply stated, Tulane did not have an obligation under Title IX to investigate the report but nevertheless did so as Plaintiff acknowledged in her Amended Complaint. It follows that the only protected activity Plaintiff engaged in was reporting the alleged sexual assault, which took place outside of the United States, to Defendant Karubian and Tulane in February 2023. However, because this activity was outside the scope of Title IX, Plaintiff has simply not alleged that she engaged in Title IX protected activity.

Even if Plaintiff engaged in Title IX protected activity by reporting the sexual assault at FCAT/by Gonzalez, which is denied, Plaintiff fails to allege an adverse action, nor can she as she is still enrolled at Tulane and on-track to complete her PhD program.[68] Plaintiff also has not alleged a causal link between her reports of the alleged sexual assault that occurred in Ecuador in February 2023 and subsequent conduct in November 30, 2023 wherein Plaintiff's advisory committee sent a remediation letter to Plaintiff requiring her to find a "suitable advisor" (consistent with Plaintiff's admitted desire to choose a new advisor in August 2023). To establish a *prima facie* case of retaliation under Title IX, a plaintiff must allege that a causal link exists

---

[67] *See, e.g.*, *Zonshayn v. Sackler Sch. of Med.*, 648 F. Supp. 3d 485, 496 (S.D.N.Y. 2023) (holding that complaint failed to state a Title IX claim where alleged sexual misconduct occurred in Israel even where accusers were Americans) (collecting cases) (*Doe T.L.J. v. Univ. of Cent. Mo*., No. 20 Civ. 714, 2020 U.S. Dist. LEXIS 243068, 2020 WL 7700101, at *2 (W.D. Mo. Dec. 28, 2020); *Harbi v. Mass. Inst. Tech*., No. 16 Civ. 12394, 2017 U.S. Dist. LEXIS 141890, 2017 WL 3841483, at *3-4 (D. Mass. Sept. 1, 2017); *see also Phillips v. St. George's Univ*., No. 07 Civ. 1555, 2007 U.S. Dist. LEXIS 84674, 2007 WL 3407728, at *2-5 (E.D.N.Y. Nov. 15, 2007) (pre-Morrison decision holding that Title IX did not apply extraterritorially to American student at Grenada veterinary school who was allegedly sexually harassed in Grenada by a school employee).

[68] The Fifth Circuit takes a "narrow view" of what constitutes an adverse action for purposes of a Title IX retaliation claim. *See Collins v. Jackson Public School Dist.*, 609 Fed.Appx. 792 (5th Cir. 2015) (*quoting Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000).

between the protected activity and the adverse action.[69] In other words, Plaintiff must allege that "but-for" her report regarding alleged sexual assault at FCAT/by Gonzalez, she would not have been instructed to identify a suitable advisor or she would have returned to FCAT. Here, her self-defeating allegations show that she cannot allege these essential elements. Specifically, in the Amended Complaint, Plaintiff supplies the very reasons why the committee suggested she identify a suitable advisor – because her words and actions expressed she did not feel she had a suitable advisor and, she requested Van Bael and Frank to be her new advisors in August 2023. R. Doc. 19 at ¶¶ 53, 56-60. And consistent with her desires, Van Bael became her primary advisor after November 2023.

According to the Amended Complaint, these decisions were made prior to outside investigator Defendant Pardee even finishing her investigation in April 2024 or informing Plaintiff of her determination of the outcome of the investigation in July 2024. R. Doc. 19 at ¶¶ 95, 103-118, 165. Plaintiff also acknowledges that the November 30, 2023 remediation letter "enumerated reasons for the action *other than* her reporting her sexual assaults or her displeasure with Karubian's handling of her reports" including alleged misconduct by Plaintiff at FCAT and the August 2023 meeting. R. Doc. 19 at ¶¶ 65, 74 (emphasis supplied). While Plaintiff concludes that these actions amounted to "discipline" and adverse actions because she reported the alleged sexual assault, her own allegations confirm they were not.

Thus, Plaintiff's Title IX retaliation claims fail as a matter of law and must be dismissed *with prejudice*.

---

[69] *Trudeau v. Univ. of N. Tex.*, 861 F. App'x 604, 607-08 (5th Cir. 2021) (internal citations omitted).

2.    **Plaintiff's Title IX Failure to Investigate and Erroneous Outcome Claim (Count 5) Also Must Be Dismissed.**

Likewise, Plaintiff's Title IX failure to investigate and erroneous outcome claim (Count 5) must be dismissed for the same reason that Title IX does not apply extraterritorially. Plaintiff fails to allege that she brought a formal complaint of Title IX retaliation and appears to concede that she did not. R. Doc. 19 at ¶ 78. In addition, Plaintiff's own allegations contradict her assertion that Tulane did not investigate her alleged retaliation or provide her with supportive measures.[70] Specifically, Plaintiff acknowledges in the Amended Complaint that the investigation into her underlying sexual assault at FCAT was expanded to include potential retaliation in February 2024. R. Doc. 19 at ¶¶ 85, 90. According to her own allegations, the investigation was detailed, Tulane hired Defendant Pardee as an outside investigator, the investigator traveled to Ecuador to conduct interviews and rendered a report that was 456 pages including appendices that contained exhibits and lengthy transcripts. R. Doc. 19 at ¶¶ 23, 69.

