UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUDITH SANTANO | CIVIL ACTION NO. 2:24-CV-2748 |
| VERSUS | JUDGE GREG G. GUIDRY |
| TULANE UNIVERSITY ET AL. | MAGISTRATE DONNA PHILLIPS CURRAULT |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS

Defendant Marcus Foster respectfully submits this Memorandum in Support of his Motion to Dismiss all claims in the Amended Complaint (R. Doc 19) against him, filed by Plaintiff, Judith Santano, pursuant to Fed. R. Civ. P. Rule 12(b)(6). As shown below, Plaintiff's claims alleged in her Amended Complaint fail both as a matter of law and because she failed to sufficiently allege essential facts in support of her Negligence, Negligent Supervision, Training and Staffing, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress claims against Defendant Foster. Therefore, all claims against Defendant Foster asserted in the Amended Complaint should be dismissed *with prejudice*.

I.   **OVERVIEW**

This matter stems from a series of incidents which allegedly occurred while the plaintiff attended a field research program in Ecuador during the summer of 2022. These incidents gave rise to a dispute between the Plaintiff, a current Graduate student enrolled at Tulane, and the University itself. In her *First Amended Complaint*, the Plaintiff alleges that she suffered harm due to the conduct of a staff member at a research facility located in Ecuador. In addition to the initial assault, the Plaintiff complains of retaliation against her by university faculty, including her academic advisor, accuses the university of mishandling the internal administrative process to

address these issues and attacks the established investigative process itself as fundamentally flawed. Following an extended investigative and internal appellate process, the Plaintiff, aggrieved, filed her original complaint November 25, 2024.

### A. Factual Background

Defendant Marcus Foster began working at Tulane as Assistant Provost for Title IX Compliance and Education in July 2022, a position in which he remained until September 2024. The university's official description of that role included overseeing Tulane's Title IX compliance and education efforts as well as investigating complaints, preventing discrimination, and fostering a safe campus environment. This role required coordination, regular meetings and constant communication with various other administrative and educational offices including Directors of the Office of Institutional Equity and the Office of Student Conduct each of whom were also involved in oversight of investigations following student complaints.

Defendant Foster's role in the Santano matter started in early May of 2023. This began with a notice of a potential incident which initiated a formal investigation. What followed was a series of discussions Defendant Foster and other administrative staff to determine how to handle the nuanced issues that an investigation into an international incident presented. It was ultimately determined that the investigation should be handled by Avery Pardee of Jones Walker, LLP.

By September 2023, Defendant Foster was primarily working in a support role for the attorney investigative team retained by Tulane to handle the investigation. Tulane's decision to retain the services of attorney Avery Pardee with Jones Walker, LLP, a sizable and reputable law firm, to handle the investigation of Santano's claims, effectively limited Defendant Foster's role in this matter. To be clear, the decision to expend additional resources in order to retain independent, investigative counsel was one of discretion to which Tulane was entitled and would,

2

in plain terms, indicate the seriousness with which the university regarded the claims at issue in this litigation.

## II. CLAIMS AGAINST DEFENDANT MARCUS FOSTER

Plaintiff's general allegations are rooted in Title IX gender discrimination and retaliation claims; however, her claims and allegations against Defendant Foster appear to be limited specifically to her Seventh Claim for Relief: Negligent Supervision, Training and Staffing; her Eighth Claim for Relief: Negligence, and Negligent Infliction of Emotional Distress; and her Tenth Claim for Relief: Intentional Infliction of Emotional Distress. Here it must be noted that emotional distress damages are not recoverable under Spending Clause antidiscrimination statutes which prohibit recipients of federal financial assistance from discriminating based on certain protected grounds.[1] Therefore, Plaintiff's only remaining claims against Defendant Foster are for Negligence and Negligent Supervision, Training and Staffing. In addition to clear prescriptive issues, Plaintiff has not sufficiently alleged the essential elements of these claims against Defendant Foster and her own allegations as to the actions, or inactions, of Defendant Foster and the Tulane Title IX officer are contradictory and insufficient to survive dismissal under Federal Rule of Civil Procedure 12(b)(6).

## III. STANDARD OF REVIEW

Fed. R. Civ. P. Rule 12(b)(6) permits a party to move for dismissal of claims for failure to state a claim upon which relief can be granted. Under Rule 12(b)(6), a court "must take the well-pleaded factual allegations of the complaint as true."[2] However, in order to survive such a motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[3] When

---

[1] *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022).

