Aaron B. Zisser [Cal. Bar No. 302926] (*pro hac vice*)
ZISSER LAW OFFICE
5706 Cahalan Ave., # 23730
San Jose, CA 95153
Telephone: (669) 228-5154
Fax: (408) 404-8980
Email: aaron@zisserlawoffice.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUDITH SANTANO,**<br><br>            **Plaintiff,**<br>     **vs.**<br><br>**ADMINISTRATORS OF THE TULANE EDUCATIONL FUND, et al.**<br><br>            **Defendants.** | **PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS**<br><br>**CIVIL ACTION NO: 2:24-cv-2748**<br><br>**JUDGE GREG G. GUIDRY**<br><br>**MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT**<br><br><br>**Action filed:**   November 25, 2024<br>**Submission date:** June 18, 2025<br>**Trial date:**    March 30, 2026 |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.    FACTS ............................................................................................................... 2

III.   LEGAL STANDARD ....................................................................................... 3

IV.   ARGUMENT .................................................................................................... 4

  A.  Improperly named defendants ......................................................................... 4

  B.  Plaintiff Specifies the Roles of DOE Defendants ............................................ 5

  C.  Plaintiff's Title VII Claims Should Not be Dismissed ...................................... 5

    1.  Plaintiff sufficiently pleads her Title VII retaliation claim ........................... 5

      a.  Plaintiff is an employee under Title VII ................................................... 5

        i.  Plaintiff alleges employment status ...................................................... 5

        ii.  The underlying issue that Plaintiff reported and the adverse action by Karubian were employment-related ........................................................................ 6

        iii.  The cases Defendants cite deal with squarely academic activities ........................ 7

        iv.  Employee status is subject to discovery................................................. 8

      b.  Plaintiff's claims are timely ..................................................................... 9

    2.  Plaintiff sufficiently pleads inadequate investigation and erroneous outcome claims . 10

      a.  Plaintiff's allegations are sufficient to state a Title VII claim ................................ 10

      b.  Tulane's investigative practices were discriminatory ............................... 11

      c.  Under the correct legal framework, Plaintiff's claims suffice ................... 12

  D.  Plaintiff's LEDL and Whistleblower Claims................................................... 15

  E.  The Court Should Decline to Dismiss Plaintiff's Title IX Claims ................... 16

1.   Plaintiff alleges facts satisfying the elements of a Title IX claim ............................... 16

   a.   The location of the retaliation, not of the underlying sexual assault reported, is all that matters in a retaliation case ...................................................................................... 16

   b.   Tulane took adverse action against Plaintiff ............................................................. 17

   c.   Plaintiff alleges a causal link between her protected activity and the adverse action against her ......................................................................................................................... 18

2.   Decisions made prior to Pardee finishing investigations ............................................... 19

3.   Plaintiff alleges Karubian's stated reasons were pretextual .......................................... 19

4.   Plaintiff sufficiently alleges Tulane's failure to investigate and erroneous outcome ... 20

   a.   Tulane's actions are not excused simply because it initiated the investigation ........ 20

   b.   Plaintiff sufficiently alleges a deeply flawed investigation ...................................... 22

     i.   Defendants mischaracterize key allegations .......................................................... 22

     ii.   Plaintiff alleges numerous deficiencies in the retaliation investigation that evidence discrimination based on sex ................................................................................... 22

F.   Injunctive and Declaratory Relief is Appropriate .............................................................. 25

G.   Plaintiff's Negligence Claims Should Not be Dismissed .................................................. 25

1.   Plaintiff does not assert untimely claims ...................................................................... 25

2.   Plaintiff's allegations are about retaliation and negligent responses to such retaliation, not academic decisions ............................................................................................................. 26

3.   Defendants breached a duty to address and prevent physical harm ............................. 27

4.   Plaintiff's sufficiently alleges negligent supervision and training ............................... 28

5.   Plaintiff alleges defendants' specific roles and involvement ....................................... 28

H.   Plaintiff Sufficiently Alleges Intentional Infliction of Emotional Distress ..................... 29

1. Defendants' *Twombly* argument is unsupported ............................................................ 29

2. Defendants mischaracterize Plaintiff's allegations ...................................................... 30

I. Plaintiff's Sufficiently Makes Out a Breach of Contract Claim ........................................ 33

1. A contract exists at Tulane ............................................................................................ 34

2. Plaintiff had a contract as a Tulane student .................................................................. 34

3. The contract covers retaliation and discrimination ...................................................... 35

4. Plaintiff's allegations detail numerous violations of the contract................................ 35

    a. Legal standard ............................................................................................................ 36

    b. Plaintiff alleges numerous significant deviations from the contract regarding her

complaints of discrimination and retaliation...................................................................... 38

    c. Plaintiff alleges denials of contractual protections against arbitrary discipline ....... 39

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 4

*Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049 (La. App. 3d Cir. 1992) ................. 33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 4

*Boyd v. Cebalo*, 191 So.3d 59 (2016) ................................................................................... 28

*Brackens v. Stericycle, Inc.*, 829 F. App'x 17 (5th Cir. 2020) ............................................... 7

*Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992) ................................................................ 26

*Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090 (9th Cir. 2005) ..................................... 14

*Coliseum Square Association v. New Orleans,* 544 So.2d 351 (La. 1989).............................. 38

*Collins v. Jackson Public School Dist.*, 609 Fed.Appx. 792 (5th Cir. 2015)....................... 17, 18

*Dear v. Jackson State Univ.*, 2008 WL 4225766 (S.D. Miss. Sept. 10, 2008) ......................... 8

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)......................................................... 13, 14, 15

*Diggs v. Harris Hospital – Methodist, Inc.*, 847 F.2d 270 (5th Cir. 1988)............................. 25

*Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351 (5th Cir. 2020)....................................... 24

*Doe v. Emerson Coll.*, 153 F. Supp. 3d 506 (D. Mass. 2015)................................................ 33

*Doe v. Ochsner Health Sys.,* 2022 WL 656200 (E.D. La. Mar. 4, 2022) .............................. 37

*Ellis v. Midwest Tech. Inst., Inc.*, 2021 WL 3612279 (S.D. Miss. Aug. 13, 2021) ................. 8

*Erickson v. Pardus*, 551 U.S. 89 (2007) ............................................................................... 4

*Familias Unidas Por La Educacion v. El Paso Indep. Sch. Dist.*, 633 F. Supp. 3d 888 (W.D. Tex. 2022) ............................................................................................................. 12

*Flint v. St. Augustine High School*, 323 So.2d 229 (La. App. 4th Cir. 1975).......................... 38

*Fortenberry v. City of Wiggins, Mississippi*, 2018 WL 8809236 (S.D. Miss. Feb. 5, 2018)........ 13

*Groff v. Southwest Beverage Co., Inc.*, 997 So.2d 782 (La. App. 3d Cir. 2008) ......................... 33

*Guidry v. Our Lady of the Lake Nurse Anesthesia Program*, 170 So.3d 209 (La. App. 1st Cir. 2015) ...................................................................................................... 34, 38

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731 (5th Cir. 2017) 10

*Hincapie v. Texas Tech Univ.*, 2024 WL 4607719 (N.D. Tex. Oct. 29, 2024) ............................. 8

*Huang v. Ohio State Univ.*, 116 F.4th 541 (6th Cir. 2024) ...................................................... 8, 9

*I.F. v. Administrators of the Tulane Educational Fund*, 131 So.3d 491 (La. App. 4th Cir. 2013) 34

*J.T. v. Uplift Educ.*, 2024 WL 5118486 (5th Cir. Dec. 16, 2024) ................................................ 24

*Jones v. NCAA*, 679 So.2d 381 (La. 1996) ............................................................................. 36, 37

*Mier v. Sompo Am. Ins. Co.*, 2023 WL 2950631 (M.D. La. Feb. 13, 2023) ................................. 29

*Miller v. Loyola University of New Orleans*, 829 So.2d 1057 (La. App. 4 Cir. 2002) ................ 27

*Mills v. Tarver*, 340 So.3d 959 (La. App. 1 Cir. 2021) ............................................................... 27

*Mitchell v. Mills*, 895 F.3d 365 (5th Cir. 2018) ................................................................... 12, 15

*Muthukumar Nachiappan Subbiah v. The Univ. of Texas at Dallas*, 2011 WL 1771806 (N.D. Tex. May 10, 2011) ........................................................................................................ 8

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) ........................................................ 9

*New Orleans Craft Temple, Inc. v. Grand Lodge of Free & Accepted Masons*, 131 So.3d 957 (La. App. 5th Cir. 2013) ................................................................................................. 36, 37

*Owens v. Circassia Pharms., Inc.*, 33 F.4th 814 (5th Cir. 2022) ................................................ 11

*Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142 (9th Cir. 2013) ....... 13, 14

*Roscoe v. Hastings*, 999 So.2d 1218 (La. App. 2d Cir. 2009) .................................................... 33

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114 (10th Cir. 2008) ........... 23

*Sanches v. Carrolton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156 (5th Cir. 2011) ............. 23

*Sanders v. La. High Sch. Athletic Assoc.*, 242 So.2d 19 (La. App. 3d Cir. 1970) ................. 36, 37

*Seals v. Mississippi*, 998 F. Supp. 2d 509 (N.D. Miss. 2014)....................................... 27

*Smart v. Geren*, 350 F. App'x 845 (5th Cir. 2008) ...................................................... 7

*Smith v. Ouachita Parish Sch. Bd.*, 702 So.2d 727 (La. App. 2d Cir. 1997).............................. 32

*State Bd. of Educ. v. Nat'l Collegiate Athletic Assoc.*, 273 So.2d 912 (La. App. 3d Cir. 1973) .. 37

*Stewart v. Parish of Jefferson*, 668 So.2d 1292 (La. App. 5th Cir. 1996)................................... 33

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)................................................ 4, 13

*Tucker v. Unitech Training Acad., Inc.*, 783 F. App'x 397 (5th Cir. 2019) ................................ 7

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ........... 12, 13, 14, 15

*Williams v. State*, 786 So.2d 927 (La. 2001) ............................................................ 27

*Wilson v. Beaumont Indep. Sch. Dist.*, 144 F. Supp. 2d 690 (E.D. Tex. 2001) ........................... 23

## STATUTES

20 U.S.C.A. § 1681 ........................................................................................ 17

20 U.S.C.A. § 1687 ........................................................................................ 18

La. R.S. § 23:967(A) ..................................................................................... 15

## RULES

Fed. R. Civ. P. 8(a) ....................................................................................... 3

Fed. R. Civ. P. 12(b)(6)................................................................................... 4

## REGULATIONS

34 CFR § 106.8(c).......................................................................................... 21

34 CFR § 106.8(d) ......................................................................................... 17

34 CFR § 106.30(a)................................................................................. 16, 20, 21

34 CFR § 106.44(a)................................................................................ 17, 18

34 CFR § 106.45(a)...................................................................................... 22

34 CFR § 106.45(b)(3)................................................................................. 16

34 CFR § 106.71(a)................................................................................ 16, 20

## I.    INTRODUCTION

Defendants try to make a complicated situation simple and repeatedly characterize events and law in a binary fashion. Plaintiff cannot possibly be both a student and an employee. Anything short of full expulsion cannot possibly constitute retaliation. A defendant's proffered reasons for an adverse action must be true because the defendant says so. So long as the university conducted *some* investigation of the alleged civil rights violations, Plaintiff cannot challenge it. If any of the events took place abroad, Title IX does not apply.

