UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUDITH SANTANO,** | CIVIL ACTION NO: 24-2748 |
| **Plaintiff,** | SECTION: T (2) |
| vs. | JUDGE GREG G. GUIDRY |
| **ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, JORDAN KARUBIAN, ERICA WOODLEY, JONATHAN SMALL, MARCUS FOSTER, TIFFANY SMITH, AVERY PARDEE, and DOES 1-20** | MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |
| **Defendants.** | |

### DR. JORDAN KARUBIAN'S REPLY
### IN SUPPORT OF MOTION TO DISMISS

Though Plaintiff filed a 48-page opposition brief ("Opposition") addressing claims against all defendants, Plaintiff asserts only three claims against Dr. Karubian: 1) negligence; 2) negligent infliction of emotional distress (NIED); and 3) intentional infliction of emotional distress (IIED) and those claims are addressed at pages 25-33 of the Opposition. Indeed, even in those sections, Plaintiff makes her arguments against all defendants and does not adumbrate which arguments supposedly shore up her claims against Tulane and other defendants and which support her claims against Dr. Karubian. Plaintiff divides these arguments in two sections without designating to whom they apply, one claiming "Plaintiff's Negligence Claims Should Not be Dismissed," and one claiming "Plaintiff Sufficiently Alleges Intentional Infliction of Emotional Distress." Glaringly, Plaintiff does not devote any of her argument to why these claims should be maintained against Dr. Karubian.

Instead, Plaintiff vaguely argues: 1) her negligence claims (presumably against all defendants) are timely under Louisiana's continuing tort doctrine; 2) her allegations are about

retaliation and negligent responses to retaliation, not academic decisions – theoretically aiding in her claim of negligence; 3) "Defendants breached a duty to address and prevent physical harm" – without explaining what duty Dr. Karubian personally owed and breached; and 4) Plaintiff supposedly being "targeted for blowing the whistle on and seeking support regarding sexual assaults" constitutes intentional infliction of emotional distress.[1] Though it is impossible to discern what portions of these arguments support claims against Dr. Karubian individually, he will address each of these vague and conclusory arguments:

**1) The Continuing Tort Doctrine Cannot Save Plaintiff's Claims Against Dr. Karubian.**

Plaintiff spends about half a page addressing the alleged timeliness of her negligence claims. First, she makes clear the actions before February 2023 are "provid[ed only for] background and context" and are not part of her claim. Since Plaintiff concedes that point, those alleged acts will not be discussed. Barring the prescribed claims, Plaintiff only addresses two supposedly negligent acts by Dr. Karubian: "his failure to properly respond to her initial report [of inappropriate behavior]" and a vague allegation about acts "continuing through August 2023 during the meeting with Karubian and other professors." This, she argues, is enough to make these allegations fall withing the continuing tort doctrine (Opposition, pp. 33-34).

Louisiana's "continuing tort doctrine" extends the prescriptive period for delictual actions ***only when both the conduct and the damage are <u>continuous</u>***. *See Scott v. Zaheri*, 157 So.3d 779, 786, 787 (La.App. 4 Cir. 2014) ("Continuing-tort doctrine . . . requires not only that the tortious conduct be of a continuing nature, but also that it give rise to successive damages from day to day."); *Hogg v. Chevron USA, Inc.*, 45 So.3d 991, 1003-6 (La. 2010) (historically contextualizing

---

[1] Plaintiff also argues she "sufficiently alleges negligent supervision and training" (Opposition, p. 36), however, Plaintiff's negligent supervision and training claim is against defendants Tulane, Board of Tulane, Small, Smith, Foster, and Woodley (*see* R. Doc 16-1, p. 40, Seventh Claim for Relief). Accordingly, no response to this claim is warranted from Dr. Karubian.

2

continuous tort doctrine in Louisiana and summarizing prototypical continuing tort cases) (In cases "[w]here the wrongful conduct was completed, but the plaintiff continued to experience injury in the absence of any further activity by the tortfeasor, no continuing tort was found."). If the cause is discontinuous and terminates, even though the damage persists and may worsen, it is not a continuing tort. *Id.* at 1003-4; *Alexander v. La. State Bd. of Priv. Investigator Examiners*, 2015-0537 (La. App. 4 Cir. 2/17/17), 211 So. 3d 544, *writ denied*, 2017-0571 (La. 5/26/17), 221 So. 3d 855, and *writ denied*, 2017-0607 (La. 5/26/17), 221 So. 3d 857 ("The inquiry is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts.").

