# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**JUDITH SANTANO**

**VERSUS**

**TULANE UNIVERSITY ET AL.**

**CIVIL ACTION NO.  2:24-CV-2748**

**JUDGE GREG G. GUIDRY**

**MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT**

### TULANE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES

Defendant, the Administrators of the Tulane Educational Fund ("Tulane") submits this Memorandum in Support of its Motion to Compel Plaintiff, Judith Santano ("Santano" or "Plaintiff"), to fully respond to Defendant's discovery requests by producing the executed authorizations for her Social Security, tax, personnel, educational and medical records, sought in Defendant's Requests for Production of Documents, as follows:[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This Title VII, Title IX, and state law tort lawsuit was brought by Judith Santano, a current PhD student at Tulane University, against Tulane and various individual defendants. Among other things, Santano alleges that Tulane failed to promptly and equitably investigate her complaints of sexual assault which she lodged in February of 2023 against a staff member of a non-party research facility where she was conducting research during the summer of 2022. All Defendants filed motions to dismiss Santano's Complaint (and amended complaints) pursuant to Federal Rule of Civil Procedure 12(b)(6), which are still pending before the Court. *See* R. Doc. 26 (Motion to Dismiss filed by Defendant Jordan Karubian); R. Doc. 28 (Motion to Dismiss filed by Defendants

---

[1] Tulane does not waive and expressly reserves all other motions, arguments, objections, and defenses to this action, including the pending Motions to Dismiss (R. Doc. 28, 64).

Tulane, Avery Pardee, Jonathan Small, Tiffany Smith, and Erica Woodley); R. Doc. 32 (Motion to Dismiss filed by Defendant Marcus Foster); R. Doc. 64 (Motion to Dismiss Second Amended Complained by Defendant Tulane); R. Doc. 65 (Motion to Dismiss filed by Defendant Robin Forman).

In the operative Second Amended Complaint, Santano asserts various claims and seeks damages including: "compensatory, general, and special damages" "general damages, including damages for emotional pain, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness and trauma and suffering," and "exemplary and punitive damages against each individual and Doe defendant." R. Doc. 57, p. 59-60 (Plaintiff's Prayer for Relief). Santano specifically alleges that "[a]s a direct and proximate result of" the acts and omissions contained in her Second Amended Complaint and the "customs, practices, policies, and decisions of the defendants" she "suffered and will continue to suffer great emotional, mental and physician pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause Plaintiff to sustain general damages in a sum to be determined at trial." R. Doc. 57, ¶ 149. Santano also claims that she "sustained damages including, without limitation, loss of educational and career opportunities." R. Doc. 57, ¶¶ 166, 182, 188, 201, 220, 224, 229, 254, 263. Santano specifically alleges that her graduate degree has been delayed due to Defendants' conduct, and that she "was heavily recruited by Defendant [Jordan] Karubian and was provided substantial funding" with the expectation to do substantial work for FCAT and Defendant Karubian's lab prior to her alleged termination from his lab. *See* R. Doc. 57 at ¶¶ 40-42.

On October 23, 2025, while reserving all rights as to Defendants' pending motions to dismiss, Tulane propounded discovery requests on Santano. Tulane's Requests for Production of

5

Documents included requests that Santano sign and return authorizations, including: (1) Request for Social Security Earnings Information (SSA-7050); (2) Social Security Administrative Consent for Release of Information (SSA-3288); (3) Request for Copy of Tax Return; (4) Personnel Records Release Authorization; (5) Family Educational Rights and Privacy Act ("FERPA") authorization; (6) Authorization for Release of Criminal and/or Arrest Records; (7) HIPAA Authorization for Use of Disclosure of Information (Excluding Psychotherapy Notes); and (8) HIPAA Authorization for Use and Disclosure of Psychotherapy Notes. *See* Defendant's Requests for Production of Documents, attached hereto as Exhibit A, Nos. 15-20. Authorization forms were attached to Defendant's discovery requests for Santano to sign and return to Defendant along with her responses to Defendant's Requests for Production of Documents. Exhibit A.

