UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUDITH SANTANO | CIVIL ACTION |
| VERSUS | NO: 2:24-cv-2748 |
| TULANE UNIVERSITY, et al. | SECTION: T (2) |

## <u>ORDER AND REASONS</u>

Before the Court are multiple Motions to Dismiss the claims of Plaintiff, Judith Santano, filed by defendants Jordan Karubian (R. Doc. 26), the Administrators of the Tulane Educational Fund ("Tulane"), Erica Woodley, Tiffany Smith, Avery Pardee, and Jonathan Small (collectively, "Individual Defendants") (R. Doc. 28), and Marcus Foster (R. Doc. 32). Having reviewed the record, the briefs, and the applicable law, the Court finds that Karubian's Motion (R. Doc. 26) and Foster's Motion (R. Doc. 32) should be **GRANTED**, and that Tulane and Individual Defendants' Motion (R. Doc. 28) should be **GRANTED IN PART** and otherwise **DENIED AS MOOT**.

## I. FACTUAL BACKGROUND

Plaintiff Judith Santano was a PhD candidate at Tulane University ("Tulane") studying avian ecology. R. Doc. 1, p. 2. Plaintiff alleges that, while on a university-sponsored research trip to a facility in Ecuador, Fundación para la Conservación de los Andes Tropicales ("FCAT"),[1] she was sexually assaulted by an FCAT staff member, Beto Gonzalez, on two occasions. *Id.* at pp. 6-7. Plaintiff states that she reported the assaults to her research advisor at Tulane, Dr. Jordan Karubian, in February 2023. *Id.* at p. 8. Karubian was a founding member of FCAT, coordinated Tulane's collaboration with the facility, and supervised Plaintiff's work there. *Id.* at pp. 4, 7-8. Plaintiff further alleges that Karubian mishandled his response by waiting three months to forward

---

[1] "FCAT hosts graduate student researchers from Tulane and other universities." R. Doc. 1, p. 7.

1

the report to the university (in apparent violation of university policy to immediately forward such reports) and discussing the allegations with Gonzalez "and other members of the community . . . , thus interfering with the university's investigation and violating her right to privacy." *Id.* at pp. 7-8.

In the summer of 2023, Plaintiff discussed her concerns with Karubian and eventually asked two other Tulane professors, Sunshine Van Bael and Hannah Frank, to be her co-advisors. *Id.* at p. 9. Van Bael and Frank denied Plaintiff's request. *Id.* Later that month, at a meeting with Van Bael, Frank, and Karubian, Plaintiff discussed her research and her disappointment with how her report was handled with the faculty members. *Id.* "She told the group that she felt she was being treated as the problem." *Id.* Plaintiff alleges that, on November 30, 2023, the advisory committee issued a letter terminating Plaintiff from Karubian's advisory. *Id.* Subsequently, Van Bael allegedly confirmed that she would only serve as Plaintiff's replacement advisor if Plaintiff agreed she would not return to FCAT. *Id.* at p. 10. Plaintiff alleges that Karubian "deprived her of her procedural rights under university policy" because he terminated her "without first reporting to the Title IX office the allegations [] that he claimed formed the basis for her termination." *Id.*

In December 2023, Plaintiff approached Erica Woodley, Dean of Students at Tulane, who, despite "express[ing] concern about possible retaliation and about the fact that Plaintiff did not have anyone advising her through the situation," allegedly "did nothing to prevent or unwind the action against Plaintiff." *Id.* at p. 11. Plaintiff also alleges that Marcus Foster, the Title IX coordinator at Tulane, and Tiffany Smith, Tulane's Director of Institutional Equity and Resolution Management, "failed to intervene when they were notified that Plaintiff may have experienced retaliation." *Id.* at pp. 5, 11-12. As a result of her termination from Karubian's advisory, Plaintiff states that she "did not have the same opportunities to supervise and mentor undergraduate students

in the field, study the subjects of her research in nature, or expand the data she was collecting." *Id.* at p. 12.

In February 2024, the university's ongoing investigation into Plaintiff's report of sexual assault was expanded to address potential retaliation by Karubian. R. Doc. 19, p. 12. The assault investigation, conducted by an outside investigator hired by Tulane, concluded on April 10, 2024, and a report was given to Plaintiff on July 29, 2024. *Id.* at p. 13. Plaintiff alleges that the investigation was "decidedly not neutral, did not satisfy Title VII's requirements, and risked exposing Plaintiff and others to further harassment." *Id.* Plaintiff also cites several elements of the report that she claims demonstrate deficiencies of gender bias in the investigation. *See id.* at pp. 14-16. A report regarding the retaliation investigation was completed on July 31, 2024, followed by a hearing on December 11, 2024. *Id.* at pp. 20-22. The hearing panel then submitted its findings, including that Plaintiff "offered no evidence that Dr. Karubian engaged in any form of retaliation," to Tulane's Provost, Robin Forman, on December 16, 2024. *Id.* at p. 22. Plaintiff alleges that the panel's findings were erroneous, ignoring evidence of motives and other indicators of potential retaliation, and wrongly determining that Karubian's actions did not cause harm to Plaintiff. *Id.*