Even if Title IX applied, which is denied, the law is clear that "Title IX does not require flawless investigations or perfect solutions."[71] Moreover, Plaintiff's claim that Tulane somehow failed to meet certain Title IX regulations or internal policies fails as a matter of law. The Supreme Court has specifically stated that failure to comply with regulations promulgated by the Department of Education "does not establish the requisite actual notice and deliberate indifference" required to prove a Title IX claim.[72]  Likewise, failure to strictly follow internal

---

[70] *See* Exhibit A (remediation plan providing supportive measures and a case manager).

[71] *Sanches v. Carrolton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011) (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009)); *Wilson v. Beaumont Indep. Sch. Dist.*, 144 F.Supp. 2d 690, 694 (E.D. Tex. 2001); *Doe v. Edgewood Independent School District*, 964 F.3d 351, 364 n.56 (5th Cir. 2020); *J.T. v. Uplift Education*, 2024 WL 5118486 at *6 (5th Cir. Dec. 16, 2024).

[72] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998).

policies does not establish deliberate indifference.[73]  Indeed, the Supreme Court in *Gebser v. Lago Vista Indep. Sch. Dist.*, noted that it has never held "that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements."[74]

For these reasons, all of Plaintiff's Title IX claims including for retaliation, failure to investigate/erroneous outcome and criticisms of the structure of Tulane Title IX office must be dismissed *with prejudice*.

**F.    Plaintiff's Attempt to Seek Declaratory and Injunctive Relief under Title VII and Title IX Must be Dismissed.**

Based upon the foregoing, Plaintiff's attempts to seek both declaratory and injunctive relief under Title VII and Title IX (R. Doc. 19 at Prayer for Relief, 1 and 2) must be dismissed *with prejudice* including that she fails to allege any violation of Title VII and Title IX and further lacks standing to question Tulane's Title VII and Title IX practices as she was not an employee of the University.[75]

**G.    Plaintiff's Amended Complaint Fails to Adequately Allege Negligence Claims Against Tulane or Individual Defendants.**

**1.    Untimely Conduct Prior to November 25, 2023, Must Be Dismissed.**

As an initial matter, in her Amended Complaint, Plaintiff points to several alleged incidents she claims occurred years ago including alleged sexual comments made by Gonzalez in the summer of 2011, alleged sexual assault by Gonzalez in June 2022, her alleged report to Defendant Karubian in February 2023, Defendant Karubian's purported delayed reporting in

---

[73] *Id.*; *Sanches*, 647 F.3d at 169 ("A district's failure to comply with its regulations . . . does not establish the requisite . . . deliberate indifference") (quoting *Gebser*) (internal quotation marks omitted); *see also Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114 (10th Cir. 2008) (no deliberate indifference found where a district failed to follow its own policy that an administrator should interview the alleged offender and victim to determine whether the harassment had occurred); *Oden N. Marianas Coll.*, 440 F.3d 1085 (9th Cir. 2006).

[74] 524 U.S. at 291-92; *Sanches*, 647 F.3d at 169.

May 2023, her expressions of dissatisfaction with Defendant Karubian's response to her report against Gonzalez, and the meeting with Defendant Karubian, Van Bael, and Frank in August 2023. To the extent that Plaintiff has adequately stated a tort claim against Defendants by relying on any of these allegations (which is denied), the claims must nevertheless be dismissed as untimely. Louisiana law provides a one-year limitations period for tort claims.[76] Thus, any purported tort that was committed prior to November 25, 2023, must be dismissed as untimely *with prejudice*.

### 2. Plaintiff's Tort Claims Premised Upon Academic Decisions Are Improper Educational Malpractice Claims Which Must Be Dismissed.

Plaintiff's tort claims are premised upon academic decisions regarding Plaintiff's advisory relationship, her research work abroad, and Defendants' purported failure to adhere to supposed internal policies in conducting investigations into her complaints. Louisiana law is clear that educational malpractice claims are not generally actionable under tort law particularly considering the broad discretion provided to schools in administering their academic matters and the doctrine of academic freedom.[77] Accordingly, the Fifth Circuit and courts within the Fifth Circuit generally dismiss claims premised upon academic decisions.[78]

---

[75] *See, e.g., Diggs v. Harris Hospital – Methodist, Inc.*, 847 F.2d 270 (5th Cir. 1988) (holding that because the Plaintiff was not an employee of the defendant-hospital she did not have capacity to bring suit under Title VII).