[2] *Dupre v. State Farm Mutual Automobile Ins. Co.*, 2014 WL 2441124, at * 1 (E.D. La. May 30, 2014).

[3] *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974, 167 (L. Ed. 2d 929 2007).

faced with a 12(b)(6) motion a plaintiff is required to provide more than mere labels and conclusions and a "formulaic recitation of the elements of a cause of action will not do"[4] Additionally, complaints must contain specific facts "to state a claim to relief that is plausible on its face."[5]

Courts are not required to "accept labels, conclusions, or formulaic recitation of the elements of a cause of action," and are not bound to accept mere legal conclusions disguised as factual allegations.[6] "Indeed, the Court must first identify allegations that are conclusory and, thus, are not entitled to the assumption of truth."[7] It is not sufficient for a plaintiff to rely on factual allegations which are merely speculatory in nature.[8] Faced with a 12(b)(6) motion, any pleading must fail if it does not include more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[9] Under the foregoing standards, and following a review of the Plaintiff's First Amended Complaint, dismissal under Rule 12(b)(6) is appropriate as to all claims against Defendant Foster.

IV. **LEGAL ANALYSIS**

A. **Any Alleged Tortious Acts Which Occurred Before November 26, 2023, Are Prescribed and Must Be Dismissed.**

All of the claims alleged by the Plaintiff against Defendant Foster, including Negligence, Negligent Supervision, Training and Staffing; Negligent Infliction of Emotional Distress; and

---

[4] *Id.* also see *Papasan v. Allain*, 478 U.S. 265, 286 (1986) stating *on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"*

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft,* 556 U.S. at 678.

[7] *Currier v. Entergy Servs., Inc.*, 2014 WL 1093687, at *5 (E.D. La. Mar. 14, 2014).

[8] *Id.*

[9] *Twombly,* 550 U.S. at 555.

4

Intentional Infliction of Emotional Distress are tortious in nature. R. Doc. 16 at ¶¶ 216-244. In her Amended Complaint, the Plaintiff alleges various conduct by Defendant Foster, much of which occurred more than one year prior to her original filing of November 25, 2024.[10] Louisiana has a prescriptive period of one year from the date the injury or damage was sustained. LA. Civ Code. Art. 3492. To the extent that any of the Plaintiff's claims against Defendant Foster are predicated on actions or omissions which occurred prior to November 26, 2023, those claims must be dismissed in their entirety as they are untimely.

> B. **Any of Plaintiff's Tort Claims That May Be Construed as Educational Malpractice Must Be Dismissed.**

To any extent that Plaintiff's tort claims against Defendant Foster are predicated on a purported failure to adhere to internal policies and procedures in conducting investigations into her complaints, such claims are contrary to well established Louisiana law and public policy. Louisiana jurisprudence is clear that educational malpractice claims are not generally actionable under tort law and courts in this jurisdiction have historically afforded broad discretion to institutions of higher learning in administering their academic and internal affairs.[11]

*All* of the conduct that the Plaintiff has placed at issue in her claims against Defendant Foster is related to internal procedures and decisions by administrative staff. Louisiana Courts have historically been hesitant to step into the arena of higher learning and impose their will on daily instruction or management. This is evident in *Mills v. Tarver* where the Louisiana Court of Appeals for the 1st Circuit noted, "[i]t is not the place of the court system to micro-manage the adequacy of instruction or management at institutions of higher learning, even if it were feasible,

---

[10] Plaintiff's Original Complaint was filed November 25th, 2024. R. Doc. 1.
[11] *Miller v. Loyola Univ. of New Orleans* 2002-0158 (La. App. 4 Cir. 09/30/2002).

which we feel it is not."[12] As seen in the *Mills* Court's choice of language, this hesitancy to interfere in the affairs of institutions of higher learning extends not only to instruction but to *management* as well.

Thus, as with *Mills* and *Miller*, all of Plaintiff's tort claims which are premised on academic or administrative decisions are improper educational malpractice claims which should be dismissed as a matter of law *with prejudice*.

### C. Plaintiff Fails to Sufficiently Allege a Claim for Negligent (Count 8) or Intentional (Count 10) Infliction of Emotional Distress.