But the facts and the law are more nuanced than Defendants claim, and the Court should apply the well-established jurisprudential frameworks to evaluate Plaintiff's allegations and claims. In fact, Plaintiff was both a student protected under Title IX and an employee protected under Title VII, and the courts have recognized that a plaintiff can be both. Retaliation covers adverse actions that fall well short of full expulsion or termination. A defendant's stated reasons for an adverse action can be evidenced to be pretextual for retaliatory motives, and Plaintiff has alleged extensive facts demonstrating such pretext. Plaintiff also alleges pervasive and deliberate deficiencies in the university's internal investigation of Plaintiff's complaints. While the assaults Plaintiff experienced occurred abroad, the retaliation did not, and Plaintiff's report regarding the assaults are protected activity under Title IX.

Similarly, the state law claims should proceed. Plaintiff was the victim of sexual assaults. Individual defendants knew or should have known that their dismissiveness, minimization, and victim-blaming would profoundly impact Plaintiff. The context – the underlying experience – matters. Finally, even under the cases cited by Defendants, Plaintiff's contract claim should

survive, as she has explicitly challenged the university's conduct under those contracts as being unfair and discriminatory, not simply a matter of professional judgment.

## II.     FACTS

Plaintiff was sexually assaulted during the summer of 2022 by a member of the staff of a research field station in Ecuador that partners with Tulane University. First Amend. Compl. ("Amend. Compl."), ECF No. 19, ¶¶ 31-35 (Feb. 19, 2025). Defendant Karubian coordinated Tulane students' research and the work of graduate students who supervised and instructed undergraduate students. *Id.* ¶ 38. Plaintiff was doing two things in Ecuador: conducting her own research to further her graduate studies and serving as a Tulane employee tasked with supervising and instructing other students. *Id.* ¶ 29.

When she reported the assaults in February 2023 to Defendant Karubian, *id.* ¶ 49, he sat on the report, *id.* ¶ 50, interfered in the investigation, *id.* ¶ 52, and severed his academic and working relationship with Plaintiff, *id.* ¶¶ 62-63, in an attempt to cover up the report and the likely fallout of the investigation into her report, namely, exposure of a toxic culture at FCAT, *id.* ¶¶ 70, 73, 75. Numerous actions on the part of Karubian demonstrated this motivation for his action, including his rush, months after the meeting that he claimed was the basis for the decision – a meeting during which Karubian indicated he intended to remain Plaintiff's advisor, *id.* ¶ 60 – to issue the termination letter in the days when interviews were taking place in Ecuador regarding the investigation into the assaults, *id.* ¶¶ 68-69, 74. This termination of Plaintiff from Karubian's advisory and from further participation at the Ecuadorian field research station was involuntary and was not processed through formal procedures at the university designed to protect Plaintiff against arbitrary or discriminatory actions. *Id.* ¶¶ 71-72. While Plaintiff had sought additional involvement of and support from other professors, *id.* ¶ 56, she was not

seeking Karubian's replacement. She had invested years in her research in Ecuador and needed to continue it; this required Karubian's continued involvement. Amend. Compl. ¶ 63.

The university's investigation and adjudication of Plaintiff's reports of sexual assault and retaliation were infected with overt and subtle biases against Plaintiff as a woman and as a victim of sexual assault. *Id.* ¶¶ 91-94, 96-99, 129-132, 162-165. The investigator, Defendant Avery Pardee, dug deep to uncover and elaborate allegations of misconduct by Plaintiff, even in the investigation of the sexual assaults, where such information was entirely irrelevant. *Id.* ¶ 94(k). Pardee attacked Plaintiff's credibility, *id.* ¶ 94(a), (j), but barely uttered a word about the credibility of either Plaintiff's alleged assaulter or Karubian, *id.* ¶ 94(a). Pardee characterized Plaintiff's benign conduct, including flirtations and even walks, as invitations to sex, *id.* ¶ 94(d)-(g), and she used Plaintiff's sexual lifestyle choices against her, *id.* ¶ 94(b). Pardee ignored entire categories of evidence regarding the central question: Karubian's potential motives for retaliation and other conduct by Karubian demonstrating improper motives. *Id.* ¶¶ 113-114. She made improper disclosures that compromised Plaintiff's privacy, *id.* ¶¶ 96-98, which administrators did not address when notified, *id.* ¶ 99. Other university officials adopted Pardee's own wholesale omissions, excluded other key testimony, and engaged in repeated lengthy delays. *Id.* ¶¶ 104-106 (appeal of outcome of investigation of sexual assaults), 100 (delays in sexual assault investigation), 124 (delays in hearing on the retaliation matter), 132 (delays in appeal following hearing), 162-171 (flaws in the various processes).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the alleged conduct. *Twombly*, 550 U.S. at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 12(b)(6), a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (emphasis added).

## IV.    ARGUMENT

All Defendants filed, among them, three motions to dismiss. Mem. in Supp. of Defs.' Rule 12(b)(6) Mot. to Dismiss ("Tulane Mot."), ECF No. 28-1 (Apr. 1, 2025); Mem. in Supp. of Mot. to Dismiss ("Karubian Mot."), ECF No. 26-1 (Mar. 28, 2025); Mem. in Supp. of Def.'s Rule 12(b)(6) Mot. to Dismiss ("Foster Mot."), ECF No. 32-1 (Apr. 17, 2025). Because these motions substantially overlap, Plaintiff's response addresses all three together.

### A.  Improperly named defendants

The Court has addressed the need to name Administrators of the Tulane Educational Fund as the proper defendant in place of Tulane University and the Board of Tulane. Order, ECF No. 42 (May 30, 2025). This portion of Defendants' motion, Tulane Mot. at 1 n.2, 12, is moot.

//

//

### B.  Plaintiff Specifies the Roles of DOE Defendants

Defendants seek dismissal of the DOE Defendants. Tulane Mot. at 8. Plaintiff alleges that "Defendant DOES failed to ensure the faculty hearing panel received adequate supervision to properly conduct the hearing regarding the retaliation complaint." Amend. Compl. ¶ 223; *see also id.* ¶ 24. Plaintiff can, if needed, amend to specify other junctures involving potential Does.

### C.  Plaintiff's Title VII Claims Should Not be Dismissed

The motion to dismiss should be denied as to the Title VII claims of retaliation, discriminatory investigations into both the underlying assaults and the retaliation, and the erroneous outcome of the investigation of the assaults. (The final outcome of the investigation into the alleged retaliation is still pending.)

### 1.  Plaintiff sufficiently pleads her Title VII retaliation claim

### a.  Plaintiff is an employee under Title VII

### i.  Plaintiff alleges employment status

Plaintiff makes numerous allegations demonstrating her employment status. Defendants conveniently cite only those portions of the Amended Complaint that describe Plaintiff as a student and omit those portions of the Amended Complaint that describe her as an employee and her work as such. Tulane Mot. at 14-15. But "Plaintiff was employed and compensated as a research assistant by Tulane during portions of her time at FCAT and as a research and teaching assistant while at Tulane." Amend. Compl. ¶ 151; *see also id.* ¶ 15 ("[S]he also worked as a research assistant and teacher's assistant, for which she received payment as an employee . . . ."), ¶ 30 ("Plaintiff was compensated for her work as a research assistant."). Her work included "supervis[ing] and mentor[ing] undergraduate students in the field." *Id.* ¶ 88. "Defendant Karubian supervised and oversaw Plaintiff's *work as a research assistant and teaching assistant*

both during Plaintiff's time at FCAT and while taking classes or conducting research at Tulane."
Amend. Compl. ¶ 38; *see also id.* ¶ 18 (alleging that Defendant Karubian "supervised" Plaintiff's
"work" at FCAT ), ¶ 154 (describing Defendant Karubian as Plaintiff's "supervisor").

### ii. The underlying issue that Plaintiff reported and the adverse action by Karubian were *employment*-related

Defendants cite a number of cases for the obvious proposition that a plaintiff who is both
a student and an employee states a Title VII retaliation claim only if the underlying protected
activity by the plaintiff for which she is allegedly being retaliated against occurred in the context
of her employment. Tulane Mot. at 15-17. But Defendants then conflate Plaintiff's protected
activity and Defendants' adverse action. This conflation allows Defendants to characterize one or
the other as academic rather than employment. Specifically, Defendants argue:

> Plaintiff did not complain of or oppose discrimination by Tulane in her
> *employment*; instead, she complained that she was being discriminated against in
> the course of her *educational* Ph.D. work. Plaintiff's allegations that she was
> "terminated" from her academic advisory under Defendant Karubian, as well as
> her research at FCAT, even if true – which is denied, are not sufficient allegations
> of employment actions.[1]

*Id.* at 17-18 (emphasis in Defendants' brief). Defendants are conflating her "oppos[ition]" of
discrimination and Defendant Karubian's actions against her.

It is deeply offensive that Defendants would seek to characterize the discrimination she
experienced – rapes by a coworker – as something other than discrimination in her employment.
Moreover, Plaintiff clearly alleged that she was an employee during portions of her FCAT work.
Amend. Compl. ¶¶ 29-30, 151.