Aside from the two acts discussed in the Opposition, Plaintiff's Amended Complaint alleges three temporally disconnected tortious acts or omissions by Dr. Karubian: 1) delaying approximately two months to "forward" Plaintiff's disclosure of alleged sexual misconduct at FCAT to Tulane (February 2022); 2) speaking with Beto Gonzalez and "other members of the community" about Plaintiff's disclosure of sexual assault (around June 2023); and 3) issuing a remediation plan on November 30, 2023 (nine months after the first alleged act).

First, any acts culminating before November 25, 2023, are prescribed.[2] Even if any tortious acts occurred after November 25, 2023, they do not constitute the culmination of a continuous tort or continuous cause of injury. Delay in reporting and speaking with individuals about the allegation of sexual assault (both outside of the prescriptive period) do not match up with and provide continuation of a pattern of events with the November remedial plan supposedly resulting in discontinuation of the advisor-advisee relationship. Indeed, the remedial plan is the only timely

---

[2] Plaintiff filed suit on November 25, 2024. *See* R. Doc. 1. Though Louisiana Act No. 423 extended the 1-year prescriptive period under La. Civ. Code 3492 for most delictual actions to two years, commencing July 1, 2024, this change is prospective only and applies to causes of actions arising after July 1, 2024. Accordingly, Plaintiff's torts predating November 25, 2023, remain subject to a 1-year prescriptive period.

3

event alleged against Dr. Karubian and it is decidedly distinct from the others in both "pattern of activity" and resulting injury.

Apt examples of continuing torts include continuous trespass (*see Lopez v. House of Faith Non-Denomination Ministries*, 29 So.3d 680 (La.App. 4 Cir. 2010)) (defendant's building remained in physical contact with the plaintiffs' house every day for an entire year); environmental contamination (*Risin v. D.N.C. Investments*, L.L.C., 921 So.2d 133 (La.App. 4 Cir. 2005)) (plaintiff-tenant and minor child were exposed to lead every day they remained in plaintiff's apartment); and occupational exposure (*Coulon v. Witco Corp.*, 848 So.2d 135 (La.App. 5 Cir. 2003)) (plaintiff was exposed to numerous carcinogens and neurotoxins approximately six times per work shift). These cases all deal with activity of the same sort, repeating over time, and resulting in the same and continuous injury.

Conversely, in *Hunter v. Tensas Nursing Home*, 743 So.2d 839 (La.App. 2 Cir., 1999), the continuing tort doctrine *did not* apply where a caregiver's repeated neglect resulted in numerous but varied injuries – including a broken leg, partial amputation of a finger, ulcers, drug overdose, physical abuse, hypertension, and other ailments, requiring hospitalization on six separate occasions. The court found, though the events were of a similar nature in that they all arose from neglectful care, they were not <u>continuous</u> acts of abuse. *See also Crump v. Sabine River Authority*, 737 So.2d 720, 726 (La. 1999) ("When the *operating cause of the injury* is 'not a continuous one of daily occurrence', there is a multiplicity of causes of action and of corresponding prescriptive periods.").

Unlike any of the property or nuisance cases in which continuing tort doctrine has been applied, Plaintiff's vague negligence claim against Dr. Karubian involves two alleged events co-joined in pleading with a single timely (committee) decision to place Plaintiff on a remedial plan nine months later, in an attempt to make all of her allegations timely. She should not be afforded

4

this opportunity. The continuous tort doctrine is inapplicable; all alleged acts or omissions occurring prior to November 25, 2023 – 1 year prior to the date of Plaintiff's suit – are prescribed and must be dismissed.

### 2) Plaintiff's Allegations Are About Academic Decisions; She Makes No Independent Negligence Claims Against Dr. Karubian.

Plaintiff argues her negligence claim relates to retaliation and Tulane's response to her sexual assault reporting,[3] not academic matters (Opposition, p. 34); Defendants breached a duty to address and prevent physical harm; and Defendants ("all of the named defendants had personal involvement," Opposition, p. 37) can be held individually liable because the alleged duty breached was delegated to individual defendants by Tulane. Plaintiff gets no more specific than that and does not even bother to argue specifically about Dr. Karubian's alleged duties and breaches.