Santano issued written responses to Tulane's Requests for Production of Documents on November 25, 2025. *See* Plaintiff's Responses to Defendant's Requests for Production of Documents, attached hereto as Exhibit B. Instead of producing authorizations, Santano lodged identical objections to each relevant Request stating: "Plaintiff objects to this request because Rule 34 contains no provision requiring a party to sign a release or authorization so that the requesting party may obtain a document directly from a non-party." *See Id.*, Plaintiff's Responses to Request for Production Nos. 15-20. Notably, in her response to Interrogatory No. 1, Santano listed certain healthcare providers as individuals who Plaintiff believes have discoverable facts or knowledge that support or refute her claim for damages. *See* Plaintiff's Responses to Defendant's Interrogatories, attached hereto as Exhibit C. However, she produced no records from these healthcare providers and refused to provide signed authorizations to obtain such records from the disclosed providers. Santano also admitted that she applied to graduate programs other than Tulane, including those at UCLA, UC Davis, and Cornell, but has not produced any documents

related to her educational record or applications to those universities. *See Id.*, Plaintiff's Response to Interrogatory No. 10. Plaintiff also produced no tax or Social Security documents including any tax returns, W-2s or other similar documentation regarding alleged wages/compensation she received or mitigation efforts.

Counsel for Santano and Tulane attended a discovery conference on February 5, 2026. During the conference, counsel discussed Santano's discovery deficiencies, including her failure to produce signed authorizations. Following the conference, Tulane sent Plaintiff's counsel a letter memorializing the parties' discussions during the conference. *See* Discovery Letter, attached hereto as Exhibit D. During the conference and in the subsequent letter, undersigned counsel explained that records that can be obtained through the authorizations requested are highly relevant to Plaintiff's claims and damages and to Tulane's defenses to those claims and damages. *Id.* Specifically regarding the HIPAA authorizations, undersigned counsel explained that it is imperative that Santano provides signed authorizations given that Santano asserts emotional distress damages and also identified medical providers who allegedly treated Plaintiff during the relevant timeframe in her discovery responses. Undersigned counsel further raised that any concerns regarding confidentiality are adequately addressed by the Protective Order agreed upon by the Parties in the case. *See* R. Doc. 55. During the call, counsel for Santano stated that he would provide Tulane with Plaintiff's updated position with respect to the authorizations requested by February 13, 2026. *Id.*

On February 11, 2026, Plaintiff's counsel emailed counsel for Tulane stating that he didn't know whether Plaintiff would "have everything figured out by Friday" and asking whether there was any "additional flexibility" on Plaintiff's timeline to indicate her updated position on her discovery objections. *See* Email Correspondence, attached hereto as Exhibit E. Counsel for Tulane

7

replied and indicated that she needed a final answer regarding Plaintiff's updated objections to Defendant's discovery requests by Wednesday February 18, 2026. *Id.* On February 16, 2026, Plaintiff's counsel asked for an additional extension of thirty days to provide Defendant with a response regarding Plaintiff's discovery deficiencies. *Id.* Counsel for Tulane responded, stating that she could not agree to another 30-day extension considering discovery deadlines and depositions that had already been noticed by Plaintiff. She granted Plaintiff an extension until 5:00 p.m. on Friday February 20, 2026, to provide Tulane with Plaintiff's current position regarding her original discovery objections, "especially as to various authorizations." *Id.*

On February 19, 2026, Plaintiff's counsel again contacted undersigned counsel via email for clarification regarding why Tulane is seeking tax-related authorizations and FERPA authorizations. *Id.* Plaintiff's counsel also reaffirmed Plaintiff's objections to producing HIPAA waivers. *Id.* Undersigned counsel responded, explaining that Tulane seeks FERPA records because Plaintiff claims damages related to her education, including denial of access to educational opportunities and benefits. *Id.* Undersigned counsel elaborated, explaining that Plaintiff's FERPA records are relevant because, among other things, Plaintiff alleges that Dr. Karubian's advisory was central to her decision to attend Tulane, and her educational background is therefore relevant to Tulane's defenses including whether Plaintiff had comparable offers and prospective advisors at other institutions, whether Plaintiff was offered scholarships or stipends to attend any other programs, and whether Plaintiff would have been paid any type of alleged wages to attend those programs. *Id.* Undersigned counsel also explained Tulane's position that Plaintiff's undergraduate records are discoverable because they will support Tulane's defenses regarding whether there are alternative explanations for Plaintiff's alleged delay in completing her graduate degree and whether she was paid any alleged wages for performing research during her undergraduate studies.