Provost Forman notified Plaintiff of his intent to accept the hearing panel's recommendation on March 20, 2025, and Plaintiff's subsequent appeal to Forman was denied on July 11, 2025. Plaintiff alleges that the denial offered "no explanation of the rationale for the decision" and did not "address any of the arguments made in the appeal." R. Doc. 57, pp. 22-23.

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint in this Court on November 25, 2024, alleging violations of Title IX of the Education Amendments Act, 20 U.S.C. §§ 1681, *et seq.*, Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, and Louisiana state law. R. Doc. 1, p. 2. In her initial Complaint,

Plaintiff named Administrators of the Tulane Educational Fund ("Tulane"),[2] as well as the following Tulane employees and faculty members as defendants: Jordan Karubian, Sunshine Van Bael, Hannah Frank, Erica Woodley, Marcus Foster, and Tiffany Smith. *Id.* at pp. 4-5. Additionally, Plaintiff sued Doe Defendants 1-20, "additional employees or agents of Tulane who were responsible for retaliation against Plaintiff." *Id.* at pp. 5-6. Plaintiff subsequently dismissed her claims against defendants Frank and Van Bael with prejudice, R. Doc. 17, and filed an Amended Complaint naming the following additional defendants: Jonathan Small, Tulane's Vice President for Human Resources and Institutional Equity, and Avery Pardee, an attorney contracted by Tulane to conduct investigations into Plaintiff's sexual assault allegations, R. Doc. 19, p. 5.

On March 28, 2025, Defendant Karubian filed a Motion to Dismiss ("Karubian's Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that the three tort claims Plaintiff filed against Karubian—negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress—should be dismissed because the pleadings do not state a claim for relief. R. Doc. 26. Plaintiff filed a response in opposition to Karubian's Motion, R. Doc. 44, and Karubian filed a reply in support, R. Doc. 46. The matter is now submitted to the Court.

On April 1, 2025, institutional defendant Tulane and individually named defendants Erica Woodley, Tiffany Smith, Avery Pardee, and Jonathan Small (collectively, "Individual Defendants") filed a Motion to Dismiss pursuant to Rules 12(b)(5) and 12(b)(6). R. Doc. 28. Plaintiff filed a response in opposition, R. Doc. 44, and the moving defendants filed a reply in support, R. Doc. 47. The matter is now submitted before the Court.

On April 17, 2025, defendant Marcus Foster filed a separate Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6). R. Doc. 32. Plaintiff filed a response memorandum in

---

[2] This party was incorrectly named as "Tulane University" and "Tulane Board" in Plaintiff's initial Complaint. R. Doc. 28, p. 1 n.1.

opposition, R. Doc. 44, and Foster has not filed a reply in support.

Plaintiff was later granted leave to file a Second Amended Complaint, which was filed on August 14, 2025, and added Tulane Provost Robin Forman as a defendant. R. Doc. 57, p. 6. Because Plaintiff asserted new and supplemental arguments against defendant Tulane in the Second Amended Complaint, Tulane filed a subsequent Motion to Dismiss Plaintiff's Second Amended Complaint on September 11, 2025, "adopt[ing] and maintain[ing] all arguments made in its original Motion to Dismiss" and addressing the newly raised and modified claims in the Second Amended Complaint.[3] R. Doc. 64. Newly added defendant Robin Forman also filed a Motion to Dismiss the Second Amended Complaint pursuant to Rule 12(b)(6). R. Doc. 65. Plaintiff has filed memoranda in opposition to Tulane and Forman's respective motions, R. Docs. 68, 70, and the moving defendants have each filed a reply in support, R. Docs. 69, 71.

## III. LAW AND ANALYSIS

Each of the motions presently before the Court seeks dismissal of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) allows a defendant to seek dismissal of a complaint based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[3] "Because the allegations brought against the [I]ndividual [D]efendants are unchanged by Plaintiff's Second Amended Complaint, no further response from them is necessary. Tulane, however, addresses Plaintiff's amended Title VII erroneous outcome claim and Plaintiff's new Title IX erroneous outcome claim [in their second Motion to Dismiss], [arguing that] both . . . should be dismissed with prejudice for failure to state a claim upon which relief may be granted." R. Doc. 64, p. 6.