[76] La. Civ. Code. Art. 3492.

[77] *See Mills v. Tarver*, 340 So.3d 959, 971 (La. App. 1 Cir. 2021) ("It is not the place of the court system to micro-manage the adequacy of instruction or management at institutions of higher learning, even if it were feasible, which we feel it is not."); *Miller v. Loyola University of New Orleans*, 829 So.2d 1057, 1060 (La. App. 4 Cir. 2002) ("[P]ublic policy . . . accords educational institutions broad discretion in matters purely academic ... and directs judicial non-interference in the decisions with that discretion."); *Wallace v. Southern University*, 2020-00647 (La. 9/29/20), 301 So.3d 1162 (stating that "educational malpractice is not a valid theory of liability anywhere in Louisiana statutory law or jurisprudence.").

[78] *Seals v. Mississippi*, 998 F. Supp. 2d 509, 523 (N.D. Miss. 2014) (Courts "must accept . . . 'an academic decision that is not beyond the pale of reasoned academic decision-making when viewed against the background of the student's entire career at the University[.]'") (quoting *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir.1999) (Court rejected disgruntled Ph.D. student claims that false accusations of cheating resulted in inadequate grades, a remediation plan, denial of participation in an internship program, and ultimate dismissal from the program.).

Plaintiff is clearly attempting to repackage an "educational malpractice" claim as "garden variety" negligence because Louisiana does not recognize a cause of action for educational malpractice.[79] In *Mills,* several nursing students alleged negligence against a university and several individual faculty and administrators based on alleged acts and omissions following the students' filing of formal grievance procedures. The students alleged that the individual defendants' acts were retaliatory and negligent. The court found "no merit to the plaintiffs' argument that the trial court erred in dismissing their 'negligence' claims" and that student-plaintiffs' claims arose from conventional obligations and were legally unrecognized educational malpractice claims.[80] The court reasoned that "[i]t is not the place of the court system to micro-manage the adequacy of instruction or management at institutions of higher learning…This is a task best handled by the universities themselves."[81] Similar to the students in *Mills*, Plaintiff brings tort claims that are premised on academic decisions made by Tulane and the Individual Defendants. Plaintiff's tort claims are improper educational malpractice claims under *Mills*, and this Court should dismiss the claims as a matter of law, *with prejudice*.

### 3. Plaintiff Fails to Allege A Claim for Negligent (Count 8) or Intentional (Count 10) Infliction of Emotional Distress.

In addition to the foregoing, Plaintiff's claims for negligent and intentional infliction of emotional distress against all Defendants fail as a matter of law and should be dismissed. "[I]n order to prove a claim for negligent infliction of emotional distress, the plaintiffs must establish the following: (1) the defendants owed a duty to the plaintiffs; (2) defendants breached that duty; (3) the defendants' breach of the duty was a cause-in-fact of the plaintiffs' alleged harm; (4) the defendants' breach was a legal cause of the harm plaintiffs' claim to have suffered; and (5) actual

---

[79] *Mills*, 340 So.3d at 97.

[80] *Id.* at 972; *Miller v. Loyola University of New Orleans*, 829 So.2d 1057, 1061 (La. App. 4 Cir. 2002) ("Louisiana law does not recognize a cause of action for educational malpractice under contract or tort law.").

PD.48887258.2

damages."[82]   The elements of a claim for intentional infliction of emotional distress ("IIED")

were delineated by the Louisiana Supreme Court in *White v. Monsanto Co.*, 585 So. 2d 1205 (La.

1991), and reaffirmed in *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00); 765 So. 2d 1017,

1022 and *LaBove v. Raftery*, 00-1394 (La. 11/28/01); 802 So. 2d 566, 577.   To recover for IIED,

a plaintiff must allege: 1) the conduct of the defendants was extreme and outrageous; 2) the

emotional distress suffered by the plaintiff was severe; and 3) the defendants desired to inflict

severe emotional distress or knew that severe emotional distress would be certain or substantially

certain to result from his conduct.[83]  The Louisiana Supreme Court described the conduct

necessary to prevail on a claim for IIED as follows:

> The conduct must be so outrageous in character, and so extreme in degree, as to
> go beyond all possible bounds of decency, and to be regarded as atrocious and
> utterly intolerable in a civilized community. Liability does not extend to mere
> insults, indignities, threats, annoyances, petty oppressions, or other trivialities.
> Persons must necessarily be expected to be hardened to a certain amount of rough
> language, and to occasional acts that are definitely inconsiderate and unkind.[84]

The Louisiana Supreme Court reiterated *White*'s three-part test and discussed the

application of the cause of action in *Nicholas v. Allstate Ins. Co.*, 765 So. 2d at 1022. In

discussing the "high threshold for intentional infliction of emotional distress established in

*White*," the Louisiana Supreme Court once again acknowledged the contours of the tort under

article 2315 are "illuminated" by the Restatement (Second) of Torts.[85]   Louisiana courts have

cautioned intentional torts should be narrowly construed.[86]  An intentional act occurs only when

---

[81] *Mills*, 340 So.3d at 971-72.