In addition to her claims for Negligence, Negligent Supervision, Training and Staffing the Plaintiff alleges claims for Negligent Infliction of Emotional Distress (NIED) and Intentional Infliction of Emotional Distress (IIED) against Defendant Foster. Even taken as true, the Plaintiff's alleged facts do not establish the requisite elements to sustain these causes of action against Defendant Foster.

#### 1. Negligent Infliction of Emotional Distress

A successful claim for negligent infliction of emotional distress, must establish the following elements: (1) the defendant owed a duty to the plaintiff; (2) defendant breached that duty; (3) the breach of duty by the defendant was a cause-in-fact of the plaintiff's alleged harm; (4) the defendant's breach was a legal cause of the harm plaintiff's claim to have suffered; and (5) actual damages."[13] The Louisiana Supreme Court recently held in *Spencer v. Valero Rf. Meraux, L.L.C.* 356 So. 3d 936 (La. 2023) that negligent infliction of emotional distress claims absent physical injury/damage require a plaintiff to prove, "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim

---

[12] *Mills v. Tarver*, 2021-0666 (La. App. 1 Cir. 12/30/2021).

[13] *Doe v. Univ. Healthcare Sys., L.L.C.*, 2013-1457 (La. App. 4 Cir. 2014); 145 So. 3d 557, 573, n. 21 (citation omitted).

is not spurious." The *Spencer* Court stressed that this rule must be "stringently applied" in cases that are inherently speculative in nature. *Id* quoting *Bonnette,* 837 So. 2d at 1235.

Even in the event that Defendant Foster is established as owing the Plaintiff a duty, Plaintiff has wholly failed to establish said duty was breached resulting in genuine and serious mental distress. Defendant Foster does not dispute that the ordeal the Plaintiff has described and alleged transpired in Ecuador could have an adverse impact on any reasonable person. Having noted this, however, the Plaintiff's allegations specific to the actions of Defendant Foster are, essentially, limited to complaints about the discretionary decisions and/or measures taken during the course of the investigation itself. Simply put, the Plaintiff is aggrieved by the results of the investigation and certain alleged methods of the investigator and/or the investigative team, but she has failed to indicate how these issues amount to a breach of duty by Defendant Foster resulting in actual harm to the Plaintiff. Additionally, the Plaintiff has wholly failed to articulate conduct on the part of Defendant Foster that would even approach the stringent standard imposed by Louisiana courts on both negligent and intentional infliction of Emotional distress claims.

2. **Intention Infliction of Emotional Distress**

Regarding her claim against Defendant Foster for intentional infliction of emotional distress ("IIED"), Plaintiff falls even further off the mark. To sustain an IIED claim, the Plaintiff must show that there was an (1) intent to cause (2) severe emotional distress by (3) extreme and outrageous conduct.[14] Plaintiff must further show that the alleged conduct was extreme and outrageous such that it crossed beyond all bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community.[15] This is an incredible burden for the Plaintiff to

---

[14] *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991).
[15] *Id.*

7

meet and, even if all allegations contained in her Amended Complaint are taken as true, she has wholly failed to satisfy the elements necessary to sustain her IIED claim against Defendant Foster.

At no point in the investigatory process did Defendant Foster's conduct constitute anything remotely resembling "extreme and outrageous" or "atrocious and utterly intolerable in a civilized community." To the contrary, Defendant Foster acted in a professional manner and followed appropriate procedures at every step of the way as the investigation into the Plaintiff's initial complaint unfolded. Throughout the entire course of events encapsulated in the Amended Complaint, Defendant Foster *never once* exhibited, and Plaintiff has not alleged, conduct that could be considered of a nature giving rise to a claim for IIED and so these claims must be summarily dismissed.

> D. **Plaintiff Fails to Allege a Negligent Supervision, Training, Staffing Claim Against Tulane and Individual Defendants Small, Smith, and Woodley (Count 7).**

As elsewhere, Plaintiff fails to sufficiently allege her negligent supervision, training, staffing claim against Defendant Foster (Count 7) must be dismissed for the same reason that her other tort claims fail. The Plaintiff's reliance on these theories of recovery is misplaced in the context of this action.

Traditionally, when attempting to establish a claim of Negligent Supervision, a plaintiff must show that there was (1) negligence on the part of the School Board, its agents, or teachers in providing supervision; (2) a causal connection between the lack of supervision and the accident; and (3) the risk of unreasonable injury was foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised.[16] A review of the current state

---

[16] *Sims v. Samuel J. Green Charter Sch. Field*, 2024-0277 (La. App. 4 Cir. 12/02/24).