―――――――――――――

[1] Defendants more substantively address the adverse action element in the discussion of Plaintiff's Title
IX claims, and Plaintiff discusses this *infra*. However, it is remarkable that Defendants conclusorily assert
that termination from her work at FCAT would not suffice as an adverse action. The obvious
erroneousness of this assertion may be why Defendants spend so little time addressing this question.
Losing a job is an adverse action.

As for the adverse action, the allegation is that Defendant Karubian terminated Plaintiff from his advisory, which included his supervision of her work as an employee and her opportunity to work at FCAT. Amend. Compl. ¶ 63. Karubian was her "supervisor" when he terminated her. *Id.* ¶ 154. He imposed "work restrictions." *Id.* ¶ 155.[2]

### iii. The cases Defendants cite deal with squarely academic activities

By contrast, the cases Defendants cite are inapposite because they involve protected activity squarely within the academic context or adverse action that was purely academic in nature. Plaintiff agrees that she only receives protection if her protected activity related to her (or another's) employment status. *See, e.g.,* Tulane Mot. at 15 ("Title VII simply does not protect the complaint of a graduate teaching assistant regarding discrimination *in academic activities*, which were about her school as a university, not . . . as an employer." (emphasis added)).[3]

---

[2] Defendants appear to argue that the action Karubian took against Plaintiff was not adverse. Tulane Mot. at 20 ("[S]he was a student who was simply advised to identify a suitable advisor and did so."). Plaintiff addresses the adverse action argument below in the discussion of the Title IX claims, as Defendants more clearly challenge this element there.

[3] Defendants cite numerous out-of-circuit cases for this proposition. Tulane Mot. at 15 n.32. Plaintiff need not respond to each of these cases because Plaintiff does not dispute the legal argument. Instead, she disputes the mischaracterization of her claims as being exclusively focused on her academic activities. Defendants also cite cases that simply state that Title VII offers protection only when the employee reports unlawful discrimination. *Id.* at 15-16 n.33 and 34. Defendants do not argue that Plaintiff's activity was unprotected because of the nature of the conduct – sexual violence – she was reporting. Instead, Defendants argue that the sexual violence did not occur in the workplace. In those cases Defendants cite, the plaintiff failed to allege discrimination or retaliation for reporting discrimination, *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020), "unfair labor practices" other than discrimination, *Smart v. Geren*, 350 F. App'x 845, 846 (5th Cir. 2008), or disability-related issues covered by the Americans with Disabilities Act but not covered under Title VII, *Tucker v. Unitech Training Acad., Inc.*, 783 F. App'x 397, 400 (5th Cir. 2019). Defendants do not dispute that sexual assault constitutes discrimination.

Accordingly, Defendants' citation to other cases begs the question: Was she an employee? None of the cases answer this question. *See* Tulane Mot. at 16-17. In *Hincapie v. Texas Tech Univ.*, 2024 WL 4607719, at *10 (N.D. Tex. Oct. 29, 2024), the plaintiff did not dispute that his allegations focused only on his educational activities. Plaintiff in the instant case addresses both her educational and her work activities. In another case cited by Defendants, "all of Plaintiff's factual allegations go to conduct surrounding his failed comprehensive *exam*—no allegation concerns his work as a teaching assistant." *Muthukumar Nachiappan Subbiah v. The Univ. of Texas at Dallas*, 2011 WL 1771806, at *5 (N.D. Tex. May 10, 2011) (emphasis added), aff'd sub nom. *Muthukumar v. Univ. of Texas at Dallas*, 471 F. App'x 407 (5th Cir. 2012). As discussed above, Plaintiff in the instant cases *explicitly* alleges that the underlying activity related to her work as a teaching assistant. In another case that Defendants cite, the plaintiff "reported discriminatory treatment *of students* based on race. As for her, she only mentions 'unfair treatment' in an interview and an annual evaluation," and did not allege that such unfair treatment was discriminatory. *Ellis v. Midwest Tech. Inst., Inc.*, 2021 WL 3612279, at *2 (S.D. Miss. Aug. 13, 2021) (internal citations omitted) (emphasis in original). Finally, in *Dear v. Jackson State Univ.*, 2008 WL 4225766, at *8 (S.D. Miss. Sept. 10, 2008), the claim arose from allegations of how an employee treated a *student* as such.

### iv.   Employee status is subject to discovery

None of these cases precludes a graduate student from protection under Title VII *when they serve as an employee*. A recent Sixth Circuit decision is highly instructive. There, the Court held that, at the summary judgment stage, the plaintiff had created a genuine dispute of material fact as to *whether she was in fact an employee*. *Huang v. Ohio State Univ.*, 116 F.4th 541, 559 (6th Cir. 2024). "[A] student's academic and employment work can also overlap, and that does

not remove them from the employment protections of Title VII either." *Huang,* 116 F.4th at 556. Just as a medical student may also teach in clinical settings, *id.*, so Plaintiff used her training to teach other students. It would be perverse if she could only receive Title VII protections if her work were completely removed from her studies. *See id.* ("Consider a student who enrolls in a full load of courses and then works at the library restacking books to earn an hourly wage. This student might control the manner and means by which she completes her coursework, but no one would dispute that her library job fell under Title VII." (internal citation and quotations omitted)). In *Huang*, the Sixth Circuit looked to the Supreme Court's analytical framework, including more than a dozen factors, for assessing whether a plaintiff qualifies as an "employee." *Id.* at 557 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (identifying numerous factors for assessing whether a plaintiff is an employee under a separate federal law)).[4]

### b. Plaintiff's claims are timely

Defendants argue that some of Plaintiff's allegations are untimely. Tulane Mot. at 21. It is clear that some of the identified allegations (which Defendants do not identify by paragraph in the Amended Complaint) are not actually part of the claims. Rather, a number of the factual allegations, including "alleged sexual comments made by Gonzalez in the summer of 20[2]1,"[5] Tulane Mot. at 21, serve as background/context or evidence of Karubian's retaliatory motives.

---

[4] As discussed above, Plaintiff asserts that, at this stage, the allegations in the Amended Complaint suffice. However, if the Court requires additional specificity demonstrating that Plaintiff was an employee as well as a student, she requests leave to amend her Complaint. Such allegations would describe the significant extent to which Defendant Karubian controlled Plaintiff's work at FCAT – in stark contrast to the independence with which she pursued her own studies – and the extent to which her work deviated from her own studies and contributed to FCAT rather than to her own doctorate. *See Huang*, 116 F.4th at 556-58 (identifying factors for determining whether plaintiff is an employee, including the nature of the work, the degree of control the university had over the work, and the benefits received).

[5] This presumably refers to allegations early in the Amended Complaint, Amend. Compl. ¶¶ 29, 31, that are intended to provide the background as to the lead-up to the underlying sexual assault in the summer of

Others, including "Defendant Karubian's purported delayed reporting in May 2023, her expressions of dissatisfaction with Defendant Karubian's response to her report against Gonzalez, and the meeting with Defendant Karubian, Van Bael, and Frank in August 2023," *id.*, serve as background/context and evidence of retaliation but are also part of a continuing course of conduct and are therefore not time-barred. The well-established "continuing violation doctrine" makes this clear. *See, e.g., Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017), as revised (Mar. 13, 2017).[6] Because the November 30 decision was an "act contributing to the claim [that] occur[red] within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* "[P]laintiff's hostile environment claim is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant, so the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement." *Id.* (internal quotations omitted).

### 2. Plaintiff sufficiently pleads inadequate investigation and erroneous outcome claims

#### a. Plaintiff's allegations are sufficient to state a Title VII claim

Plaintiff concedes that the claims regarding inadequate investigation and erroneous outcome relate to the underlying retaliatory action. In essence, the claims are that the university's

---

2022 that Plaintiff reported to Karubian and that Karubian retaliated against her for reporting. None of Plaintiff's claims include the underlying sexual assaults.

[6] As *Heath* makes clear, the doctrine applies to hostile environment claims. 850 F.3d at 739. While Plaintiff alleges that the additional incidents prior to November 30, 2023, "constituted retaliation," Amend. Compl. ¶ 157, should the Court determine that Plaintiff should clarify that the claim includes retaliatory harassment/hostile work environment, Plaintiff seeks leave to amend. Likewise as to the conduct against Plaintiff while she was in the U.S. regarding her Title IX retaliation claim. *See id.* ¶ 189.

deficient investigations of the retaliation claim and of the underlying assaults (1) ratified the retaliatory action and prevented her from being able to meaningfully challenge/undo it and (2) prevented the university from creating an environment at FCAT that was safe. In other words, it resulted in the continuation of the adverse action and the deliberate failure by the university to cure the actions taken against her. *See* Amend. Compl. ¶ 172 ("The inadequate investigations resulted in Plaintiff being unable to participate in FCAT, as, had the investigations been conducted properly and timely, Plaintiff would have been restored to her work with FCAT.").

### b. Tulane's investigative practices were discriminatory

Plaintiff alleges a discriminatory response by the University in its investigation of her sexual assault complaint and retaliation complaint. *Id.* ¶¶ 160-174.

Defendants seem to believe that the manner in which the University's investigation was conducted cannot give rise to a Title VII claim. Tulane Mot. at 18-19. Indeed, Defendants apparently misinterpret the claim as being part and parcel with the retaliation claim. *Id.* But Plaintiff's claim is that the investigation was discriminatory *and* resulted in the finalization of the retaliation. *See, e.g.,* Amend. Compl. ¶ 172 ("The inadequate investigations resulted in Plaintiff being unable to participate in FCAT, as, had the investigations been conducted properly and timely, Plaintiff would have been restored to her work with FCAT."). "An employer's investigatory choices might, depending on the facts of a particular case, be suspicious in a way that renders the defendant's explanation unworthy of credence and permits an inference of discrimination." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 828–29 (5th Cir. 2022) (internal quotations alterations omitted).

Plaintiff's allegations are vastly more extensive than those in *Owens.* Plaintiff alleges numerous investigative failures, including extensive delays at every stage of the process, Amend.