Importantly, Plaintiff does not address how the five elements necessary to establish a negligence claim under Louisiana law are met as to Dr. Karubian: duty, breach, cause in fact, legal cause, and damages. *See Jack v. Evonik Corp.*, 79 F.4th 547, 556 (5th Cir. 2023). "As for duty, the plaintiff must establish that the defendant had 'a legal duty [to the plaintiff] to protect against the particular risk involved.'" *Id.* at 556. Under a delegation of duty theory, the plaintiff must show that the principal duty-holder specifically delegated the duty to protect against the particular risk involved. *Id.* (rejecting plaintiff's argument that corporation delegated duty to site managers to ensure petrochemical facility operations did not endanger neighboring community through unsafe operations, finding plaintiff's argument such duty was delegated to the site

---

[3] As with her other arguments, Plaintiff blurs her claims against the Administrators of the Tulane Educational Fund with her claims against Dr. Karubian. Dr. Karubian never employed nor contracted with Plaintiff; he served as her academic advisor. Indeed, Plaintiff's Amended Complaint emphasizes she was employed and compensated by Tulane during portions of her time at FCAT and as a research and teaching assistant at Tulane. R. Doc 16-1, Par. 151. Accordingly, Plaintiff's allegations of adverse action/retaliation and the university's allegedly deficient response to reporting do not relate to Dr. Karubian as an individual and warrant no response.

managers was based on mere assumption). As to "legal cause," the plaintiff must show the risk of harm caused was within the scope of protection afforded by the duty breached. *Phillips v. Correct Care Sols., Inc*, No. CV 16-16551, 2017 WL 367663 at *3 (E.D. La. Jan. 25, 2017).

Plaintiff's contention that her negligence claim is based on non-academic decisions because the November 30 remediation letter was pretextual does not make Dr. Karubian's actions non-academic,[4] negligent, or delegated to him by the principal duty-holder (presumably Tulane).[5] In fact, Plaintiff fails to make any of these arguments as to Dr. Karubian. Rather, Plaintiff repeatedly makes conclusory allegations against all defendants without clarification as to which arguments apply to which defendant and how the negligence elements are satisfied as to each. Plaintiff claims "she specifically cites the responsibilities delegated to each [defendant]" (Opposition, p. 37), despite failing to allege individual liability via delegation of duty in her Amended Complaint (*see* R. Doc. 16-1), and without referencing where she supposedly cites responsibilities so delegated (aside from conclusory statements on page 37 of her Opposition

---

[4] Plaintiff alleges she lost the opportunity to study under Dr. Karubian and perform research at FCAT. *See, e.g.*, R. Doc. 16-1, Pars. 88, 144; Opposition, pp. 11, 26 n. 9, 26-27. Dr. Karubian's motive relative to Plaintiff's studies and research does not take the decisions out of academia just as the defendants' motive in *Mills v. Tarver* did not dictate whether grading tests or failing to investigate students' abuse of rights grievances were academic decisions precluding imposition of personal liability for <u>negligence</u> claims asserted against nursing college personnel. Which PhD candidates perform research at FCAT in furtherance of their doctoral pursuit and which professors will advise a candidate regarding their PhD progress are plainly academic matters and have no bearing on whether Plaintiff's claims against Dr. Karubian in his individual capacity are cognizable under Louisiana law for the reasons discussed in depth in Dr. Karubian's Motion to Dismiss. *See* R. Doc 26, pp. 6-7.

[5] As to Dr. Karubian's alleged delay in reporting pursuant to Tulane's IX reporting policy, any such delay does not change that his reporting, timely or not, was inextricably tied to the nature and quality of Plaintiff's Tulane education. Title IX was enacted as part of the Education Amendments of 1972 and exclusively applies to discrimination ***in education.*** Any duty Dr. Karubian owed to Plaintiff relative to Title IX reporting arose from his role as Plaintiff's academic advisor and Tulane employee – not from a personal duty or obligation. Individual negligence liability for a professor arising from an alleged Title IX reporting issue contradicts Title IX itself and its legislative intent. Title IX liability is limited to the funding recipient, not individual employees. *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638, 643-6, 651 (1999). Plaintiff cannot shoehorn her Title IX claim against Administrators of the Tulane Educational Fund through the back door of a negligence claim against Dr. Karubian. *See* R. Doc 26, pp. 6-7.

without reference to the record).[6] The Opposition fails to rebut Dr. Karubian's Motion to Dismiss Plaintiff's negligence claim against him; therefore, the claim should be dismissed.

Plaintiff also alleges "Defendants" breached a duty to address and prevent physical harm." Opposition, p. 35. Specifically, Plaintiff avers "dereliction of the duty to address foreseeable *further* violence by a third party, that is, the individual who assaulted Plaintiff." Opposition, p. 35. It is unnecessary to address this claim in depth because Plaintiff's Amended Complaint does not allege Dr. Karubian failed to prevent further physical harm at FCAT, or that Plaintiff suffered such harm**.** Instead, Plaintiff alleges Defendants (without naming the specific defendant) "simply endorsed her involuntary removal from [FCAT]." This is not an allegation that Plaintiff suffered further physical harm as a result from "Defendants'" failure to address further physical harm. Accordingly, Plaintiff cannot state a claim against Dr. Karubian; she fails to demonstrate the harm she allegedly suffered was caused by Dr. Karubian and falls within the ambit of his individual duties.[7]

### 3) The Opposition Does Not Address Dr. Karubian's Arguments in Support of Dismissal of Plaintiff's NIED Claim.

The Opposition fails to address Dr. Karubian's arguments supporting dismissal of Plaintiff's NIED claim. Accordingly, Plaintiff's allegations against Dr. Karubian simply do not meet the high burden necessary to establish outrageous conduct in the NIED context.