As for the tax record authorizations, undersigned counsel explained that tax records are relevant to Plaintiff's alleged damages because she brings employment claims against Tulane. An essential question in this case is whether Plaintiff was treated as an employee, and her tax records will show how her stipends were reported to the IRS. Moreover, the tax records will shed light on Plaintiff's mitigation efforts, including whether Plaintiff received compensation from sources other than Tulane and whether she has obtained subsequent alleged employment after she was "terminated" from Dr. Karubian's advisory. *Id.*

Plaintiff's counsel responded to Defendant's explanations by maintaining Plaintiff's objections, stating that Plaintiff "will not be providing those signed waivers/releases." *Id.* Tulane has therefore been forced to file the instant Motion to Compel to seek relief from the Court regarding the requested authorizations.

## II. LAW AND ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Discovery should be allowed unless the party opposing discovery establishes that the information sought can have no possible bearing on the claim or defense of the party seeking discovery. If relevance is in doubt, a court should allow discovery." *Rogers v. Orleans Parish Sheriff Office*, 2025 WL 3760764, *2 (E.D. La. Dec. 30, 2025).

"Within the Fifth Circuit, courts have recognized that Rule 34, along with Rule 37, empower federal courts to compel parties to sign written authorizations consenting to the production of documents." *Muslow v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, 2021 WL 4243321, *8 (E.D. La. 2021). In fact, this Court

9

has described its authority to compel an individual to sign authorizations allowing release of discoverable records as "unquestioned." *See Giarratano v. Huntington Ingalls Incorporated*, 2022 WL 16552816 (E.D. La. 2022). Ultimately, "a district court has broad discretion in all discovery matters." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013).

Tulane sought the following signed authorization in its Requests for Production: (1) an authorization for Plaintiff's personnel records; (2) an authorization for release of criminal and/or arrest records; (3) an authorization for release of Plaintiff's administrative records; (4) HIPAA authorizations for Plaintiff's healthcare providers; (5) FERPA authorizations for the release of Plaintiff's educational records; (6) requests for copies of Plaintiff's tax returns; and (7) consents for release of information from the Social Security Administration.[2] Plaintiff has refused to sign these authorizations. The authorizations that Defendant is moving to compel can be categorized as follows: (1) medical records; (2) education/personnel records; and (3) records related to Plaintiff's earnings during her undergraduate education as well as during her Ph.D. program. All of these requests seek discoverable information that is relevant to either Santano's claims or Tulane's defenses and proportional to the case, and Santano should be compelled to sign the authorizations as requested.

### A. Medical Records

"Courts have routinely held that, by putting one's medical condition at issue, a plaintiff waives any privilege to her medical records which she may otherwise have been entitled based on her privacy interest." *Rogers*, 2025 WL 3760764 at *2. "[W]hen a plaintiff seeks emotional distress damages, her mental conditions and related physical conditions are put at issue, making

---

[2]Defendant also originally sought an authorization for criminal/arrest records. However, Plaintiff stated in her discovery responses that she has never been arrested. Defendant therefore is not moving to compel an authorization for Plaintiff's criminal/arrest records.

10

medical records relating to thereof relevant and broad discovery appropriate." *Id.* "[C]ompensatory damages in employment discrimination cases under…Title VII…include damages for mental anguish or emotional distress which requires evidence at trial." *Muslow*, 2021 WL 4243321 at *8. Therefore, courts in the Fifth Circuit and this Court have widely compelled plaintiffs claiming emotional distress damages, especially in the context of employment lawsuits, to sign authorizations that allow defendants to discover their medical records. For example, in *Cheek v. Barnes & Noble Booksellers, Inc.*, this Court determined that the plaintiff put his medical condition(s) at issue by pursuing a claim for emotional distress, even where the plaintiff testified that he had not seen any health care providers for his alleged emotional distress, and confirmed that he would rely only on his own testimony and that of lay witnesses to prove his emotional distress claims. No. 06-10739, 2008 WL 717710, *1 (E.D. La. Mar. 17, 2008). The Court held that the fact that the plaintiff had not "sought medical treatment for the alleged emotional distress does not negate the relevance of records and information pertaining to his medical condition," and compelled plaintiff to sign a release of records with respect to his healthcare providers for the fifteen years prior to his lawsuit. *Id.*

Like the plaintiff in *Cheek*, Santano has objected to signing authorizations for her medical records even though she brings claims for emotional distress and disclosed healthcare providers in her Interrogatory responses who treated her during the relevant time period of this lawsuit. *See* Exhibit C, Plaintiff's response to Interrogatory No. 1. Plaintiff's position is that "run-of-the-mill emotional distress is provable without [medical] records." *See* Exhibit E, Plaintiff's counsel's February 20, 2026 email. Plaintiff also claims that she listed her mental health professionals in response to Defendant's Interrogatory No. 1 "out of an abundance of caution" and states that she "will not call such witnesses or rely on any statements from them" at trial. *Id.*