5

alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings, *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004), and the documents attached to the complaint, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, the court "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

The court's review must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). A complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Additionally, courts may not rely on "legal conclusions that are disguised as factual allegations." *Jeanmarie v. United States*, 242 F.3d 600, 603 (5th Cir. 2001) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)). If factual allegations are insufficient to raise a right to relief above the speculative level, the claim should be dismissed. *Twombly*, 550 U.S. at 555.

### a. *Karubian's Motion to Dismiss (R. Doc. 26)*

Dr. Karubian's Motion to Dismiss (R. Doc. 26) asks this Court, pursuant to Rule 12(b)(6), to dismiss the three tort claims against him—negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress—"because they do not and cannot plausibly state a claim for relief" for three distinct reasons. R. Doc. 26-1, p. 4.

First, Karubian argues, Plaintiff's claims for any alleged tortious conduct that occurred prior to November 26, 2023, have prescribed because they occurred more than one year prior to Plaintiff's original filing.[4] *Id.* at p. 5. Under the current Louisiana Civil Code, delictual actions (i.e., tort actions) "are subject to a liberative prescription of two years." La. Civ. Code art. 3493.1, *as enacted by* TORT ACTIONS, 2024 La. Sess. Law. Serv. Act 423 (H.B. 315). This is a change from former Article 3492, which had established a prescriptive period of one year for delictual actions. *See* La. Civ. Code art. 3492, *repealed by* TORT ACTIONS, 2024 La. Sess. Law. Serv. Act 423 (H.B. 315). However, the change from a one-year to two-year prescriptive period was "given prospective application only and shall apply to delictual actions arising after the effective date of [Act 423]," which was July 1, 2024. TORT ACTIONS, 2024 La. Sess. Law. Serv. Act 423 (H.B. 315); *see also Parker v. Chet Morrison Contractors, LLC*, No. CV 23-5112, 2024 WL 3970312, at *5-7 (E.D. La. Aug. 28, 2024). Accordingly, because the tortious conduct alleged by Plaintiff took place before the July 1, 2024, effective date of Act 423, a one-year prescriptive period applies in this case.

Therefore, Karubian contends, any tort claims regarding his "alleged delay in reporting Plaintiff's allegation of sexual assault in May 2023, Plaintiff's August 2023 meeting with Dr. Karubian, Dr. Frank, and Dr. Van Bael, and any allegations pertaining to Dr. Karubian's alleged acts or omissions prior to November 26, 2023, including the 'lead-up' to the November 30, 2023, remediation plan letter are untimely." R. Doc. 26-1, p. 5. Accordingly, Karubian argues that the only non-prescribed claims against him "relate to the Committee's November 30, 2023, remediation plan and its alleged damaging impact on Plaintiff," and the others must be dismissed for untimeliness. *Id.*

---

[4] Plaintiff filed her Original Complaint on November 25, 2025. R. Doc. 1.

Plaintiff does not argue that a two-year prescriptive period should apply in this case. Instead, she contends that the series of actions by Karubian starting in February 2023 with his alleged failure to properly respond to her initial report and continuing through the August 2023 meeting between Plaintiff and the other professors "clearly fall within Louisiana's 'continuing tort doctrine.'" R. Doc. 44, p. 34 (citing *Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992)). She theorizes that "[e]ach incident on its own and in combination with the others constituted dismissiveness towards Plaintiff's traumatic experience with sexual violence." *Id.*

Karubian counters by averring that the continuing tort doctrine does not apply because Plaintiff "alleges three temporally disconnected tortious acts or omissions" rather than ongoing wrongful conduct that gave rise to successive damages. R. Doc. 46, pp. 2-4. Specifically, Karubian contrasts his alleged delay in reporting, his alleged communications with others about Plaintiff's complaint, and the November 30, 2023, remediation letter with examples of patterns of conduct recognized as continuing torts by Louisiana courts. *Id.* (citing *Lopez v. House of Faith Non-Denomination Ministries*, 29 So. 3d 680 (La. App. 4 Cir. 2010) (continuous trespass); *Risin v. D.N.C. Investments, L.L.C.*, 921 So. 2d 133 (La. App. 4 Cir. 2005) (continuous exposure to environmental contaminants); *Coulon v. Witco Corp.*, 848 So. 2d 135 (La. App. 5 Cir. 2003) (occupational exposure to carcinogens and neurotoxins multiple times per work shift)). He also compares the alleged conduct in this case to the conduct in *Hunter v. Tensas Nursing Home*, 743 So. 2d 839 (La. App. 2 Cir. 1999), where a Louisiana court declined to apply the continuing tort doctrine to repeated acts of neglect from a caregiver that resulted in numerous but varied injuries. R. Doc. 46, p. 4.