[82] *Doe v. Univ. Healthcare Sys., L.L.C.*, 2013-1457 (La. App. 4 Cir. 7/9/14); 145 So.3d 557, 573, n. 21 (citation omitted).

[83] *Monsanto*, 585 So. 2d at 1209.

[84] *Id.* (emphasis added).

[85] *Id.* at 1020; *see also Morris*, 277 F.3d t 756–57 ("Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury.").

[86] *Gaspard v. Orleans Parish Sch. Bd.*, 96-1754 (La. App. 4 Cir. 2/5/97); 688 So. 2d 1298, 1301-1302.

an actor *consciously desired* the consequences of the act to occur or when he knew the result was certain or so substantially certain as to be nearly inevitable or virtually sure to follow.[87]  Mere knowledge or appreciation of a risk does not constitute intent.[88]

As to Plaintiff's negligent and intentional infliction of emotional distress claim, Plaintiff's allegations do not pass muster under *Twombly* which requires more than a "formulaic recitation of the elements of the plaintiff's claim."[89]  Even if Plaintiff's factual allegations are taken as true, they do not amount to an actionable intentional infliction of emotional distress claim.  In essence, Plaintiff alleges she was emotionally distressed because she disagreed with the outcomes of Tulane's investigations, she was "removed" from her advisory under Karubian (the November 30, 2023 remediation letter speaks for itself – she was instructed to "identify a suitable advisor") consistent with her earlier statements she was not happy with Defendant Karubian and asked Defendant Frank and Van Bael to be her co-advisors in August 2023, and she could not return to FCAT to conduct research. Courts have dismissed intentional infliction of emotional distress claims that allege far more egregious conduct, including those involving severe verbal abuse and repeated harassment and discrimination during an extended period of time.[90]

---

[87] *Id.* at 1301.

[88] *Id.* at 1301-02.

[89] 550 U.S. 544 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[90] *See*, *e.g.*, *Smith v. Ouachita Parish Sch. Bd.*, 29,873 (La. App. 2 Cir. 9/24/97); 702 So.2d 727, *writ denied*, 97–2721 (La.1/16/98); 706 So.2d 978 (holding that the wrongful demotion and transfer of a teacher within the school system, though causing emotional and psychological distress, did not constitute extreme and outrageous conduct); *Stewart v. Parish of Jefferson*, 95–407 (La. App. 5 Cir. 1/30/96); 668 So.2d 1292, *writ denied*, 96–0526 (La.4/8/96); 671 So.2d 340 (holding that intentional infliction of emotional distress was not shown, even though a supervisor maintained two-years harassment in which he questioned the worker's personal life, increased the workload, and pressured the employee to accept a demotion which ultimately led to the employee's termination); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049 (La. App. 3 Cir.), *writ denied*, 598 So.2d 356 (La.1992) (holding that even if the employee felt singled out for abuse, a supervisor's eight-month undertaking in which he shouted at an employee, cursed her, called her names (dumb, stupid, and fat), commented about the inferiority of women, and falsely accused her of making mistakes did not constitute extreme and outrageous conduct); *Roscoe v. Hastings*, 43,942 (La. App. 2 Cir. 1/14/09), 999 So.2d 1218, 1221-22 (holding that a plaintiff did not demonstrate intentional infliction of emotional distress where her supervisor "made graphic sexual comments to her, remarked on her

Plaintiff has not alleged any facts in support of her negligent infliction of emotional distress claim, nor has she alleged any conduct that would remotely rise to the level of "outrageous conduct" as that term has been defined in Louisiana courts and by courts within the Fifth Circuit. This absence of allegations requires dismissal of her claim.[91]  Because there is no possibility Plaintiff could recover under state law against Defendants, her claim for negligent and intentional emotional distress must be dismissed *with prejudice*.

### 4. Plaintiff Fails to Allege a Negligent Supervision, Training, Staffing Claim Against Tulane and Individual Defendants Small, Smith, and Woodley (Count 7).

In addition to the foregoing, Plaintiff's negligent supervision, training, and staffing claim against Tulane and Individual Defendants Small, Smith, and Woodley (Count 7) must be dismissed for the same reasons that her other tort claims fail.