8

of Louisiana Jurisprudence on this matter suggests that the Plaintiff is, for lack of a better characterization, attempting to fit a square peg into a round hole.

There are numerous negligent supervision cases that have been filed in Louisiana involving physical injuries to younger students attending lower grade and secondary schools.[17] A common thread woven through the majority of these claims is that of an adult employee of these schools acting in *direct* supervision of students, who are then injured through some alleged negligence or misconduct of the employee or a third party. In *Brooks v. Orleans Parish School Board,* the Louisiana 4th Circuit Court of Appeals articulated that a supervisor must exercise a "reasonable standard of care commensurate with the age of the children under the attendant circumstances."[18] This language further reinforces the typical nature of these claims as that of an adult authority figure supervising young children entrusted to the care of a school system. Under those circumstances, claims of negligent supervision make logical sense, and when supported by the requisite negligence factors, have been successfully brought before Louisiana courts.

Presently, the facts that Plaintiff has alleged, even taken as true, simply do not align with any precedent that would support a claim for negligent supervision against Defendant Foster. First, the Plaintiff here is a fully grown adult, presumably capable of exercising sound judgment and without any disability which would otherwise necessitate enhanced supervision. Second, even if direct supervision of the Plaintiff was ever necessary, there was never a point during the *entire* period described by the Plaintiff, that Defendant Foster would have been in a position of

---

[17] Examples of such cases include *Robinson v. St. John the Baptist Par. Sch. Bd.* 18-510 (La. App. 5 Cir. 04/17/19) 270 So. 3d 838 (trial court dismissal of action on behalf of kindergarten student injured at recess while supervising teacher was distracted by her phone was reversed and remanded for manifest error); *Carter v. St. John Elem. Sch.* 12-174 (La. App. 5 Cir. 11/13/12) 105 So. 3d 856 (judgment against school board reversed on grounds that the particular circumstances giving rise to child's injury were unforeseeable and the injury could not have been prevented even with constant supervision); *Booth v. Orleans Parish Sch. Bd.* 09-1505 (La. App. 5 Cir. 09/22/10) 49 So. 3d 919 (trial court's granting of summary judgment upheld on claims of negligent hiring/retention and reversed on issues of negligent supervision and vicarious liability in a case involving a janitor's sexual assault of a young girl before school hours).

[18] *Brooks v. Orleans Parish School Board,* 560 So.2d 633 (La. App. 4th Cir. 1990).

responsibility for said direct supervision. In point of fact, the only allegation involving any supervision at all on the part of Defendant Foster then lies in the Plaintiff's flawed assertion that Defendant Foster failed to ensure that Investigator Pardee received the supervision necessary to conduct a fair, unbiased, and thorough investigation into the sexual assault allegations and the retaliation allegation based upon an alleged failure to intervene in the draft reports that Pardee submitted. R. Doc. 19 at ¶231. Simply put, even taken as true, this assertion does not establish a cause of action against Defendant Foster. Whatever duty Defendant Foster may have owed to the Plaintiff, it would never have involved direct supervision of the Plaintiff, nor would it have required him to tamper with or demand alterations or redactions to the draft reports submitted by Investigator Pardee. Therefore, any claims for relief under this theory of recovery should be summarily dismissed *with prejudice.*

It is not entirely clear that the Plaintiff intends to assert independent claims for Negligent training and staffing against Defendant Foster individually, but to any potential extent such intent exists, those claims must fail for the same reason that the Plaintiff's negligent supervision claims fail, she has simply not alleged any facts, even taken as true, that would support said claims. R. Doc. 19 at ¶ 216-226.

## V. CONCLUSION

Based upon the foregoing reasons and legal authorities, Defendant Foster's Motion to Dismiss should be granted. Defendant respectfully moves this Court for an order dismissing *with prejudice* the claims discussed herein, at Plaintiff's costs, including any other relief to which Defendant may also be warranted.

Respectfully submitted,

**DEAKLE-JOHNSON LAW FIRM, PLLC**

11

BY:    <u>*/s/ Russell L. Johnson*</u>
      RUSSELL L. JOHNSON (#38290)
      802 N Main St.
      Hattiesburg, MS 39403
      Telephone: (601) 544-0631
      Telecopier: (601) 544-0666
      E-mail:   RLJohnson@DJLawMS.com

**ATTORNEY FOR DEFENDANT MARCUS FOSTER**