Compl. ¶¶ 90, 100, 119-124, 132, 162(a)-(b), 167-168; exclusion of key questions during the hearing, *id.* ¶ 162(d); the investigator's accusatory and victim-blaming style of questioning Plaintiff, *id.* ¶¶ 93, 94(e)-(g), 163(a), (f), (g), 165(b); the release of extensive private information, *id.* ¶¶ 96-99, 163(c); slanted credibility analysis, *id.* ¶¶ 93, 94(a), (j), 163(e), 165(a), and focus on Plaintiff's conduct, *id.* ¶¶ 93, 94(b), (k), 115-116; mischaracterizing Plaintiff's statements, *id.* ¶¶ 94(h)-(i), 163(h); the total omission of any discussion of Karubian's potential reasons for retaliating, *id.* ¶¶ 113, 130 164(a)-(b); *see also id.* ¶ 117, and of problematic conduct by Karubian (e.g., speaking with the accused assaulter) demonstrating potential retaliatory motives, *id.* ¶¶ 113, 164(c)-(f), even after Plaintiff identified these omissions, *id.* ¶ 114; the brevity of the decisions, *id.* ¶¶ 103, 129, 166, 169-170; the hearing panel's disregard for key evidence, *id.* ¶¶ 126-127, 171; and the conclusory and dismissive nature of the appeal decision, *id.* ¶¶ 104-106.

### c.   Under the *correct* legal framework, Plaintiff's claims suffice

This is not a purely circumstantial case, and it does not involve replacing Plaintiff with someone outside of her protected class. Instead, there is direct evidence of discrimination. Therefore, the *Arlington Heights* framework applies, and the Court should evaluate the totality of the allegations, both direct evidence and indirect evidence of discrimination. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-67 (1977).

### i.   Legal standards for discrimination claims

The Fifth Circuit has acknowledged that it is "[i]n the absence of direct evidence of intentional discrimination" that the court should "apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas*." *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018); *see also Familias Unidas Por La Educacion v. El Paso Indep. Sch. Dist.*, 633 F. Supp. 3d 888, 894 (W.D. Tex. 2022) (noting application of *Arlington Heights* standard in Title

VI cases). "The familiar three-step *McDonnell Douglas* approach is applied where no direct evidence of discrimination is available. Alternatively, the plaintiff may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way." *Fortenberry v. City of Wiggins, Mississippi*, 2018 WL 8809236, at *5 (S.D. Miss. Feb. 5, 2018) (internal quotations and citations omitted) (noting that the plaintiff "points to . . . comments . . . that focused on [protected] characteristics").

Defendants appear to think that the *McDonnell Douglas* framework applies, Tulane Mot. at 14, 19, and that Plaintiff must show that males or other victims were treated differently, *id.* at 19-20. But the *Arlington Heights* framework provides an alternative that focuses on indirect evidence. *Vill. of Arlington Heights.*, 429 U.S. at 266-67. When a plaintiff relies on the *Arlington Heights* method to establish intent, "the plaintiff need provide *very little such evidence* to raise a genuine issue of fact; *any indication* of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1159 (9th Cir. 2013) (internal quotations and alterations omitted) (emphasis added); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–100 (2003) ("We have often acknowledged the utility of circumstantial evidence in discrimination cases. . . . The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." (internal quotations and citation omitted)). *McDonnell Douglas* "is not a straightjacket *requiring* the plaintiff to demonstrate that

such similarly situated entities exist." *Pac. Shores Props., LLC*, 730 F.3d at 1159 (emphasis in original).

> Under *Arlington Heights*:
>
> Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. The impact of the official action whether it bears more heavily on one [group] than another, may provide an important starting point. Sometimes a clear pattern, unexplainable on grounds other than [group membership], emerges from the effect of the . . . action . . . But such cases are rare. . . . Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role. Substantive departures too may be relevant, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached.

*Vill. of Arlington Heights*, 429 U.S. at 266-67 (internal quotations and citations omitted). Also, evidence that explanations given by university officials are "unworthy of credence" is "one form of *circumstantial evidence* that is probative of intentional discrimination." *Desert Palace, Inc.*, 539 U.S. at 100 (emphasis in original). Indeed, such evidence "may be quite persuasive. *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

### ii.   Plaintiff alleges both direct and indirect evidence

Plaintiff alleges direct evidence of discrimination, namely, that the investigator engaged in victim-blaming and played on outdated gender stereotypes. Amend. Compl. ¶¶ 93; 94(b), (e), (g), (h); 163(a), (f), (g); 165(b). 163(e); 165(a); 169.

The indirect evidence – numerous other investigative deficiencies (see discussion above) – is likewise substantial. *Id.* ¶¶ 161-171; *see also id.* ¶¶ 89-101, 103-106, 112-118, 124, 126-132. First, it goes without saying that sexual violence (and therefore retaliation for reporting such violence) has a significantly disparate impact on female victims, though Plaintiff requests leave to amend the Complaint if the court determines that such an allegation is necessary. Second, the Complaint is replete with examples of both substantive and procedural "departures" from the

14

norm, *Vill. of Arlington Heights*, 429 U.S. at 266-67, as Plaintiff alleges deviations from requirements set forth in the university's own policy, as discussed in detail, *supra*. And third, as discussed *supra*, the investigation and hearing panel simply adopted the reasons offered by Karubian without evaluating his motives for offering pretextual justifications. In the sexual assault investigation, as discussed *supra*, the reasons stated were also predicated on the claims of the accused, without any meaningful evaluation of his motives for lying or of evidence supporting Plaintiff's credibility. Those reasons are therefore "unworthy of credence." *Desert Palace, Inc.*, 539 U.S. at 100

In any event, Plaintiff satisfies the *prima facie* standard under *McDonnell Douglas.* She alleges repeatedly that the investigation treated her differently than the males involved. *See, e.g.,* Amend. Compl. ¶¶ 94(a), (j), 104(b), 113-116, 163(e), 164, 165(a), 171 (questioning Plaintiff's credibility but not her male attacker's).

### D.  Plaintiff's LEDL and Whistleblower Claims

Defendants point out that Plaintiff alleged only that she was retaliated against for reporting violations of the LEDL. Tulane Mot. at 22. Should the Court deem it necessary, Plaintiff seeks leave to amend to include allegations that she was retaliated against for reporting violations of other laws, namely laws prohibiting sexual assault. The whistleblower statute covers retaliation against a person who "[o]bjects to or refuses to participate in an employment act or practice that is *in violation of law*." La. R.S. § 23:967(A) (emphasis added).[7]

---

[7] Plaintiff may also need to amend the Whistleblower claim. Unlike the other claims, it inadvertently omitted the following: "Plaintiff realleges and incorporates each and every foregoing paragraph."

### E.  The Court Should Decline to Dismiss Plaintiff's Title IX Claims

#### 1.  Plaintiff alleges facts satisfying the elements of a Title IX claim

##### a.  The location of the retaliation, not of the underlying sexual assault reported, is all that matters in a retaliation case

Defendants' argument that retaliation for reporting sexual assaults that occurred abroad is unprotected under Title IX, Tulane Mot. at 24, is a frightful and obvious misreading of the regulations. First, whether the report of the sexual assaults constitutes protected activity depends only on whether it was a good faith report. Indeed, Defendants may as well argue that the report was not protected activity because the university found that the alleged underlying sexual assault did not occur at all. That is simply not the standard. The regulations provide that "[n]o recipient or other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by title IX or this part, or because the individual *has made a report* or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part." 34 CFR § 106.71(a) (emphasis added). It is critical to understand that a "report" *precedes* a determination of whether the reported conduct does in fact fall under Title IX. Even a formal complaint may be dismissed, but that does not mean the filing of a formal complaint is not protected activity. 34 CFR § 106.45(b)(3). It would make little sense if such activity were unprotected, as the purpose of the anti-retaliation protection is to ensure complainants are not deterred from coming forward in the first place. Reports and complaints with merit would be discouraged if reports and complaints without merit received no protection.

Second, "sexual harassment" under the regulations is not limited to sexual harassment that occurs in the United States. 34 CFR § 106.30(a). It entails only specific "unwelcome conduct" or "sexual assault." *Id.* Thus, reporting such conduct is protected. Defendants conflate

these provisions with those addressing extraterritoriality. The regulations require a university to implement a grievance procedure to address sexual harassment that occurs in the United States. 34 CFR § 106.8(d). This is because the regulations allow liability for sexual harassment under Title IX only where the harassment occurred inside the U.S. 34 CFR § 106.44(a).

In the instant case, the alleged violation – retaliation – occurred in the United States. And Plaintiff is not claiming that Tulane was deliberately indifferent to the underlying sexual assaults, as those assaults occurred outside of the United States.

Moreover, Plaintiff also alleges retaliation for her *ongoing* complaints, including at the fateful August 2023 meeting, about Karubian's handling of her report. Amend. Compl. ¶ 186; *see also id.* ¶ 53. This protected activity occurred inside the U.S. *Id.* ¶ 59.

### b. Tulane took adverse action against Plaintiff

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681.

First, Plaintiff makes clear the significant opportunity that participation in FCAT represented. Amend. Compl. ¶¶ 88, 144.[8] Thus, dismissing her constituted an adverse action.

Second, she was undoubtedly excluded from a program or activity, as defined in Title IX. Defendants argue that the action was not adverse because Plaintiff "is still enrolled at Tulane and on-track to complete her PhD program." Tulane Mot. at 24 (citing *Collins v. Jackson Public School Dist.*, 609 Fed.Appx. 792 (5th Cir. 2015)). Reliance on *Collins* is misplaced. First,

---

[8] Should the Court determine that the allegations fall short, Plaintiff would request leave to amend to, in particular, identify the unique and extraordinary learning opportunity that participation in FCAT constituted and the critical significance of being able to study under a specialist like Karubian. She was, in short, denied participation in programs or activities.

nothing in *Collins* suggests that the challenged action must rise to the level of an expulsion. Title IX liability for excluding students from "any program or activity" extends well beyond a total removal of the student from the university or from a department. "[T]he term 'program or activity' and 'program; mean *all of the operations*" of the university. 20 U.S.C.A. § 1687 (emphasis added). "'[E]ducation program or activity' includes locations, events, or circumstances over which the recipient exercised substantial control over both the respondent and the context in which the [conduct] occurs . . . ." 34 CFR § 106.44(a).