---

[6] A professor cannot be held liable in his individual capacity absent specific proof of delegation of the duty allegedly breached. See *Jack v. Evonik Corp.*, 79 F.4th 547 (5th Cir. 2023) (requiring proof of specific delegation of duty to protect surrounding residents of petrochemical facility from unsafe emissions to hold facility site managers individually liable for breach of such duty).
[7] See *Reel Pipe, LLC v. USA Comserv, Inc.*, 427 F. Supp. 3d 786 (E.D. La. 2019) ("Absent an ease of association between the duty breached and the damages sustained, there is no legal fault.").

### 4) Plaintiff Fails to Establish Extreme and Outrageous Conduct Necessary to Support Her IIED Claim.

In support of her IIED claim, Plaintiff alleges the following acts or omissions by Dr. Karubian:

> The outrageous and extreme actions that caused [Plaintiff] emotional distress included:
>
> • Karubian delaying forwarding the sexual assault report and "retaliating against Plaintiff for making reports of sexual assault and mishandling of her report." Amend. Compl. ¶ 247.
>
> • Karubian terminating Plaintiff without following procedures to ensure fairness. *Id.* He did this, moreover, in order to ensure her termination. *Id.* ¶¶ 70, 75. He also did it by lying about the reasons. *Id.* ¶¶ 65-67.

Opposition, p. 39. Plaintiff does not clarify whether these two allegations are directed at Dr. Karubian in his individual capacity, or whether they are a component of Plaintiff's IIED claim against Tulane. If the former, Plaintiff's allegations simply do not rise to the level of extreme and outrageous conduct necessary for this tort for the reasons discussed at length in Dr. Karubian's Motion to Dismiss. See R. Doc. 26, pp. 10-14. Plaintiff's only attempt to rebut Dr. Karubian's specific arguments supporting dismissal of her IIED claim is a lone statement attempting to distinguish *Doe v. Emerson Coll.,* 153 F. Supp. 3d 506 (D. Mass. 2015*),* with no supportive reasoning as to why it is distinguishable aside from the conclusory statement: "[it is] easily distinguishable." For context, in *Emerson*, a female student brought action against private university, university's president, dean, director of housing and residence life, residence director, and two Title IX investigators, individually and in their official capacities, alleging that the defendants failed to promptly and appropriately investigate alleged off-campus sexual assaults, subjecting student to a hostile environment and effectively denying her access to educational opportunities in violation of Title IX, and alleging negligence and negligent infliction of emotional

distress against all defendants, and intentional infliction of emotional distress against university and four employees.

Plaintiff's attempt to distinguish *Doe v. Emerson* is unavailing. The *Doe* court said relative to the IIED claim: "[e]ven the 'fact that the defendants' conduct may turn out to be violative of the plaintiff['s] civil rights does not, in and of itself, necessitate a finding that the conduct is sufficiently egregious to state a claim for intentional infliction of emotional distress.'" Dr. Karubian's Motion to Dismiss clearly sets forth why Plaintiff's allegations against Dr. Karubian do not rise to the level of extreme and outrageous conduct under Louisiana law (*See* R. Doc. 26, pp. 10-14) and Plaintiff's Opposition fails to meaningfully or credibly challenge Dr. Karubian's arguments. Accordingly, Plaintiff's IIED claim must be dismissed.

## Conclusion

Plaintiff's Opposition changes nothing with respect to the claims against Dr. Karubian. His Motion to Dismiss should be granted and Plaintiff's claims against him dismissed, with prejudice, at Plaintiff's cost.

**Respectfully Submitted,**

**FRILOT L.L.C.**

*/s/ Leslie W. Ehret*
Leslie W. Ehret (La. Bar No. 18494)
Christopher J. Nunziato (La. Bar No. 40471)
lehret@frilot.com
cnunziato@frilot.com
1100 Poydras Street, Suite 3800
New Orleans, LA 70163-3600
Telephone: 504-599-8000
Facsimile: 504-599-8100

***Counsel for Dr. Jordan Karubian***

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on this day, I electronically filed the above and foregoing with the Clerk of the Court using the MEC electronic filing system which provided notice of such filing to all counsel of record.

SO CERTIFIED this 16th day of June 2025.

_/s/ Leslie W. Ehret_
Leslie W. Ehret