11

Santano's objections to signing authorizations that would allow the release of her medical records are misplaced, as Fifth Circuit precedent is clear that medical records are discoverable in cases where plaintiffs claim emotional distress damages. *See*, *e.g.*, *Rogers*, 2025 WL 3760764 at *2; *Muslow*, 2021 WL 4243321 at *8. Moreover, *Cheek* shows that medical records are discoverable in cases where a plaintiff claims emotional distress damages, even where the plaintiff claims that they did not receive medical treatment for their mental health. Santano's medical records are extremely relevant to the underlying facts of this case and her damages, especially in light of the fact that she claims that she "suffered and will continue to suffer great emotional, mental and physician pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause Plaintiff to sustain general damages in a sum to be determined at trial." R. Doc. 57, p. 24. Santano disclosed her medical providers' names in her responses to Defendant's Interrogatories and specifically stated that they have knowledge relevant to Santano's alleged damages. *See* Exhibit C. It would be extremely prejudicial to Tulane (and the numerous other Defendants), and contrary to established Fifth Circuit precedent, if Tulane was not able to discover information related to Santano's alleged impacts on her health. Santano therefore should be compelled to execute medical records for each of her healthcare providers that treated her.

### B. Education and Employment Records

Santano has also refused to sign authorizations for educational and personnel records, despite the fact that she claims damages related to her alleged employment with Tulane and education at Tulane such as "loss of significant research and employment opportunities, with tangible academic and economic consequences," and "loss of educational and career opportunities" R. Doc. 57, ¶¶ 8, 166, 182, 188, 201, 220, 224, 229, 240, 254, 263.

This Court has held that "signed employment record authorizations may be compelled where the requesting party has established the relevance of such records to a claim or defense in the case, and the scope of the records sought is proportional to the needs of the case." *Rogers*, 2025 WL 3760764 at *2. Courts in the Fifth Circuit have compelled plaintiffs to sign authorizations for the release of their personnel records in Title VII lawsuits and where plaintiffs have put their earnings at issue and claim damages related to their employment. *See*, e.g., *Cheek*, 2008 WL 717710 at *1-2  (compelling a plaintiff to produced signed authorizations for the release of employment records, unemployment records, and social security records where he "put his earnings at issue."); *Adams v. Superior Energy Services*, No. 6:20-cv-00237, 2022 WL 764070, *4 (W.D. La. 2022) (compelling a plaintiff in a Title VII discrimination suit to produce signed authorizations for his unemployment records, employment records, tax forms, Social Security earning records, and medical records because the "requested authorizations [were] relevant to issues presented in th[e] lawsuit and proportional to the needs of the case.").

Similarly, courts within the Fifth Circuit have compelled plaintiffs to produce signed FERPA authorizations that will allow defendants to discover their educational records where those records are relevant to the plaintiff's claims or the defendant's defenses to those claims. *See*, *e.g.*, *Equal Employment Opportunity Commission v. LHC Group*, 2013 WL 11609926 (S.D. Miss. 2013) (compelling a plaintiff in an employment discrimination suit to produce signed authorizations for their educational records because the records were "relevant and discoverable."); *Ayangible v. Children's Health Services of Texas*, 2025 WL 1182089 (N.D. Tex. 2025) (compelling plaintiffs to sign authorizations, including educational record authorizations, in an employment discrimination and retaliation case under Title VII).

13

Santano's employment records and educational records are likewise relevant to her claims and Tulane's defenses in this matter.[3] She specifically brings a Title VII and Louisiana Employment Discrimination Law employment action against Tulane alleging discrimination and retaliation. *See* R. Doc. 57 (asserting claims against Defendants under Title VII and the LEDL). Moreover, Santano alleges that she has incurred damages related to her alleged employment with Tulane such as loss of employment and career opportunities. Her personnel records for employment after her alleged employment with Tulane are therefore proportional and discoverable, and she should be compelled to sign the authorization allowing Tulane to discover these records.