The Court agrees with Karubian. Under Louisiana law, the continuing tort doctrine applies only when both the wrongful conduct and the resulting damages are continuous. *See Bustamento*,

607 So. 2d at 542 (applying doctrine "when the acts or conduct are continuous on almost a daily basis, by the same actor, of the same nature, and the conduct becomes tortious or actionable because of its continuous, cumulative, synergistic nature"). Where the alleged conduct consists of completed, discrete acts that merely produce continuing effects, the doctrine does not apply. *See Hogg v. Chevron USA, Inc.*, 45 So. 3d 991, 1002-03 (La. 2010) (citing *Crump v. Sabine River Authority*, 737 So. 2d 720, 728-29) ("The inquiry is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts."). Here, Plaintiff's allegations against Karubian concern separate acts that occurred at different times and do not describe the type of ongoing, continuous wrongful conduct necessary to invoke the continuing tort doctrine. Accordingly, Plaintiff's claims against Karubian based on any conduct occurring prior to November 25, 2023, have prescribed.

Second, Karubian argues that Plaintiff's negligence-based claims against him are "thinly disguised educational malpractice" claims that seek to impose tort liability for academic and advisory decisions that fall outside the scope of any duty owed to Plaintiff. R. Doc. 26-1, pp. 6-7. In support of this argument, Karubian contends that Plaintiff's allegations arise entirely from his role as an academic advisor and from decisions made within the context of Tulane's academic and administrative processes. R. Doc. 26-1, pp. 6-7. He argues that Louisiana courts do not recognize claims for "educational malpractice" and consistently decline to impose tort liability for academic judgment or internal institutional decision-making. *Id.* (citing *Mills v. Tarver*, 340 So. 3d 959, 971-72 (La. App. 1 Cir. 2021) (quoting *Miller v. Loyola Univ. New Orleans*, 829 So. 2d 1057, 1061 (La. App. 4 Cir. 2002)) ("It is not the place of the court system to micro-manage the adequacy of instruction or management at institutions of higher learning, even if it were feasible, which we feel it is not. This is a task best handled by the universities themselves.").

9

Plaintiff responds that her claims are not based on academic performance or grading decisions, but rather on Karubian's alleged retaliation and mishandling of her report of sexual assault. R. Doc. 44, pp. 26-37. Plaintiff contends that these actions therefore fall outside of the scope of protected academic discretion and instead implicate duties to address misconduct and protect students from physical harm. *Id.* She further argues that Tulane's duties to ensure safety of its students was delegated to Karubian due to his specific role. *Id.* at 36-37.

After reviewing the record, the Court finds that Karubian's allegedly negligent conduct arose from his role as an academic advisor and his participation in the university's response to Plaintiff's report. Although Plaintiff characterizes this conduct as arising from retaliation and misconduct, the specific conduct alleged in the First Amended Complaint—Karubian's handling of the report, communications with colleagues, and participation in academic decision-making— falls squarely within the realm of academic and administrative judgment.

Louisiana law does not recognize claims for "educational malpractice," and courts decline to second-guess academic decisions or the adequacy of institutional processes. *See, e.g.*, *Miller*, 829 So. 2d at 1061. *See also Guidry v. Our Lady of the Lake Nurse Anesthesia Program*, 170 So. 3d 209, 215 (La. App. 1 Cir. 2015) (recognizing "strong public policy of judicial restraint in disputes involving academic standards" unless institution "exercises its discretion in an arbitrary or irrational fashion"). Allowing Plaintiff's negligence claims to proceed would require the Court to evaluate the propriety of academic judgment and internal university procedures, which is precisely the type of inquiry courts in this state have rejected.

Finally, Karubian argues that Plaintiff fails to allege essential elements of negligent infliction of emotional distress claims and intentional infliction of emotional distress claims. R. Doc. 26-1, pp. 8-14.

The Court will first address the sufficiency of Plaintiff's negligent infliction of emotional distress claim. Under Louisiana law, plaintiffs "may recover for negligent infliction of emotional distress ["NIED"] unaccompanied by physical injury in certain situations." *Lane v. Baywood Hotels, Inc.*, No. CV 25-103, 2025 WL 1026452, at *3 (E.D. La. Apr. 7, 2025) (quoting *Collett v. Weyerhaeuser Co.*, No. CV 19-11144, 2021 WL 2579801 (E.D. La. June 23, 2021), *aff'd*, No. 21-30449, 2022 WL 2387352 (5th Cir. July 1, 2022)). The Supreme Court of Louisiana has recently summarized:

> [F]or negligent infliction of emotional distress claims absent physical damage/injury, a plaintiff must prove "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." This rule must be "stringently applied" in cases that are inherently speculative in nature. The actions of the defendant must constitute negligence. The plaintiff's mental disturbance must be "serious." Evidence of generalized fear or evidence of mere inconvenience is insufficient. Evidence of medical treatment is not required, nor is expert medical testimony; however, a plaintiff bears the burden of presenting sufficient evidence of the nature and extent of the mental anguish suffered that was caused by the defendant's conduct. Whether the mental distress is "serious" is a matter of proof. Finally, we reiterate that these guidelines must be applied with the policy considerations discussed herein.
>
> In reaching our conclusion, we further elaborate on what is not required to be proven by a plaintiff seeking damages for negligent infliction of emotional distress absent physical damage/injury. The existence of a special, direct duty owed by the defendant is not required. We also decline to impose a requirement of outrageous conduct on the part of a defendant. A claim for negligent infliction of emotional distress is a claim that, by definition, requires a plaintiff to prove negligence. Further, we expressly reject application of the standard set forth in *Lejeune*. The emotional distress suffered by a plaintiff need not be "reasonably foreseeable," nor "severe and debilitating."

*Spencer v. Valero Ref. Meraux, L.L.C.*, 356 So. 3d 936, 950 (La. 2023) (internal citations omitted).

Karubian argues that Plaintiff does not allege sufficient facts to satisfy the requirements for a NIED claim because she has not alleged the type of "special circumstances" required under Louisiana law. R. Doc. 26-1, pp. 8-10. As noted by Karubian in his reply brief, Plaintiff's response

fails to address any of his arguments supporting dismissal of Plaintiff's NIED claim against him. R. Doc. 46, p. 7. Indeed, Plaintiff's opposition does not meaningfully address the elements of an NIED claim; instead, she merely states that her "allegations clearly identify the specific conduct at issue." R. Doc. 44, pp. 29-30.

The Court agrees that Plaintiff has failed to state a claim for NIED. Her First Amended Complaint alleges a delay in reporting, dissatisfaction with the outcome of the school's investigation, and adverse academic decisions. *See* R. Doc. 19. These allegations do not fall within the narrow category of cases in which recovery is permitted absent physical injury. "For example, negligent infliction of emotional distress has been awarded when a plaintiff watches their property get damaged, or when a plaintiff experiences 'fright or nervous shock' to the degree that they are 'in great fear for [their] personal safety." *Harris-Gilchrease v. Cap. One Auto Fin.*, No. CV 24-357, 2024 WL 5046006 (E.D. La. Dec. 9, 2024) (citing *Lambert v. Allstate Ins. Co.*, 19 So. 2d 698 (La. App. 1 Cir. 1967); *Cooper v. Christensen*, 212 So. 2d 154 (La. App. 4 Cir. 1968)) (alteration in original). Other examples of the "special circumstances" in which NIED has been awarded include fear of developing cancer after exposure to radioactive material, *e.g.*, *Lester v. Exxon Mobil Corp.*, 120 So. 3d 767, 775 (La. App. 4 Cir. 2013), or the mishandling of corpses, *e.g.*, *French v. Ochsner Clinic*, 200 So. 2d 371 (La. Ct. App. 1967). The Court finds that Plaintiff's allegations fail to reach this narrow standard.

Moreover, as discussed above, Plaintiff has not plausibly alleged an underlying negligence claim. Thus, because NIED is not an independent tort under Louisiana law and "by definition, requires a plaintiff to prove negligence," the claim fails. *See, e.g.*, *Pelitire v. Rinker*, 270 So. 3d 817, 829-30 (La. App. 5 Cir. 2019) (affirming dismissal of NIED claim where underlying negligence claim failed due to nonexistence of cause of action for clergy malpractice); *Gonzales*

*v. Ochsner Clinic Found.*, 170 So. 3d 1099, 1106 (La. App. 5 Cir. 2015) (affirming dismissal of NIED claim where underlying medical malpractice claim failed).

Next, the Court turns to Plaintiff's claim against Karubian for intentional infliction of emotional distress. The Fifth Circuit recently summarized the requirements for an intentional infliction of emotional distress ("IIED") claim under Louisiana law:

> In order to establish an IIED claim under Louisiana law, a plaintiff must show: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

*English v. Crochet*, 154 F.4th 369, 374 (5th Cir. 2025) (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)). Here, Karubian argues that "[e]ven if Plaintiff can establish she suffered severe emotional distress as a result of Dr. Karubian's alleged conduct, which is denied, Plaintiff cannot establish the first or third elements of the claim." R. Doc. 26-1, p. 11.

Addressing the first element, Plaintiff contends that the "outrageous and extreme actions that caused her emotional distress" include "Karubian delaying forwarding the sexual assault report and 'retaliating against Plaintiff . . . for making reports of sexual assault and mishandling of her report," R. Doc. 44, p. 31 (quoting R. Doc. 19, p. 45), and "Karubian terminating Plaintiff without following procedures to ensure fairness . . . in order to ensure her termination . . . [and] by lying about the reasons," *id.* (citing R. Doc. 19, pp. 10-11, 45).