In order to establish a claim for negligent supervision of students under Louisiana law, a party must prove:

> (1) negligence on the part of the School Board, its agents, or teachers in providing supervision; (2) a causal connection between the lack of supervision and the accident; and (3) the risk of unreasonable injury was foreseeable, constructively

---

relationship with her husband, called her a b---- on numerous occasions, and allowed co-employees to make derogatory remarks to her."); *Groff v. Southwest Beverage Co., Inc.*, 2009-625 (La. App. 3 Cir. 11/5/08), 997 So.2d 782, 787 (holding that a supervisor yelling and cursing at his employee and pounding on desks during their conversation was not so extreme and outrageous as to satisfy a claim for intentional infliction of emotional distress). *Mitchell v. Tracer Construction Co.*, 256 F. Supp. 2d 520, 527 (M.D. La. 2003) (holding that plaintiff's allegations that she was physically threatened, threatened with discharge, continuously subjection to racial slurs, comments, and epithets were insufficient to state a IIED claim); *Trahan v. Bellsouth Tel., Inc.*, 881 F. Supp. 1080 (W. D. La. 1995), *aff'd*, 71 F.3d 876 (5th Cir. 1995) (holding that employer's use of a security team to ridicule, tease, and taunt plaintiff for seven and one-half hours questioning was not conduct which was outrageous); *Glenn v. Boy Scouts of America*, 977 F. Supp. 786 (W.D. La. 1997) (holding that telling an employee that she was rumored to have had a sexual affair with a prior scout executive, being told that her placement next to a donor who liked her was because she might get more money from him, communication to her that he did not want a woman in her position, being called a total disgrace in a staffing meeting after she successfully completed her probationary period, and being told she would be terminated on an undisclosed volunteer complaint unless she voluntarily resigned, did not constitute extreme and outrageous conduct).

[91] *See King v. Phelps Dunbar, L.L.P.*, 98-1805 (La. 6/4/99), 743 So.2d 181 (dismissing a Plaintiff's claim for emotional distress where the Plaintiff failed to offer any factual support for his claim).

PD.48887258.2

or actually known, and preventable if a requisite degree of supervision had been exercised.[92]

Louisiana courts have only found liability on the part of schools for negligent supervision under limited circumstances, most of which involve bodily injury and with *grade school students*.[93] Here, Plaintiff is an adult graduate student at Tulane and therefore is not a typical plaintiff for a successful negligent supervision claim. Also, as outlined above, Plaintiff fails to adequately allege a negligent or intentional infliction of emotional distress claim. Thus, her negligent supervision claim must be dismissed as a matter of law *with prejudice*.

Plaintiff also alleges that Tulane failed to supervision, train, and monitor the actions of the Individual Defendants. R. Doc. 19 ¶¶ 219 – 225. This is simply another attempt to repackage claims that are alleged elsewhere in Plaintiff's complaint, as Louisiana courts analyze claims of negligent supervision or training under the theory of *respondeat superior*.[94] Plaintiff's claims of negligent supervision, training, and monitoring against Defendant Tulane should therefore be dismissed for the same reasons as Plaintiff's claims brought under the theory of *respondeat superior*, as discussed in Defendants' Motion to Dismiss Plaintiff's Count 9.

---

[92] *Sims v. Samuel J. Green Charter Sch. Field*, 2024-0277 (La. App. 4 Cir 12/02/24) (citing *Dean v. De La Salle of New Orleans, Inc.*, 21-0388, p. 6 (La. App. 4 Cir. 12/21/21), 334 So.3d 425, 429 (quoting *Wallmuth v. Rapides Par. Sch. Bd.*, 01-1779, p. 13 (La. 4/3/02), 813 So.2d 341, 349)).

[93] *See, e.g., Vaughn v. Orleans Parish Sch. Bd.*, 01-0556 (La. App. 4 Cir. 11/28/01), 802 So.2d 967, 969 (school board liable for the sexual assault of a student by another student, which occurred in a classroom where a teacher was present); *Doe v. E. Baton Rouge Parish Sch. Bd.*, 06-1966 (La. App. 1 Cir. 12/21/07); 978 So.2d 426, 433 (school board partially liable for sexual assault of student by another student where assault occurred on a bus owned/maintained by school board and while students were under supervision of a school board employee); *see also Hayes v. Sheraton Operating Corp.*, 14-0675 (La. App. 4 Cir. 12/10/14); 156 So.3d 1193, 1199 (school board **not** liable for plaintiff's rape even though it was aware that she was being bullied, since rape occurred off campus, after the end of the school year, at a private party not chaperoned by any school employees); *Jackson v. Madison Parish Sch. Bd.*, 34-228 (La. App. 2 Cir. 01/24/01); 779 So.2d 59, 65 (school board not liable where evidence clearly established that event happened so quickly that even if more teachers had been present they could not have prevented bully from physically attacking plaintiff).

[94] *See Price v. La. Dept. of Transp. and Dev.*, 608 So.2d 203 (La App. 4 Cir. 1992) (analyzing a claim for negligent supervision under La. Civ. Code art. 2320); *Stein v. City of Gretna*, 17-554 (La. App. 5 Cir. 5/30/19), 250 So.3d 330, 337 (analyzing the allegation that the City of Gretna failed to train and/or supervise its employees under the theory of respondeat superior, stating that "while the liability of an employer for negligent training and supervision is direct, for such a liability to attach, there must have been conduct that caused damage, and this conduct could only have been committed by an employee.")