Second, *Collins* involves a transfer, and the court goes on to say that some transfers do indeed amount to a demotion. *Collins*, 609 Fed.Appx. at 795.

Third, in *Collins*, "[t]he district court found that [the plaintiff] had offered no evidence that the [school to which he was transferred] was objectively worse" and instead relied only on "assertions." *Id.* In the instant matter, on the other hand, Plaintiff alleges she was pushed out of a unique program that offered obvious benefits. Amend. Compl. ¶¶ 8, 40-41, 88, 144.[9]

Finally, *Collins* involved an employee, 609 Fed.Appx. at 796, and Plaintiff in the instant case alleges impacts on both employment and, as Defendants acknowledge, academics.

### c.    Plaintiff alleges a causal link between her protected activity and the adverse action against her

Defendants argue that Plaintiff has not alleged a causal link between her reporting potential harassment and Karubian's action against her. Tulane Mot. at 24-25. Defendants rely on a misunderstanding of Plaintiff's allegations. She did not ask for Van Bael and Frank to *replace* Karubian as her advisors. *See id.* at 25. Rather, she asked that they be her *co*-advisors along with Karubian. Amend. Compl. ¶ 56. Karubian was Plaintiff's bridge to FCAT, which was

---

[9] Again, if the Court deems it necessary, Plaintiff is prepared to amend to enumerate the unique and desirable qualifies of the research and work opportunities associated with the FCAT program.

critical to Plaintiff's research. In any event, ultimately the question of whether Plaintiff's allegation that she had no choice but to forgo further participation at FCAT is a question for the jury, or at a minimum should be subjected to discovery.

### 2. Decisions made prior to Pardee finishing investigations

Defendants note that the decisions by Karubian "were made prior to outside investigator Defendant Pardee even finishing her investigation in April 2024 or informing Plaintiff of her determination of the outcome of the investigation in July 2024." Tulane Mot. at 25. It is not clear what Defendants are arguing here. The protected activity occurred before Karubian's action, even if Plaintiff continued to engage in protected activity by participating in the investigation.

### 3. Plaintiff alleges Karubian's stated reasons were pretextual

Defendants erroneously note that "Plaintiff also acknowledges that the November 30, 2023 remediation letter 'enumerated reasons for the action *other than* her reporting her sexual assaults or her displeasure with Karubian's handling of her reports' including alleged misconduct by Plaintiff at FCAT and the August 2023 meeting." *Id.* (quoting Amend. Compl. ¶¶ 65, 74) (emphasis added in Defendants' brief).

But Defendants omit a key part of that allegation: Plaintiff specifically alleges that "[t]hese stated reasons for terminating Plaintiff from Karubian's advisory *were pretexts*, as Plaintiff had received positive evaluations of her performance, including from Karubian himself, and the allegations of inappropriate conduct by Plaintiff were never investigated or subjected to the university discipline processes." Amend. Compl. ¶ 67 (emphasis added). The November 30 letter attempts to whitewash his actions, to provide an explanation for his drastic decision. But the falsity of that explanation is for a jury to determine.

It is therefore simply not true that Plaintiff's "own allegations confirm" Karubian's action was not discipline or adverse. *See* Tulane Mot. at 25.

### 4. Plaintiff sufficiently alleges Tulane's failure to investigate and erroneous outcome

#### a. Tulane's actions are not excused simply because it initiated the investigation

Defendants argue that Plaintiff cannot assert a claim regarding the inadequate investigation and erroneous outcome because she did not file a formal complaint of retaliation. *Id.* at 16. This argument, if successful, would mean that a university can permissibly be deliberately indifferent to discrimination or retaliation so long as the university, rather than the victim, initiated the investigation. Moreover, by initiating the investigation, the University rendered moot any attempt Plaintiff might have made to file a complaint. Defendants cite no authority for this distinction between investigations depending on how it was initiated. There is nothing in the regulations that indicates that a complainant loses standing to challenge the university's response simply because she was not the one that initiated it. Indeed, a university's decision to initiate such an investigation may demonstrate the particular seriousness of the matter, and the regulations permit the university to initiate such proceedings, 34 CFR § 106.30(a), presumably precisely because students may feel fearful of further retaliation.

The argument is also predicated on a misreading of the Title IX regulations. Specifically, the "formal complaint" requirement applies to sexual harassment claims, not to retaliation. 34 CFR § 106.30(a) (defining "Formal complaint": "Formal complaint means a document filed by a complainant or signed by the Title IX Coordinator alleging sexual harassment against a respondent and requesting that the recipient investigate the allegation of sexual harassment."). The regulations require investigation of retaliation complaints. 34 CFR § 106.71(a) ("Complaints

alleging retaliation may be filed according to the grievance procedures for sex discrimination required to be adopted under § 106.8(c)."); *see also* 34 CFR § 106.8(c) ("A [university] must adopt and publish grievance procedures that provide for the prompt and equitable resolution of student and employee complaints alleging any action that would be prohibited by this part . . .," including retaliation.). The University's policy provides: "If, during the investigation, additional information is disclosed that may also constitute prohibited conduct under this policy, the Respondent and Complainant will be informed in writing that such additional information will be included in the grievance process." EO Policy, Exh. 1, at 43.

Looking to the sexual harassment complaint process as a guidepost, it becomes clear that a complainant remains the complainant whether or not it was she who initiates the investigation, and the university must conduct an investigation that protects the complainant's rights as enumerated in the regulations: "Where the Title IX Coordinator signs a formal complaint, the Title IX Coordinator is not a complainant or otherwise a party . . . ." 34 CFR § 106.30(a). "Complainant means an individual who is alleged to be the victim . . . ." *Id.* It does not mean the person who filed a complaint.

But the technical nuances are beside the point. It is the university's overall response, including a possible investigation, that matters. Plaintiff remained involved in the process, including by responding to draft reports, Amend. Compl. ¶¶ 104(a), 109-110, 114, 164, and attending and providing testimony and an opening statement at the hearing, *id.* ¶ 125.[10] She participated as a complainant. The process must protect her rights.

---

[10] After filing this lawsuit and the Amended Complaint, Plaintiff also appealed the hearing panel's decision. Depending upon the outcome of that appeal and/or quality of the appeal decision, Plaintiff may seek to amend her complaint.

### b. Plaintiff sufficiently alleges a deeply flawed investigation

For the reasons discussed above regarding the inadequate investigation under Title VII, the claim of inadequate investigation under Title IX should also survive the motion to dismiss.

### i. Defendants mischaracterize key allegations

As a threshold matter, Defendants erroneously claim that Plaintiff alleges the investigation was "detailed." Tulane Mot. at 5, 26. Plaintiff makes no such claim. Defendants further suggest that the investigation into retaliation was thorough because the investigator went to Ecuador to interview witnesses. *Id.* at 5, 26. But the visit to Ecuador was for the investigation of the underlying sexual assault, not retaliation. Amend. Compl. ¶ 85 (noting the investigation's expansion in February 2024 to address retaliation); ¶ 69 (noting Pardee's interviews in Ecuador occurred in November 2023, that is, prior to the investigation expanding to include retaliation).

### ii. Plaintiff alleges numerous deficiencies in the retaliation investigation that evidence discrimination based on sex

Instead, as discussed above, Plaintiff makes numerous allegations of deficiencies in the investigation of alleged retaliation, *id.* ¶¶ 112-118, 120, 123-24, 126-27, 129-34, 162(d), 163(b)-(c), 164-165, 168, 193. 196, 198, 200-01, 203-04, 205(b)-(c), 205(e), 207, and that the deficiencies in the investigation of the underlying sexual assault further evidenced bias in the investigation of the retaliation complaint, *id.* ¶¶ 89-106, 163(a), 163(e)-(h), 166-71, 205(a), 205(d), 205(f). *See also id.* ¶¶ 162(a)-(c), 163(d), 206 (allegations regarding both investigations). Moreover, Plaintiff does not merely allege deliberate indifference to the retaliation. She also alleges that the university's response itself was discriminatory. *See* 34 CFR § 106.45(a) ("A recipient's treatment of a complainant . . . in response to a formal complaint of sexual harassment may constitute discrimination on the basis of sex under title IX."). Plaintiff repeatedly alleges that the deficiencies evidence discrimination. Amend. Compl. ¶¶ 204-207.

Defendants make a misguided attempt to analogize the instant case to *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). But in that case, the plaintiffs "focus primarily on [the institution's] asserted failure to promulgate and publicize an effective policy and grievance procedure for sexual harassment claims." *Id.* at 291. The court determined that such a procedural violation on its own cannot constitute a Title IX violation. *Id.* at 291-92. Plaintiff's allegations go well beyond this, as discussed above. Plaintiff is not claiming that Tulane's investigation should have been "flawless" or "perfect." *See* Tulane Mot. at 26 (quoting *Sanches v. Carrolton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011)). Moreover, unlike in *Gebser*, Tulane's procedural violations are specific to its investigation of Plaintiff's internal complaint; the failure in *Gebser*, on the other hand, did not relate to a specific complainant and therefore does not evidence bias or discrimination against that particular individual.

Other cases that Defendants cite, Tulane Mot. at 26 n.71, involve *isolated* deviations from policies and/or a robust response by the institutions. *See, e.g.*, *Sanches*, 647 F.3d at 169-70 (school principal conducted investigation, which is what the school policy required, rather than referring it to Title IX coordinator); *Wilson v. Beaumont Indep. Sch. Dist.*, 144 F. Supp. 2d 690, 693 (E.D. Tex. 2001) ("[The principal] took significant steps to remedy the situation. He interviewed the students; spoke with CPS and the Beaumont Police Department; interviewed employees, getting written statements from them; held a meeting with Wilson and his parents, teachers, and administrators; and transferred Doe to another school."); *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1121 (10th Cir. 2008) (the principal deferred to law enforcement because he "believed none of the [sexual assault] incidents occurred on school grounds and the incidents occurred before any of the students were enrolled at the high school," and law enforcement did in fact conduct extensive investigation). In *Doe v. Edgewood*

23

*Indep. Sch. Dist.*, 964 F.3d 351, 363-64 (5th Cir. 2020), the district suspended the teacher while

it investigated the report, a measure that was never even discussed in Plaintiff's case.[11] *See also*

*J.T. v. Uplift Educ.*, 2024 WL 5118486, at *7 (5th Cir. Dec. 16, 2024) ("[O]nce Uplift first

received the email, it placed Wazed on leave, investigated the report, and terminated Wazed's

employment within a few days. Doing so ended all known harassment."). Nor did she receive

anything close to the kind of support discussed in *Oden v. N. Marianas Coll.*[12]:

> The College began to act as soon as it became aware of Plaintiff's allegations.
> Two counselors were assigned to Plaintiff to provide psychological and practical
> support; they met with her more than a dozen times; they assisted her in filing a
> formal complaint; and they helped her drop [a] class immediately. . . . [The
> respondent] was instructed not to have any contact with Plaintiff. Eventually . . .
> [the respondent] was significantly disciplined."