Similarly, Santano alleges loss of educational opportunity and that she was "terminated" from Dr. Karubian's advisory after being heavily recruited and provided funding with the expectation that she would work considerably at FCAT and Dr. Karubian's lab. Santano admitted that she applied to other graduate schools but has refused to produce records related to those applications or to sign authorizations so that Tulane can discover the records through subpoenas. *See* Exhibit C. Santano also puts her educational background at issue by claiming that she was injured because of the change in her advisory after being heavily recruited and funded by Dr. Karubian and that her graduation from her PhD program has been delayed because of Tulane and Defendants' conduct. Tulane is entitled to discover whether Dr. Karubian's advisory and funding was the impetus to her attending Tulane and whether there could be alternative explanations for her alleged damages stemming from the "termination," including alleged delay.

---

[3] As asserted in Tulane's Motion to Dismiss, Tulane disputes that Plaintiff was a Tulane employee and argues that Title VII and the LEDL do not apply to Plaintiff in this context. However, because the Court has not yet ruled on Tulane's Motion to Dismiss, Plaintiff's employment records are certainly relevant to her prior and subsequent employment status and damages and should be discoverable.

14

In sum, Tulane is entitled to discover information regarding Santano's damages that she claims are related to her alleged loss of educational and career opportunities stemming from her "termination" of advisory, and Santano should be compelled to sign the FERPA authorization and employment record authorization that will allow Tulane to conduct such discovery.

### C. Records related to Plaintiff's taxes and earnings

Santano has also objected to signing authorizations that would allow Tulane to obtain relevant information regarding her taxes and earnings, including a Request for Social Security Earnings Information (SSA-7050), a Social Security Administrative Consent for Release of Information (SSA-3288), and a Request for Copies of Plaintiff's Tax Returns. Again, Santano brings employment claims against Tulane, including claims under Title VII and the Louisiana Employment Discrimination Law (LEDL). She also alleges that she "suffered past and future losses of income that have caused her to sustain economic damages in a sum to be determined at trial." R. Doc. 57, ¶ 150.

Multiple courts within the Fifth Circuit have held that a plaintiff's social security earnings records and tax records are relevant where a party puts their earnings at issue. *See, e.g., Cheek*, 2008 WL 717710 at \*1-2 (compelling a plaintiff to produced signed authorizations for the release of employment records, unemployment records, and social security records where he "put his earnings at issue."); *Adams*, 2022 WL 764070 at \*4 (compelling a plaintiff in a Title VII discrimination suit to produce signed authorizations for his unemployment records, employment records, tax forms, Social Security earning records, and medical records because the "requested authorizations [were] relevant to issues presented in th[e] lawsuit and proportional to the needs of the case."); *Tanner v. BD LaPlace, LLC*, 2018 WL 3528023 (E.D. La. 2018) (holding that the

plaintiff's financial records were "obviously relevant to the determination of damages" where the plaintiff sued his former employer for discrimination.).

Here, Santano has put her past and future earnings at issue by suing Tulane under Title VII and the LEDL. Moreover, Santano has specifically alleged that she has suffered past and future loss of income and economic damages. R. Doc. 57, ¶ 150. Her social security earnings records and tax returns are therefore extremely relevant to her claims and Tulane's defenses to those claims. This financial information will also be crucial to determine the extent of her alleged economic damages and whether she mitigated her damages, including by obtaining subsequent employment and income, which her attorney has acknowledged she has done. *See* Exhibit E, Emails (stating that Plaintiff has had limited subsequent employment). Santano's tax and financial records are further relevant to the threshold issue of her employment status including whether the funding she received from Tulane for her work at FCAT was an educational stipend/scholarship or alleged wages.[4]

Thus, Santano's tax and financial records are discoverable in this case, and she should be compelled to sign the social security earnings and tax authorizations.

### III.    CONCLUSION

For the foregoing reasons, Tulane respectfully moves this Honorable Court for entry of an Order compelling Santano to respond to Tulane's discovery requests and produce signed authorizations.

Respectfully submitted,

**PHELPS DUNBAR LLP**

---

[4] Tulane explicitly does not waive and maintains its argument in its pending Motions to Dismiss that Santano has failed to adequately allege a Title VII or LEDL claim because the alleged conduct she complains of (i.e. termination of her advisory) is educational, not employment in nature.

BY:   */s/ Rebecca Sha*

Kim M. Boyle (Bar #18133)
Rebecca Sha (Bar #35317)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: boylek@phelps.com
Email: rebecca.sha@phelps.com

**ATTORNEYS FOR DEFENDANT TULANE
UNIVERSITY ET AL.**

17