Karubian argues that these allegations "simply do not rise to the level of extreme and outrageous conduct necessary for this tort." R. Doc. 46, p. 8. *See also* R. Doc. 26-1, p. 11-14. Once again, the Court agrees with Karubian's arguments. The Supreme Court of Louisiana has

recognized, "[C]ourts require truly outrageous conduct before allowing a claim of [IIED] even to be presented to a jury. Conduct which is merely [tortious] or illegal does not rise to the level of being extreme and outrageous." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1024-25. Recently, for example, the United States Court of Appeals for the Sixth Circuit affirmed dismissal of two students' IIED claims against university officials, finding that alleged hurtful comments made by these officials after the students reported sexual assaults, despite being insulting or insensitive, "are not so beyond scale as to create a cognizable claim [for IIED]." *Chen v. Hillsdale Coll.*, 150 F.4th 735, 745 (6th Cir. 2025).

Karubian's motion highlights the case *Doe v. Emerson College*, where a student alleged that university administrators mishandled her report of sexual assault, conducted a flawed investigation, and failed to provide an adequate response to her complaints. 153 F. Supp. 3d 506, 508-13 (D. Mass. 2015). The student brought claims of negligence, NIED, and IIED against the university and four university employees. *Id.* at 508. In reviewing the defendants' motion for judgment on the pleadings as to the IIED claims, the United States District Court for the District of Massachusetts found that the allegations—which were grounded in dissatisfaction with investigative procedures, perceived insensitivity, and disagreement with outcomes—did not rise to the level of extreme and outrageous conduct required to state an IIED claim. *Id.* at 518.

Like the allegations in *Doe*, Plaintiff's allegations do not meet the demanding standard under Louisiana law. Her allegations similarly concern delay, alleged mishandling of her report, and disagreement with academic and administrative decisions. Even accepting these allegations as true, the described conduct does not approach the level of being "atrocious" or "utterly intolerable in a civilized community." Accordingly, Plaintiff fails to state a claim for intentional infliction of emotional distress.

14

For these reasons, Plaintiff fails to state a plausible tort claim against Karubian. The Court will therefore GRANT Karubian's Motion to Dismiss (R. Doc. 26) and dismiss Plaintiff's claims against him with prejudice.

### b. *Tulane and Individual Defendants' Motion to Dismiss (R. Doc. 28)*

Tulane and Individual Defendants Woodley, Smith, Pardee, and Small seek dismissal of Plaintiff's claims against them on several grounds. R. Doc. 28-1. As an initial matter, the Court notes that Tulane has filed a subsequent Motion to Dismiss (R. Doc. 64) addressing the newly raised and modified claims in Plaintiff's Second Amended Complaint and adopts and maintains all arguments raised by the instant motion. Accordingly, this Order will only address arguments raised as to Plaintiff's claims against the Individual Defendants. The Court will address Tulane's arguments for dismissal in a subsequent order on Tulane's second Motion to Dismiss.

First, Individual Defendants argue that any tort claims concerning conduct that occurred before November 25, 2023, have prescribed and must be dismissed. R. Doc. 28-1, pp. 27-28. As discussed in the Court's review of Karubian's motion, a one-year prescriptive period applies in this case. *See* La. Civ. Code art. 3493.1; *Parker*, 2024 WL 3970312, at *5-7. Plaintiff's arguments concerning the continuing tort doctrine appear to be directed only at her claims against Karubian. *See* R. Doc. 44, p. 34. Apart from that argument, she does not meaningfully address the prescription argument raised by Individual Defendants. Instead, Plaintiff states that "Defendants' argument is misplaced" and clarifies that she is not suing over Gonzalez's alleged sexual comments in 2021 or alleged sexual assault in 2022. *Id.* at pp. 33-34. Accordingly, for the same reasons discussed in the previous subsection, the Court finds that Plaintiff's claims against Individual Defendants based on any conduct occurring prior to November 25, 2023, have prescribed.

Second, the instant motion contends that because the negligence claims against Individual

15

Defendants "are premised upon academic decisions regarding Plaintiff's advisory relationship, her research work abroad, and Defendants' purported failure to adhere to supposed internal policies," these claims must be dismissed under Louisiana law. R. Doc. 28-1, p. 28. Like Karubian, Individual Defendants argue that "Plaintiff is clearly attempting to repackage an 'educational malpractice' claim as 'garden variety' negligence because Louisiana does not recognize a cause of action for educational malpractice." *Id.* at p. 29.