PD.48887258.2

### 5.  Plaintiff's Tort Claims Against Individual Defendants (Count 7, 8, and 10) Must Be Dismissed.

In addition to the foregoing, Plaintiff's tort claims against Individual Defendants (Count 7, 8, 10) should be dismissed for the additional reason that they are so vague and unparticularized and constitute futile attempts to establish individual liability against employees and agents of Tulane under Title VII, Title IX, and state employment, retaliation, and whistleblower laws.

As an initial matter, Plaintiff concedes that "at all times mentioned herein Defendants were employees, agents, and/or servants of Tulane and acted within the course and scope of said employment, agency, and/or service." R. Doc. 19 at § 25. Indeed, Plaintiff's allegations against Individual Defendants Smith, Small, and Woodley Pardee boil down to supposed deficiencies in the performance of their duties in the course of Tulane's investigations and her disagreement with the ultimate conclusions in the investigations. For instance, as to Defendant Smith, Plaintiff alleges that she was the Director of Institutional Equity and Resolution Management of the Office of Institutional Equity ("OIE") which oversaw the university's investigations into Plaintiff's allegations. R. Doc. 19 at ¶ 21. Plaintiff contends that Defendant Smith allegedly failed to intervene in Plaintiff's alleged retaliation or ensure that she obtained what she contends was a proper outcome of the investigations into the alleged sexual assault and retaliation. R. Doc. 19 at ¶¶ 84, 86, 87, 118, 120, 222, 231-236. Likewise, Plaintiff alleges that Defendant Small supervised Defendant Smith's work in the OIE and incorrectly upheld the investigation outcome of Defendant Pardee. R. Doc. 19 at ¶¶ 22, 103, 176, 221, 232, 233, 236. As to Defendant Pardee, Plaintiff contends that she engaged in a flawed investigation. R. Doc. 19 at ¶¶23, 163, 235, 280. Finally, as to Defendant Woodley, who is the Dean of Students at Tulane, Plaintiff alleges that she failed to intervene in the alleged retaliation. R. Doc. 19 at ¶¶19, 77, 224, 234.

PD.48887258.2

However, individual liability cannot be imposed upon an employee simply because of their general administrative responsibility for performance of some function of employment.[95] The law is also clear that there is no individual liability under Title VII, Title IX, LEDL or Louisiana Whistleblower Statute.[96] Finally, just as these allegations are insufficient to establish liability under Title VII, Title IX, Louisiana employment discrimination, retaliation and whistleblower law, or negligent or intentional infliction of emotional distress as to Tulane, they fail to do so as to these Individual Defendants. For this additional reason, all tort claims asserted by Individual Defendants in Counts 7, 8, and 10 must be dismissed *with prejudice*.

### 6.    Plaintiff Fails to Allege A Claim Under Respondeat Superior Against Tulane (Count 9).

Finally, in the addition to the foregoing, Plaintiff cannot state a separate tort claim against Tulane under the legal doctrine of *respondeat superior* (Count 9) for the supposed wrongful conduct of its employees for the same reasons that Plaintiff's underlying tort claims fail. "The principle of vicarious liability or *respondeat superior* is codified in Louisiana Civil Code article 2320."[97] "This article provides that an employer is liable for the tortious acts of its employees that are performed 'in the exercise of the functions in which they are employed.'"[98] "Thus, the two issues for the Court to address is whether: (1) plaintiff properly alleged tortious conduct against the individual defendants; and (2) whether these alleged actions were sufficiently

---

[95] *See Mills,* 340 So.3d at 971; *see also Mier v. Sompo America Insurance Co*., 2023 WL 2950631 at *4 (M.D. La. 2/13/2023).

[96] *See Baldwin v. Layton,* 300 Fed.Appx. 321, 323 (5th Cir. 2008) (citing *Ackel v. Natl'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."); *Smith v. Amedisys, Inc*., 298 F.3d 434, 448 (5th Cir. 2002) ("This circuit has held that there is no individual liability for employees under Title VII."); *Plummer v. Univ. of Houston*, 860 F.3d 767, 783 n.12 (5th Cir. 2017) ("Liability under Title IX does not extend to school officials, teachers, and other individuals."); *Hilliard v. Par.*, 991 F. Supp. 2d 769, 777-78 (E.D. La. 2014) ("Louisiana courts have consistently held that neither co-employees nor supervisors are subject to individual liability under the LEDL.").

[97] *Lefkowitz*, 2022 U.S. Dist. LEXIS 22060, at *9.