440 F.3d 1085, 1089 (9th Cir. 2006).

Plaintiff, on the other hand, alleges *extensive* departures at each and every stage of the

process, as discussed in detail *supra*. While it may be true that "Title IX does not require

flawless investigations or perfect solutions," Tulane Mot. at 26, it is also true that Title IX cannot

permit deeply flawed investigations that disregard fundamental principles of fairness and

equitable treatment undergirding Title IX. Plaintiff alleges that the Title IX office was not even

involved to ensure the investigation was fair and thorough. Amend. Compl. ¶¶ 118, 137-38. An

investigation and hearing process that blames the victim, entails numerous significant delays,

engages with outdated gender stereotypes, attacks the alleged victim's credibility while sparing

the accused any scrutiny, and dismisses all evidence presented by the victim can hardly be said

to prevent further retaliation. The investigator never even conducted an interview of Plaintiff as

---

[11] Plaintiff can amend to include this fact, that is, that Karubian was permitted to continue teaching and have significant contact with Plaintiff.

[12] Plaintiff can amend to include this fact, that is, that she received virtually no support.

part of the retaliation investigation, inappropriately relying instead on her earlier interview with Plaintiff regarding the underlying assault. Amend. Compl. ¶ 205(b). Indeed, such a flawed and unbalanced investigation will undoubtedly endorse a culture of impunity. Once Tulane learned of the potential retaliation, it did not intervene to temporarily undo her termination from FCAT, ensure that the allegations against Plaintiff were subjected to the university's disciplinary procedures, or discipline Karubian.[13] *Id.* ¶¶ 77-84, 87. She was simply left to fend for herself.

### F.  Injunctive and Declaratory Relief is Appropriate

For the reasons discussed *supra*, Plaintiff is entitled to injunctive and declaratory relief. *See* Tulane Mot. at 27. Defendants appear to concede that if Plaintiff has made out claims under Title VII and/or Title IX, she would be entitled to such relief.[14] The one case Defendants cite in their misguided argument against Plaintiff's standing does not apply in this case. *Id.* (citing *Diggs v. Harris Hospital – Methodist, Inc.*, 847 F.2d 270 (5th Cir. 1988)). In *Diggs*, a doctor lacked Title VII standing because she was not employed by the hospital but merely had "staff privileges." 847 F.2d at 273. Even if the Court determines that Plaintiff was not an employee, Defendants cite no authority for denying Plaintiff standing as a current student.

### G.  Plaintiff's Negligence Claims Should Not be Dismissed

#### 1.  Plaintiff does not assert untimely claims

Defendants list a number of allegations in the Amended Complaint that they argue fall outside of the one-year statute of limitations. Tulane Mot. at 27-28; Karubian Mot. at 5; Foster Mot. at 4-5. Defendants' argument is misplaced.

---

[13] To the extent the Court determines that such allegations are not included in the Amended Complaint, Plaintiff would request leave to amend.

[14] Defendants make the odd argument that Plaintiff is not entitled to challenge Tulane's Title IX practices because "she was not an employee." Tulane Mot. at 27. As a student, she is protected under Title IX.

First, as to some of these allegations, Plaintiff decidedly does not assert claims against the university or individuals. For example, Plaintiff is not suing over "alleged sexual comments made by Gonzalez in the summer of 20[2]1" or the "alleged sexual assault by Gonzalez in June 2022." *See* Tulane Mot. at 27. Nothing in her Amended Complaint suggests otherwise, and any allegations in the Amended Complaint regarding Gonzalez's conduct is directed entirely at providing background and context for the allegations regarding the inadequate investigation of that conduct and/or retaliation for reporting such conduct.

Second, Defendants cite Plaintiff's allegations regarding a series of actions by Karubian starting in February 2023 with his failure to properly respond to her initial report and continuing through August 2023 during the meeting with Karubian and other professors. *Id.* at 27-28. But these allegations clearly fall within Louisiana's "continuing tort doctrine." *Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992). Each incident on its own and in combination with the others constituted dismissiveness towards Plaintiff's traumatic experience with sexual violence. They are also alleged as evidence of the retaliatory nature of the final adverse action against Plaintiff.

### 2. Plaintiff's allegations are about retaliation and negligent responses to such retaliation, not academic decisions

Plaintiff's allegations relate to retaliation and the university's response to the retaliation and sexual assaults. It is simply not true that her allegations relate to decisions about her academic performance. Tulane Mot. at 28-29; Karubian Mot. at 6-7; Foster Mot. at 5-6.

As an initial matter, the reasons stated in the November 30 letter to Plaintiff resemble in almost every way a performance evaluation of an *employee*. Tulane Mot., Attach., ECF No. 28-3 (Apr. 1, 2025). But Defendants' characterization of the letter begs the very question at issue in the case: Even assuming Karubian gave reasons that were about Plaintiff's academic performance, were these reasons true or were they pretextual? Plaintiff is not claiming that the

reasons given in the letter were inadequate to justify dismissal; rather, she is challenging the veracity of those reasons and claiming they are pretextual.

In the cases Defendants cite, Tulane Mot. at 28-29; Karubian Mot. at 6-7, the *plaintiffs* offered reasons for the action against them that were entirely about their academic performance, not discrimination or retaliation for *protected activity*, and stated such reasons did not justify the action against them. *See, e.g.*, *Mills v. Tarver*, 340 So.3d 959, 971 (La. App. 1 Cir. 2021) (allegations that the professor was "decid[ing] to fluctuate the passing score of the comprehensive exams," failing to administer exams during a particular summer, and failing to formally respond to two of the plaintiffs' grievances about academic decisions) ("At their essence, the plaintiffs' claims are academic disputes, challenging testing practices and grading policies."); *Miller v. Loyola University of New Orleans*, 829 So.2d 1057, 1058 (La. App. 4 Cir. 2002) (complaining that professor did not "timely order materials for class, changed course time, "had the students perform class presentations on subjects she was obligated to teach," failed to adequately cover certain topics, and gave a final exam that had errors in the questions); *Seals v. Mississippi*, 998 F. Supp. 2d 509, 524 (N.D. Miss. 2014) (challenging professional judgment in awarding plaintiff his disputed grades or concluding that he cheated on his final exam). Plaintiff is not alleging unfair test scores, inadequate classroom materials, or poor instruction. She is alleging retaliation for engaging in protected activity.

### 3. Defendants breached a duty to address and prevent physical harm

Rather than fulfill their duty to protect Plaintiff from further harm in the FCAT program, Defendants simply endorsed her involuntary removal from it. This is a dereliction of the duty to address foreseeable *further* violence by a third party, that is, the individual who assaulted Plaintiff. *See, e.g.*, *Williams v. State*, 786 So.2d 927, 931-32 (La. 2001); *Boyd v. Cebalo*, 191

So.3d 59, 62 (La. 2016).[15] Defendants' effort to repackage the allegations as narrowly focused on administrative responsibilities, Karubian Mot. at 8-10, Foster Mot. at 6; are therefore unavailing.

### 4.    Plaintiff's sufficiently alleges negligent supervision and training

Defendant mischaracterizes the allegations as relating to supervising the safety of students. Tulane Mot. at 33; Foster Mot. at 8-10. Clearly, the allegations relate instead to negligent supervision of other defendant-employees in their obligations to Plaintiff. Amend. Compl. ¶¶ 217-224. A supervisor can be liable when his delegee is fails in their duty and the supervisor "personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm." *Mills,* 340 So.3d at 971. Plaintiff alleges that the supervisors were aware of their delegee's failings. Amend. Compl. ¶¶ 221-22; *see also id.* ¶¶ 99, 109-110, 139.

### 5.    Plaintiff alleges defendants' specific roles and involvement

Defendants argue that "individual liability cannot be imposed upon an employee simply because of their general administrative responsibility for performance of some function of employment." Tulane Mot. at 35; Karubian Mot. at 7. But the two cases they cite are not helpful to their argument. The explained that negligence can lie where "[t]he principal or employer owes a duty of care," the "duty is *delegated* by the principal or employer to the defendant," and "[t]he defendant officer, agent, or employee has breached this duty through *personal* (as contrasted with technical or vicarious) fault." *Mills*, 340 So.3d at 971 (emphasis added).

---

[15] Defendant Foster also makes the specious argument that Plaintiff failed to allege breaches of the duty and harm. Foster Mot. at 6-7. As discussed above, Plaintiff makes numerous allegations regarding breaches. Plaintiff also alleges harm. Amend. Compl. ¶¶ 141, 145, 229, 239-40. Given the serious nature of the underlying assaults, Defendants had a special duty to take care to address Plaintiff's reports with sensitivity and caution. Should the Court require, Plaintiff can amend to clarify her allegations as to any of these elements.

In the instant matter, all of the named defendants had personal involvement. Plaintiff has clearly alleged specific knowledge on the part of each one of the defendants. She specifically cites the responsibilities delegated to each one.

Similarly, in *Mier*, the court held that "[f]or the employee to be held liable for purported personal fault or negligence . . ., that person must have some *personal contact* with and responsibility towards the injured plaintiff." *Mier v. Sompo Am. Ins. Co.*, 2023 WL 2950631, at *4 (M.D. La. Feb. 13, 2023), report and recommendation adopted, 2023 WL 2950621 (M.D. La. Mar. 9, 2023). The plaintiff in that case did "not allege that the duty to remedy the alleged defect that caused Plaintiff's injuries . . . was delegated by [the company] to" the defendant and "there [was] no specific factual allegation that [the defendant supervisor] knew of, or personally caused, the alleged defect at issue . . . ." *Id.* *5. In the instant case, Plaintiff did in fact allege personal contact on the part of each of the defendants and personal knowledge of Plaintiff's ordeal.