Defendants further argue that Plaintiff's claims are similar to those brought in *Mills v. Tarver*, where nine nursing students brought negligence claims against a university and its individual faculty and administrators based on alleged acts and omissions following the students' filing of formal grievance procedures. *Id.*; *Mills*, 340 So. 3d at 963-65. The Louisiana First Circuit Court of Appeal held that the trial court properly dismissed the students' negligence claims because "the plaintiffs' claims are academic disputes" and "Louisiana law does not recognize a tort claim for educational malpractice." *Mills*, 340 So. 3d at 970-72. Plaintiff argues that *Mills* is not applicable to the facts of this case because the plaintiffs in *Mills* did not allege "discrimination or retaliation for protected activity." R. Doc. 44, p. 35. The Court disagrees and finds *Mills*, among several other cases in which Louisiana courts have dismissed similar claims for educational malpractice, *see, e.g.*, *Miller*, 829 So. 2d at 1061; *Guidry*, 170 So. 3d at 215, to be both applicable and instructive. Like the students in *Mills*, Plaintiff attempts to raise negligence claims premised on academic decisions made by Individual Defendants as part of their employment at Tulane. Furthermore, Plaintiff fails to identify any independent legal duty owed to her by Individual Defendants. Accordingly, Plaintiff does not raise a viable negligence claim against Individual Defendants.

Third, Individual Defendants argue that Plaintiff fails to state a claim for NIED or IIED.

R. Doc. 28-1, pp. 29-32. Specifically, they argue that "[e]ven if Plaintiff's factual allegations are taken as true, they do not amount to an actionable intentional infliction of emotional distress claim." *Id.* at p. 31. As previously discussed, because Plaintiff fails to state a viable negligence claim against Individual Defendants, her NIED claim against them likewise fails. Moreover, Plaintiff has not alleged the type of "special circumstances" required under Louisiana law to sustain a claim for NIED absent physical injury. *See Spencer*, 356 So. 3d at 950. Plaintiff's allegations against Individual Defendants, which concern their alleged roles in the investigation and administrative handling of her complaints, do not fall within the narrow category of cases in which recovery for NIED is permitted. Accordingly, Plaintiff fails to state a claim for NIED against Individual Defendants.

The same is true of Plaintiff's claims for IIED against Individual Defendants. Even accepting Plaintiff's factual allegations as true, the conduct attributed to Individual Defendants— namely, their alleged failures to intervene, alleged investigative deficiencies, and participation in university decision-making processes—does not rise to the level of conduct that is "atrocious and utterly intolerable in a civilized community." *See English*, 154 F.4th at 374. Thus, Plaintiff fails to state a claim satisfying the elements of IIED against Individual Defendants.

Finally, Individual Defendants argue that Plaintiff fails to state a claim for negligent supervision, training, and staffing, because such duties are owed by Tulane rather than by individual employees acting within the course and scope of their employment. R. Doc. 28-1, pp. 32-33. Plaintiff responds that her allegations are not premised on "supervising the safety of students" but "relate instead to negligent supervision of other defendant-employees in their obligations to Plaintiff." R. Doc. 44, p. 36. The Court is not persuaded by this argument. Even as reframed by Plaintiff, this claim still arises from Individual Defendants' roles in overseeing

Tulane's response to Plaintiff's complaints and in carrying out internal university functions. Plaintiff identifies no independent legal duty owed by Individual Defendants, in their individual capacities, to supervise, train, or staff other university employees on Tulane's behalf. Nor does she allege any facts demonstrating that any Individual Defendant personally undertook supervisory or staffing obligations. Accordingly, Plaintiff fails to state a viable claim against Individual Defendants for negligent supervision, training, or staffing.

For these reasons, Plaintiff's claims against Individual Defendants for negligent supervision, training and staffing, negligence and negligent infliction of emotional distress, and intentional infliction of emotional distress must be dismissed with prejudice. Accordingly, Tulane and Individual Defendants' Motion to Dismiss (R. Doc. 28) is GRANTED IN PART to the extent that it seeks dismissal of Plaintiff's claims against Individual Defendants and is otherwise DENIED AS MOOT.

### c. Foster's Motion to Dismiss (R. Doc. 32)

Foster's Motion, much like the motions filed by Karubian and Individual Defendants, seeks dismissal of Plaintiff's state law tort claims against him—negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress—pursuant to Rule 12(b)(6). R. Doc. 32.

First, Foster argues that any tort claims against him based on conduct occurring prior to November 25, 2023, have prescribed and must be dismissed. R. Doc. 32-1, pp. 4-5. As previously discussed in connection with Karubian and Individual Defendants, a one-year prescriptive period applies in this case. *See* La. Civ. Code art. 3493.1; *Parker*, 2024 WL 3970312, at *5-7. Accordingly, for the same reasons discussed above, the Court finds that Plaintiff's claims against Foster based on any conduct occurring prior to November 25, 2023, have prescribed.