[98] *Id*. (citing La. Civ. Code Ann. art. 2320).

employment-related that vicarious liability should attach."[99] The application of the *respondeat superior* doctrine requires that the underlying conduct by the employee be tortious.[100] As outlined above, the alleged conduct of the Individual Defendants simply does not rise to the level of tortious conduct, and especially does not rise to the level of intentional or negligent infliction of emotional distress. Plaintiff's claim against Tulane under the theory of *respondeat superior* must be dismissed *with prejudice* because Plaintiff has not properly alleged tortious conduct against the Individual Defendants. Plaintiff's claims of negligent training, supervision, and monitoring must be dismissed for the same reasons, as previously discussed.

### H.    Plaintiff's Amended Complaint Fail to Adequately Allege a Breach of Contract Claim.

Finally, Plaintiff's breach of contract claim (Count 11) under the EO Policy, the Faculty Handbook, and the Code of Student Conduct fails as a matter of law.

The burden of proof in an action for breach of contract is on the party claiming rights under the contract.[101]   As a matter of law, the relationship between a student and a private educational institution may be considered contractual in nature and school publications may serve as evidence of the contract.[102]   However, Plaintiff must prove nevertheless the essential elements of a breach of the school publications by clear and convincing evidence, namely:  (1) the obligor's undertaking on obligation to perform; (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages.[103]   Plaintiff's breach of contract claim fails on all three elements.

---

[99] *Id*. (citing *Olmeda v. Cameron Int'l Corp*., 139 F. Supp. 3d 816 (E.D. La. 2015)).

[100] *Id*. at *12.

[101] *See Vignette Publications, Inc. v. Harborview Enterprises, Inc.*, 00-1711 (La. App. 4 Cir. 9/12/01); 799 So. 2d 531, 534.

[102] *See I.F. v. Administrators of the Tulane Educational Fund*, 131 So.3d 491, 498 (La. App. 4 Cir. 12/23/13) (*citing Babcock v. New Orleans Baptist Theological Seminary*, 554 So. 2d 90, 96-97 (La. App. 4th Cir. 1989)).

[103] *See 1436 Jackson Joint Venture v. World Const. Co., Inc.*, 499 So. 2d 426, 427 (La. App. 4th Cir. 1986).

PD.48887258.2

As an initial matter, Louisiana courts have recognized wide latitude for private schools to implement and enforce its internal policies as they see fit. For instance, in *Flint v. St. Augustine High School*, 323 So.2d 229, 233 (La. App. 4th Cir. 1975), the Louisiana Fourth Circuit stated that a private institution has almost **complete autonomy** in controlling its internal procedures.[104] Additionally, the Fourth Circuit stated that "a private institution is entitled to a very strong but rebuttable presumption that its internal administrative actions are taken in absolute good faith and for the mutual best interest of the school and the student body."[105]

In *Ahlum v. Admin. Of Tulane Educational Fund*, 617 So.2d 96, 98-99 (La. App. 4th Cir. 1993), the Fourth Circuit stated:

> The judiciary has recognized that a private institution, as compared to a public institution, has the power to create, administer and implement its own rules and procedures concerning the qualifications and conduct of its students, staff, and faculty. Absent some form of state action, the courts have refused to hear claims which allege that a private institution's practices have violated constitutional guarantees.

The Louisiana Supreme Court and other circuit courts of appeal are in accord that a private institution enjoys wide latitude to enforce its internal rules, absent any arbitrary and capricious conduct.[106]   "It is not the place of the judiciary to substitute its own view of

---

[104] The Fourth Circuit stated that "private institutions like St. Augustine High School have a near absolute right and power to control their own disciplinary procedure which, by its very nature, includes the right to dismiss students."

[105] *See I.F. v. Administrators of Tulane Educational Fund*, *supra*, 131 So.3d at 498.

[106] *See Jones v. NCAA*, 96-2205 (La. 1996); 679 So.2d 381 ("It is well settled in the law that the NCAA is a private association and not a state actor . . . Courts should not interfere with the internal affairs of a private association except . . . when the action complained of is capricious, arbitrary, or unjustly discriminatory."); *New Orleans Craft Temple, Inc. v. Grand Lodge of Free & Accepted Masons*, 13-525 (La. App. 5 Cir. 12/19/13); 131 So.3d 957, 963 ("Generally, courts should not interfere with the internal affairs of a private association."); *Sanders v. La. High Sch. Athletic Assoc.*, 242 So.2d 19, 25 (La. App. 3d Cir. 1970) ("The general rule in Louisiana is that the courts will not interfere with the internal affairs of a private association, except in cases when the affairs and proceedings have not been conducted fairly and honestly, or . . . when the action complained of is capricious, arbitrary, or unjustly discriminatory."); *State Bd. of Educ. v. Nat'l Collegiate Athletic Assoc.*, 273 So.2d 912 (La. App. 3d Cir. 1973) (same); *Dumez v. La. High Sch. Athletic Assoc.*, 334 So.2d 494 (La. App. 1st Cir. 1976) (same); *see also Guidry v. Our Lady of the Lake Nurse Anesthesia Program*, 2014-0461 (La. App. 1 Cir. 01/29/15); 170 So.3d 209, 213-14 (affirming dismissal of student's claims against private school for wrongful expulsion based upon poor grades where the faculty and university acted within professional judgment and the determination was not arbitrary or capricious).

PD.48887258.2

appropriate standards of conduct or appropriate penalties for the breach of those standards in place of a private institution's decision."[107]   Under this line of reasoning, Plaintiff's breach of contract claim fails as a matter of law.

Primarily, Plaintiff's allegation that Tulane employees failed to comply with the EO Policy's reporting, investigation, retaliation requirements, and therefore breached Tulane's contract **with her** is nonsensical. With respect to the EO Policy, Plaintiff fails to allege that Tulane entered into a contract with her as a student; instead, her allegations appear to be premised on the fact that other Tulane employees breached the EO Policy in the performance of their work in investigating her sexual assault and retaliation complaints. R. Doc. 19 at ¶¶252-258. These allegations do not transform into a breach of contract as to her as a student because the EO Policy is not a contract. "[C]ourts applying Louisiana law have consistently held that employee manuals and handbooks do not create contractual rights" and instead are "unilateral expression of company policies and procedures."[108] Moreover, Plaintiff's allegations as to alleged breaches of the EO Policy is premised upon the unfounded legal conclusions that Tulane discriminated and retaliated against her under Title VII, Title IX, and the Louisiana Employment Discrimination Law, which as outlined above, she has failed to allege. R. Doc. 19 at ¶¶ 259-267. Finally, Plaintiff's allegation that Tulane breached the EO Policy's provisions regarding expeditious investigations fails, as her own Amended Complaint states that the policy provides wide discretion to OIE to investigate, which includes discretion regarding the time of any investigation. R. Doc. 19 at ¶¶ 268-270.

Plaintiff's contention that Tulane failed to follow provisions of the *Faculty Handbook* must be dismissed for the same reasons. R. Doc. 19 at ¶¶ 273-275. Plaintiff does not allege that

---

[107] *Ahlum*, 617 So.2d at 99.

the Faculty Handbook creates a binding contract with her as a student. Plaintiff also does not contend that she was a faculty member such that the Faculty Handbook could apply to her, nor can she as she was and still is a graduate student at Tulane. Just as employee manuals and handbooks, the Faculty Handbook likewise does not create contractual rights and especially does not create contractual rights between Tulane and Plaintiff as Plaintiff is not a Faculty member.

Finally, Plaintiff's contention that Tulane somehow breached the Student Code of Conduct, despite admitting that she was not subject to discipline under the Student Code of Conduct, does not state a breach of contract claim. R. Doc. 19 at ¶¶278-304. Plaintiff devotes extensive paragraphs of her Complaint to discussing various provisions of the Student Code of Conduct. However, Plaintiff's breach of contract claim based upon the Student Code of Conduct necessarily requires an allegation that she was ***disciplined*** pursuant to the Student Code of Conduct. This is not the case. As outlined above, Plaintiff alleges that on November 30, 2023, Defendant Karubian "terminated" her from his advisory (consistent with her earlier August 2023 request) and that she did not return to FCAT. These allegations, as well as the plain language in the November 30, 2023 remediation letter providing her support and requesting that she identify a suitable advisor, contradict her conclusion that she was disciplined, and she does not bring any other allegations that suggest that she was disciplined. Simply stated, the November 30, 2023 remediation plan asking her to identify a suitable advisor and her inability to return to FCAT were not "disciplinary" and certainly do not form the factual basis of a breach of contract claim based upon the Code of Student Conduct. Moreover, Plaintiff admits that no formal complaint was filed against her for any alleged misconduct. R. Doc. 19 at ¶115.

---

[108] *McKey v. August*, No. 16-13642-WBV-MBN, 2021 U.S. Dist. LEXIS 153573, at *11 (E.D. La. Aug. 16, 2021) (citing *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430-31 (5th Cir. 1996)).

For these reasons, Plaintiff's breach of contract claim based upon the EO Policy, the Faculty Handbook, and the Student Code of Conduct must be dismissed *with prejudice*.

## VI.    CONCLUSION

Based upon the foregoing reasons and legal authorities, Defendants' Motion to Dismiss should be granted. Defendants respectfully move this Court for an order dismissing *with prejudice* the claims discussed herein, at Plaintiff's costs, including any other relief to which Defendants may also be warranted.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____*/s/ Rebecca Sha*_____

KIM M. BOYLE (#18133)
REBECCA SHA (#35317)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
E-mail:   kim.boyle@phelps.com
rebecca.sha@phelps.com

**ATTORNEYS FOR DEFENDANT, THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, ERICA WOODLEY, TIFFANY SMITH, AVERY PARDEE AND JONATHAN SMALL**

PD.48887258.2