Because university officials had a duty – to ensure the safety of its students from violence (including sexual assault) and, by extension, address such assaults and the failure of university officials to protect against them – those to whom that duty was delegated also had a duty.[16]

## H. Plaintiff Sufficiently Alleges Intentional Infliction of Emotional Distress

### 1. Defendants' *Twombly* argument is unsupported

Defendants assert that "Plaintiff's allegations do not pass muster under *Twombly* which requires more than a formulaic recitation of the elements of the plaintiff's claim." Tulane Mot. at 31 (internal quotations omitted). They make no further argument as to this point, except to repeat that "Plaintiff has not alleged any facts in support of her negligent infliction of emotional distress

---

[16] Defendants' argument that *respondeat superior* does not apply here rests on their arguments that the claims against the individual defendants cannot lie. Tulane Mot. at 35-36. Of course, if the Court determines that Plaintiff has made out claims against the individual defendants, then the Court should also determine that the *respondeat superior* claim is sufficient.

claim. Tulane Mot. at 32. But Plaintiff's allegations clearly identify the specific conduct at issue. Amend. Compl. ¶¶ 230-236, 247. And the Amended Complaint incorporates by reference numerous other allegations regarding Defendants' conduct. *Id.* ¶¶ 227, 245.

### 2. Defendants mischaracterize Plaintiff's allegations

Next, Defendants utterly mischaracterize and minimize Plaintiff's allegations:

> In essence, Plaintiff alleges she was emotionally distressed because she *disagreed* with the outcomes of Tulane's investigations, she was "removed" from her advisory under Karubian (the November 30, 2023 remediation letter speaks for itself – she was instructed to "identify a suitable advisor") consistent with her earlier statements she *was not happy* with Defendant Karubian and asked Defendant Frank and Van Bael to be her co-advisors in August 2023, and she could not return to FCAT to conduct research.

Tulane Mot. at 31 (emphasis added); *see also* Karubian Mot. at 10-14; Foster Mot. at 7-8.

First, it is a factual dispute – not appropriate for this stage of litigation – as to whether she was removed because "she was not happy with" Karubian. *See, e.g.,* Tulane Mot. at 31. Indeed, her allegation goes well beyond simply being unhappy with Karubian; it is about Karubian targeting her for blowing the whistle on and seeking support regarding sexual assaults.

Second, Defendants once again misunderstand the allegation regarding the request for co-advisors, *see id.*, as she was not asking for those co-advisors to *replace* Karubian. She was asking that they join as *co*-advisors with Karubian.

Third, this characterization ignores the underlying issue: the investigations related to sexual assault and retaliation for seeking support and a response to the sexual assault; and her termination was an act of retaliation. The fact that the retaliatory acts related to reporting a traumatic sexual assault is what made the conduct outrageous and offensive. She was not being punished for complaining about a professor yelling at her or using curse words. She was

complaining about a trusted professor attacking her because she deigned to report a sexual assault. He then *lied* about the reasons for his actions. Amend. Compl. ¶¶ 67, 267.

This characterization also ignores Plaintiff's allegations regarding the investigations. She did not simply disagree with their outcome. She alleges that the investigations were biased throughout and essentially directed at ratifying and exonerating Karubian's actions. Again, it is the dismissiveness and disregard for the serious and traumatic experience Plaintiff alleged that constitutes extreme and outrageous conduct. Karubian sought to cover up the assault and sweep it under the rug. He then gaslighted Plaintiff about the reasons for her termination. Such conduct clearly exceeds the bounds of common decency. It targeted her *as a victim of sexual violence*, thus making it entirely predictable that she would experience emotional distress as a result of such targeting. *Contrast* Karubian Mot. at 14. He had to have known that it would affect her deeply, as it painted her as a liar and a problem rather than as a legitimate victim seeking support and understanding. The administrators responsible for intervening failed to do so even in the face of obvious misconduct on the part of Karubian and Pardee and knowing the nature of the underlying trauma.

The outrageous and extreme actions that caused her emotional distress included:

- Karubian delaying forwarding the sexual assault report and "retaliating against Plaintiff . . . for making reports of sexual assault and mishandling of her report." Amend. Compl. ¶ 247.

- Karubian terminating Plaintiff without following procedures to ensure fairness. *Id.* He did this, moreover, in order to ensure her termination. *Id.* ¶¶ 70, 75. He also did it by lying about the reasons. *Id.* ¶¶ 65-67.

- Others "allowing such retaliation for making reports of sexual assault and mishandling of her report" and "allowing biased and inadequate investigations into Plaintiff's reports of assault and retaliation." Amend. Compl. ¶ 247. Smith and Foster "failed to intervene when Pardee submitted draft reports that contained numerous critical omissions and content constituting victim-blaming, shaming, and engaging in outdated stereotypes about women and sexual conduct, knowing that Plaintiff would view that content." *Id.* ¶¶ 222, 231.

- Others allowing termination from FCAT without following proper procedures. *Id.* ¶ 247. "Defendant Woodley failed to adequately intervene in the retaliation after Plaintiff made her aware of it." Id. ¶¶ 224, 234.

- Pardee conducting a biased and inadequate investigation into sexual assault and retaliation. *Id.* ¶ 247. She engaged in victim-blaming, *id.* ¶¶ 93, 94(g), and provided an overtly slanted analysis, *id.* ¶¶ 94, 113-16.

- Defendant Small's appeal decision was rife with errors and omissions, ratifying the conduct of the others. *Id.* ¶¶ 104-106.

Accordingly, the cases that Defendants cite, *see, e.g.,* Tulane Mot. at 30-31, are not terribly relevant, as they involve admittedly minor conduct as opposed to the compounding and trauma-inducing conduct at issue in the instant case. *See, e.g., Smith v. Ouachita Parish Sch. Bd.*, 702 So.2d 727, 735 (La. App. 2d Cir. 1997), *writ denied*, 706 So.2d 978 (La. 1998) ("This record does not allow the conclusion that the Board acted with such an ulterior purpose or malicious motive. Indeed, the Board seemed to violate Ms. Smith's due process rights out of ignorance, or lack of knowledge, of the law.") ("Ms. Smith then spent most of her time sitting in her room writing notes and reading the Bible and the newspaper. . . . [S]he knew that this would be a

temporary assignment until a proper teaching position became available."); *Stewart v. Parish of Jefferson*, 668 So.2d 1292, 1295-97 (La. App. 5th Cir. 1996), *writ denied*, 671 So.2d 340 (La. 1996); (defendant "only raised his voice and did not curse," while plaintiff "was only being asked to perform his normal duties"); *Roscoe v. Hastings*, 999 So.2d 1218, 1221-22 (La. App. 2d Cir. 2009) ("The plaintiff's deposition and that of a coworker also show that the plaintiff engaged in behavior not unlike that of which she complains. The plaintiff made no showing that she was severely distressed by the conduct or that she ever complained of the conduct."); *Groff v. Southwest Beverage Co., Inc.*, 997 So.2d 782, 787 (La. App. 3d Cir. 2008) ("While inappropriate, plebeian, crass, and indicating lack of supervisory skills, this single tirade does not satisfy the high standard of an intentional infliction of emotional distress claim."). One of the cases cited involved review of a jury verdict, with the court noting that there were conflicting accounts regarding the conduct that required evaluation of credibility. *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049, 1052 (La. App. 3d Cir. 1992), *writ denied*, 598 So.2d 356 (La. 1992). A case Defendant Karubian cites, Karubian Mot. at 13, similarly involving a victim of sexual assault going through the Title IX process is easily distinguishable: "The complaint allege[d] in substance that [the investigators] were insensitive to Doe's emotions and seemed judgmental" and "failed to trace the anonymous messages, and that their explanation for the failure was that the sender used third-party services to hide source-identifying information." *Doe v. Emerson Coll.*, 153 F. Supp. 3d 506, 516 (D. Mass. 2015).

## I. Plaintiff's Sufficiently Makes Out a Breach of Contract Claim

On the one hand, Defendants concede that "[a]s a matter of law, the relationship between a student and a private educational institution may be considered contractual in nature and school publications may serve as evidence of the contract." Tulane Mot. at 36. On the other hand,

Defendants argue that the university has "wide latitude . . . to implement and enforce its internal policies as [it] see[s] fit." Tulane Mot. at 37. Notably, however, it does not deny that the student handbook's procedures apply to Plaintiff or that those procedures are part of a contract with her.

### 1. A contract exists at Tulane

The courts have found such a contract exists at Tulane specifically. *I.F. v. Administrators of the Tulane Educational Fund*, 131 So.3d 491, 498 (La. App. 4th Cir. 2013). "Tulane must adhere to the standards it provides. It imposed upon itself the duty by its own policies and procedures and it is obligated contractually to follow through completely, meaningfully, and in good faith." *Id.* at 497. *See also Guidry v. Our Lady of the Lake Nurse Anesthesia Program*, 170 So.3d 209, 213-14 (La. App. 1st Cir. 2015) ("It is generally held across the jurisdictions of the United States that the basic legal relation between a student and a private university or college is contractual in nature. . . . [I]t is generally accepted that the catalogs, bulletins, circulars, and regulations of the university made available to the student become part of the contract.").

### 2. Plaintiff had a contract as a Tulane student

Defendants assert that "[w]ith respect to the EO Policy, Plaintiff fails to allege that Tulane entered into a contract with her as a student." Tulane Mot. at 38. Similarly, Defendants argue that the Faculty Handbook does not constitute a contract with her because she is not a faculty member. Tulane Mot. at 38-39.

Defendants concede that, "[a]s a matter of law, the relationship between a student and a private educational institution may be considered contractual in nature and school publications may serve as evidence of the contract." *Id.* at 36. The Student Handbook incorporates the Equal Opportunity Policy. Student Handbook (2023-2024), Exh. 2, at 34, 42. Tulane's EO policy, in turn, explicitly applies to and protects students. EO Policy, Exh. 1, at 3. Critically, the EO

policy further provides that "[c]omplaints against faculty will be processed in accordance with Tulane's Faculty Handbook." EO Policy at 3. It is the faculty handbook that lays out the rights of *both* parties, not just the accused employee. Amend. Compl. ¶¶ 273-76. It would indeed be perverse if the university had contractual obligations to a potential victim of discrimination committed by another student but not discrimination committed by a faculty member, which can entail a power imbalance and abuse of authority.

Finally, while of course it may be the case that a respondent faculty member breaches his contract with the university by engaging in discrimination or retaliation, *see* Tulane Mot. at 38 ("[H]er allegations appear to be premised on the fact that other Tulane employees breached the EO Policy in the performance of their work in investigating her sexual assault and retaliation complaints."), this does not preclude the complainant from asserting the *university's* violation of the contract when such retaliation occurs, is permitted to occur, or is improperly investigated.

### 3. The contract covers retaliation and discrimination

Defendants argue that Plaintiff must establish retaliation and discrimination under Title VII and/or Title IX for Defendants to be liable for breach of contract. *Id.* Of course, this is not true: Plaintiff need not prove discrimination or deliberate indifference in order to demonstrate that the university ignored the procedures required under its policies. The policy's definition of retaliation is different from the one under federal law. Amend. Compl. ¶ 264.

### 4. Plaintiff's allegations detail numerous violations of the contract

Defendants assert that even if there is a contract, it is not applicable to Plaintiff's concerns. First, Defendants cite cases focused on eligibility standards or academic decisions, and the courts have, in any event, determined that entities such as the university must follow their

own established rules. Second, Plaintiff's allegations clearly implicate the contract. Finally, Defendants make the tautological argument that Plaintiff's dismissal from FCAT and Karubian's advisory is not subject to the disciplinary procedures enumerated in the contract because her dismissal was not processed through the disciplinary procedures enumerated in the contract – of course, Plaintiff alleges that it was that very failure to process her dismissal through the disciplinary process that constituted the violation of the contractual obligations to do so.

### a. Legal standard

The cases Defendants cite, Tulane Mot. at 37, are inapposite, as they focus on whether the rules adopted are fair and tend to focus on eligibility determinations, not on discipline. The courts have consistently deferred to universities and related associations (e.g., the NCAA), as well as other private associations, in their *formulation* of their procedures. *See, e.g., Jones v. NCAA*, 679 So.2d 381, 382 (La. 1996) ("The NCAA determined the plaintiff was ineligible to play college football because of the NCAA's five year rule."); *Sanders v. La. High Sch. Athletic Assoc.*, 242 So.2d 19, 27-28 (La. App. 3d Cir. 1970). ("We concede that persuasive arguments can be made to support either position as to the *interpretation* of this rule relating to eligibility." (emphasis added)) ("The record shows that an investigation was made here after a complaint was received by the commissioner as to the *eligibility* of Rodney. There is no showing that he failed or refused to investigate any other similar complaints. Also, there is nothing in the record to show that the 'transfer rule' would not have been interpreted and applied in the same manner if a complaint had been received affecting another school." (emphasis added)).

Courts have been willing to question whether universities actually *followed* their own rules, however. *See, e.g., New Orleans Craft Temple, Inc. v. Grand Lodge of Free & Accepted Masons*, 131 So.3d 957, 963-64 (La. App. 5th Cir. 2013) (finding that the plaintiffs did in fact

assert a claim for breach of contract related to their expulsion and discipline by a nonprofit association) (noting that the "plaintiffs alleged that defendants lacked the authority or jurisdiction to issue the disciplinary actions against them; that defendants failed to provide adequate notice of the charges against them; and acted arbitrarily and capriciously in failing to hold a trial as required by long-standing Masonic rules or laws" (internal footnotes omitted)); *State Bd. of Educ. v. Nat'l Collegiate Athletic Assoc.*, 273 So.2d 912, 923 (La. App. 3d Cir. 1973) ("[T]he District Judge applied the well-settled exception to that general rule: courts *will* interfere if the association's rules are not fairly and honestly administered." (emphasis in original).

The court in *Nat'l Collegiate Athletic Assoc.* articulates this distinction:

Applicant cites a series of cases in an attempt to show that actions taken by a voluntary association are subject to judicial interference only where there is fraud, oppression, or bad faith, or where the laws of society or the law of the land is illegal. In all of those cases, the plaintiffs were asking the courts to pass on the *merits* of the action taken by the various associations involved. In all of the enumerated cases, the actions had been taken by the associations involved in *complete accordance with the procedural rules of the associations;* the actions were taken only after fair notice and a fair opportunity to be heard."

273 So.2d 912, 923 (La. App. 3d Cir. 1973) (emphasis in original).

"[A] university's failure to adhere to its own binding procedures can make a resulting decision arbitrary and capricious." *Doe v. Ochsner Health Sys.,* 2022 WL 656200, at *9 (E.D. La. Mar. 4, 2022); *see also Jones v. NCAA*, 679 So.2d 381, 382 (La. 1996) ("Courts should not interfere with the internal affairs of a private association *except . . . when the action complained of is capricious, arbitrary, or unjustly discriminatory.*" (emphasis added)); *New Orleans Craft Temple, Inc.*, 131 So.3d at 963 ("*Generally*, courts should not interfere with the internal affairs of a private association." (emphasis added)); *Sanders v. La. High Sch. Athletic Assoc.*, 242 So.2d 19, 25 (La. App. 3d Cir. 1970) ("The *general* rule in Louisiana is that the courts will not interfere with the internal affairs of a private association, *except in cases when the affairs and proceedings*

*have not been conducted fairly and honestly, or . . .* when the action complained of is *capricious, arbitrary, or unjustly discriminatory."* (emphasis added)). The Louisiana Supreme Court's definition of these terms squarely matches the challenges Plaintiff makes to the actions in the instant case, as it defines "capricious" as a "conclusion made without [or contrary to] substantial evidence" and the word "arbitrary" as implying "a disregard of evidence or of the proper weight thereof." *Coliseum Square Association v. New Orleans,* 544 So.2d 351, 360 (La. 1989).

Other cases focus on a decisions about purely academic decisions, not on discipline:

> [C]ourts have declined to apply contract law rigidly in these cases, when doing so would result in overriding a purely academic determination. . . . Determinations concerning a student's qualifications rest in most cases upon the subjective professional judgment of trained educators, who are the best judges of their student's academic performance and his or her ability to master the required curriculum. As such, school authorities have absolute discretion in determining whether a student has been *delinquent in his studies*."

*Guidry*, 170 So.3d at 214 (internal citations omitted) (emphasis added) (involving grades)[17].

### b. Plaintiff alleges numerous significant deviations from the contract regarding her complaints of discrimination and retaliation

Plaintiff's allegations clearly allege numerous significant deviations from the specific procedural requirements in the contract directed at addressing discrimination and retaliation:

- Reporting requirements for discrimination and retaliation. Amend. Compl. ¶¶ 252-258.

- Retaliation prohibition. *Id.* ¶¶ 259-267.

- Investigation procedures regarding Plaintiff's allegations of retaliation and discrimination. *Id.* ¶¶ 268-272, 276-277.

---

[17] Even in *Guidry*, the court had a chance to review the actual record and determined that the university gave "serious consideration" to the plaintiff's concerns following a hearing. *Guidry*, 170 So.3d at 216-17. In *Flint*, too, the court reviewed the record and found "no indication that these specific accusals were unjustly or erroneously made." *Flint v. St. Augustine High School*, 323 So.2d 229, 235 (La. App. 4th Cir. 1975). Of course, Plaintiff alleges numerous indications of unjust and erroneous action against her.

- Hearing procedures for the retaliation complaint. Amend. Compl. ¶¶ 273-77.

These allegations go well beyond academic decisions or eligibility requirements.

Additionally, Defendants argue that there is no contractual obligation to conduct an investigation within a particular timeline or of a particular duration. Tulane Mot. at 38. The Amended Complaint explicitly cites the provision of the EO policy that repeatedly makes clear that the duration of an investigation must be reasonable. Amend. Compl. ¶ 268 (citing EO Policy at 12). Yes, there is "discretion," *see* Tulane Mot. at 38, but an extension must be as "reasonably necessary," Amend. Compl. ¶.

### c. Plaintiff alleges denials of contractual protections against arbitrary discipline

Defendants' argument that any contract about student discipline was not breached because Plaintiff's discipline occurred outside the ordinary discipline process is, in its circularity, in a word, Kafkaesque. Her allegation is not that the university did not impose discipline; rather, it is precisely that the university "short-circuited and skipped over the required process and instead unilaterally imposed severe discipline on Plaintiff." *Id.* ¶ 292  The university cannot avoid liability on the premise that it denied *all*, rather than only *some*, process.

Defendants flip her allegation on its head. Defendants argue: Plaintiff admitted "that she *was not subject to discipline* under the Student Code of Conduct, does not state a breach of contract claim." Tulane Mot. at 39 (citing Amend. Compl. ¶¶ 278-304) (emphasis added); *see id.* ("Plaintiff admits that no formal complaint was filed against her."). Her actual allegation: "Plaintiff *was* subjected to discipline . . . *without being afforded the process* provided for under the policy." Amend. Compl. ¶ 279 (emphasis added). Simply because the action against her was not *called* "discipline" does not mean it was not, in *fact*, discipline. *See* Tulane Mot. at 39 (asserting that Karubian's actions "were not 'disciplinary'"). It is precisely the problem that "no

formal complaint was filed against her." Tulane Mot. at 39. It was this denial of process that violated the contract. This initial denial cut off the spigot that would have given rise to a veritable torrent of protections and procedures meant to prevent arbitrary and unfair decisions based on whim, bias, personal feelings, or other inappropriate predicates. Amend. Compl. ¶¶ 278-294.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motions to dismiss. Alternatively, should the Court be inclined to grant any portions of Defendants' motion, Plaintiff respectfully requests the Court's leave to amend the Complaint to cure any pleading deficiencies.

Dated this 10th day of June, 2025.

**LAW OFFICE OF AARON ZISSER**

_/s/ Aaron Zisser_
Aaron B. Zisser
Attorney for Plaintiff Judith Santano