18

Second, Foster argues that any of Plaintiff's tort claims which "are predicated on a purported failure to adhere to internal policies and procedures in conducting investigations into her complaints" amount to non-actionable educational malpractice claims. R. Doc. 32-1, pp. 5-6. He further argues that "[a]ll of the conduct that the Plaintiff has placed at issue in her claims against Defendant Foster is related to internal procedures and decisions by administrative staff," rather than the breach of any independent legal duty he personally owed to Plaintiff. *Id.* at p. 5. Plaintiff, on the other hand, contends that Foster's actions are not merely academic decisions but instead involve retaliation, failures to address discrimination, and negligent responses to foreseeable further harm to students. R. Doc. 44, pp. 34-37.

As discussed in the above subsections, Louisiana law does not recognize claims seeking to impose tort liability for alleged deficiencies in academic or administrative decision-making. *See, e.g.*, *Miller*, 829 So. 2d at 1061; *Guidry*, 170 So. 3d at 215; *Mills*, 340 So. 3d at 970-72. Here, Plaintiff's allegations against Foster arise from his role as Tulane's Title IX coordinator and concern his alleged failure to intervene, his oversight of the investigative process, and his alleged failure to ensure a fair investigation. R. Doc. 19. Even as framed by Plaintiff, these allegations directly challenge Foster's role in university decision-making, and Plaintiff offers no independent legal duty owed to her by Foster in his individual capacity. Accordingly, Plaintiff does not state a viable negligence claim against Foster.

Third, Foster argues that Plaintiff fails to state a claim for NIED or IIED because "Plaintiff's alleged facts do not establish the requisite elements to sustain these causes of action against [him]." R. Doc. 32-1, p. 6. Regarding the NIED claim, Foster states that Plaintiff's factual allegations against him are "limited to complaints about the discretionary decisions and/or measures taken during the course of the investigation itself" and argues that Plaintiff "fail[s] to

19

indicate how these issues amount to a breach of duty by Defendant Foster resulting in actual harm to the Plaintiff." *Id.* The Court agrees that Plaintiff has not alleged the type of "special circumstances" required to sustain a claim for NIED absent physical injury. *See Spencer*, 356 So. 3d at 950. Furthermore, as previously discussed, because Plaintiff fails to state a viable negligence claim against Foster, her NIED claim against him likewise fails. Accordingly, Plaintiff fails to state a claim for NIED against Foster. Regarding the IIED claim, Foster argues that Plaintiff does not allege conduct "constitute[ing] anything remotely resembling 'extreme and outrageous' or 'atrocious and utterly intolerable in a civilized community.'" R. Doc. 32-1, p. 8. The Court agrees and therefore finds that Plaintiff has failed to state a viable IIED claim against Foster. *See English*, 154 F.4th at 374.

Finally, Foster argues that Plaintiff has not sufficiently alleged a negligent supervision, training, and staffing claim against him. *Id.* Foster characterizes Plaintiff's attempts to allege such a claim as "attempting to fit a square peg into a round hole" because negligent supervision cases in Louisiana generally involve physical injuries to younger students attending lower grade and secondary schools due to improper supervision. *Id.* at pp. 9-10 (citing *Robinson v. St. John the Baptist Par. Sch. Bd.*, 270 So. 3d 838 (La. App. 5 Cir. 2019); *Carter v. St. John Elem. Sch.*, 105 So. 3d 856 (La. App. 5 Cir. 2012); *Booth v. Orleans Parish Sch. Bd.*, 49 So. 3d 919 (La. App. 5 Cir. 2010); *Brooks v. Orleans Parish Sch. Bd.*, 560 So. 2d 633 (La. App. 4 Cir. 1990)). Plaintiff does not meaningfully distinguish those principles or identify any independent duty owed by Foster, in his individual capacity, to supervise, train, or staff other university employees on Tulane's behalf. Accordingly, Plaintiff fails to state a claim against Foster for negligent supervision, training, or staffing.

For these reasons, Plaintiff fails to state a plausible tort claim against Foster. The Court

20

will therefore GRANT Foster's Motion to Dismiss (R. Doc. 32) and dismiss Plaintiff's claims against him with prejudice.

Accordingly,

**IT IS ORDERED** that Karubian's Motion to Dismiss (R. Doc. 26) is **GRANTED**, and that Plaintiff's claims against defendant Jordan Karubian are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Tulane and Individual Defendants' Motion to Dismiss (R. Doc. 28) is **GRANTED IN PART**, that Plaintiff's claims against defendants Erica Woodley, Tiffany Smith, Avery Pardee, and Jonathan Small are **DISMISSED WITH PREJUDICE**, and that the Motion is otherwise **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Foster's Motion to Dismiss (R. Doc. 32) is **GRANTED**, and that Plaintiff's claims against defendant Marcus Foster are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 31st day of March 2026.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE